Elaine F. Harwell (Bar No. 242551)
E-mail:      elaine.harwell@procopio.com
Sean M. Sullivan (Bar No. 254372)
E-mail:      sean.sullivan@procopio.com
Benjamin White (Bar No. 339169)
E-mail:      benjamin.white@procopio.com
Procopio, Cory, Hargreaves &
Savitch LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Roblox Corporation

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GARCIA, SALENA GARCIA, AND R.G., a minor by and through her guardians Michael Garcia and Salena Garcia, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>ROBLOX CORPORATION,<br><br>       Defendant. | Case No. 2:25-cv-03476<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ROBLOX CORPORATION'S MOTION TO DISMISS THE COMPLAINT**<br><br>Date:    August 22, 2025<br>Time:   1:30 p.m.<br>Dept:   9B<br>Judge:  Judge Wesley L. Hsu |

## **TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................7

II.  FACTUAL BACKGROUND ................................................................................8

III. LEGAL STANDARD ...........................................................................................9

IV.  ARGUMENT .......................................................................................................9

    A.   Plaintiffs Fail to Allege Standing.................................................................9

        1.   Plaintiffs lack standing for injunctive and declaratory relief. .....10

        2.   Plaintiffs lack standing for their statutory claims.......................11

    B.   Plaintiffs Fail to State a Claim Under the ECPA...................................13

        1.   Roblox consented to any interceptions. .......................................13

        2.   Plaintiffs consented to any interceptions. ....................................15

        3.   Plaintiffs do not allege Roblox intercepted "content."...............19

        4.   There is no secondary liability under the ECPA. ........................21

    C.   Plaintiffs Fail to State a Claim Under the SCA. ...................................22

        1.   Roblox cannot be liable under the SCA for accessing its own facility. ........................................................................................23

        2.   Plaintiffs' devices are not "facilities" protected under the SCA. 24

        3.   Plaintiffs consented to the sharing of data....................................25

    D.   Plaintiffs Cannot Sustain a Claim Under COPPA. ...............................27

        1.   COPPA does not authorize a private right of action. ..................27

        2.   Plaintiffs do not establish COPPA violations..............................28

V.   CONCLUSION ..................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adams v. Johnson*
   355 F.3d 1179 (9th Cir. 2004) ................................................................... 8

*Balistreri v. Pacifica Police Dep't*
   901 F.2d 696 (9th Cir. 1988) .................................................................... 8

*Bass v. Facebook, Inc.*
   394 F.Supp.3d 1024 (N.D. Cal. 2019) ..................................................... 10

*Bautista v. Valero Mktg. & Supply Co.*
   No. 15-CV-05557-RS, 2018 WL 11356583 (N.D. Cal. Dec. 4, 2018) ............... 9

*Bautista v. Valero Mktg. & Supply Co.*
   No. 15-CV-05557-RS, 2019 WL 13170998 (N.D. Cal. Feb. 6, 2019) ............. 10

*Bell Atl. Corp. v. Twombly*
   127 S. Ct. 1955 (2007) ............................................................................ 8

*Daghaly v. Bloomingdales.com*
   LLC, No. 23-4122, 2024 WL 5134350 (9th Cir. Dec. 17, 2024) ...................... 19

*Doe I v. Google LLC*
   741 F. Supp. 3d 828 (N.D. Cal. 2024) .................................................... 11

*Fayer v. Vaughn*
   649 F.3d 1061 (9th Cir. 2011) (*per curiam*) .......................................... 8

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
   528 U.S. 167 (2000) ................................................................................ 8

*Garcia v. City of Laredo, Tex.*
   702 F.3d 788 (5th Cir. 2012) ........................................................... 23, 24

*Gardiner v. Walmart, Inc.*
   No. 20-CV-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ............. 10

*Hammerling v. Google LLC*
   615 F. Supp. 3d 1069 (N.D. Cal. 2022) .................................................. 19

*Heerde v. Learfield Communications, LLC*
  741 F. Supp. 3d 849 (C.D. Cal. 2024)................................................................. 19

*Heiting v. athenahealth, Inc.,* 2024 WL 3761294 (C.D. Cal. July 29, 2024) ... 19, 20

*Heiting v. Taro Pharmaceuticals USA, Inc.*
  709 F. Supp. 3d 1007 (C.D. Cal. 2023) (Garnett, J. presiding).................... 18, 19

*Herzer v. Redstone*
  No. 17-CV-7545 PSG (KSX), 2018 WL 5094933 (C.D. Cal. July 10, 2018) ... 20

*Hubbard v. Google LLC*
  508 F. Supp. 3d 623 (N.D. Cal. 2020)................................................................. 27

*I.C. v. Zynga, Inc.*
  600 F.Supp.3d 1034 (N.D. Cal. 2022)............................................................ 10, 18

*In re Carrier IQ, Inc.*
  78 F.Supp.3d 1051 (N.D. Cal. 2015)................................................................... 21

*In re Facebook Internet Tracking Litig.*
  140 F.Supp.3d 922 (N.D. Cal. 2015)................................................................... 10

*In re Google*
  457 F. Supp. 3d 797 ..................................................................................... 22, 23

*In re Google Assistant Privacy Litigation*
  457 F.Supp.3d 797, 822 (N.D. Cal. 2020)...................................................... 22, 23

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*
  806 F.3d 125 (3d Cir. 2015) ............................................................................... 24

*In re Google, Inc. Privacy Policy Litig.*
  No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ............... 23

*In re iPhone Application Litig.*
  844 F. Supp. 2d 1040 (N.D. Cal. 2012)................................................... 10, 22, 24

*In re Yahoo Mail Litig.*
  7 F. Supp. 3d 1016 (N.D. Cal. 2014)................................................................... 22

*In re Zynga Privacy Litig.*
  750 F.3d 1098 (9th Cir. 2014) ............................................................................ 12

CASE NO. 2:25-CV-03476

*In re Zynga Privacy Litig.*
    750 F.3d at 1106–1107 ....................................................................... 18

*Jones v. Google LLC*
    73 F.4th 636 (9th Cir. 2023) .............................................................. 26

*Katz-Lacabe v. Oracle Am., Inc.*
    668 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................. 13

*Konop v. Hawaiian Airlines, Inc.*
    302 F.3d 868 (9th Cir. 2002) ......................................................... 12, 21

*Lakes v. Ubisoft, Inc.*
    No. 24-CV-06943-TLT, 2025 WL 1036639 (N.D. Cal. Apr. 2, 2025) ........ 14, 15

*Matter of Search Warrant for [redacted].*
    *248 F. Supp. 3d 970, 974 (C.D. Cal. 2017)* ......................................... 12

*Moss v. U.S. Secret Serv.*
    572 F.3d 962 (9th Cir. 2009) ................................................................ 8

*Rodriguez v. Google LLC*
    No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ............... 13

*Roe v. Amgen Inc.*
    No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024)
    (Scarsi, J. presiding) .......................................................................... 14

*Rosenow v. Facebook, Inc.*
    No. 19-CV-1297-WQH-MMP, 2025 WL 951277 (S.D. Cal. Mar. 28, 2025) 24, 25

*Shaw v. Hahn*
    56 F.3d 1128 (9th Cir. 1995) ................................................................. 8

*Shwarz v. United States*
    234 F.3d 428 (9th Cir. 2000) ................................................................. 8

*Stevens v. TD Bank, N.A.*
    No. CV 24-8311, 2025 WL 1779164 (D.N.J. June 27, 2025) ....................... 11

*Valentine v. WideOpen West Finance, LLC*
    288 F.R.D. 407 (N.D. Ill. 2012) ........................................................... 21

CASE NO. 2:25-CV-03476

*Williams v. Apple, Inc.*
  449 F. Supp. 3d 892 (N.D. Cal. 2020)....................................................................9

*Williams v. Oberon Media, Inc.*
  2010 WL 1644888 (C.D. Cal. Mar. 4, 2010) .......................................................16

*Yale v. Clicktale, Inc.*
  No. 20-cv-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021)...............19

*Yothers v. JFC Int'l, Inc.*
  No. 20-CV-01657-RS, 2020 WL 5015262 (N.D. Cal. May 14, 2020)...............9

**FEDERAL STATUTES, REGULATIONS, AND RULES**

16 C.F.R. pt. 312 ........................................................................................................6

15 U.S.C.
  § 6501(9).........................................................................................................27, 28
  § 6502 ....................................................................................................................6
  § 6502(b)..............................................................................................................27
  §§ 6502(b), 6504.................................................................................................26
  § 6503 ....................................................................................................................6

18 U.S.C.
  § 1701 ..................................................................................................................22
  § 2510(8)..............................................................................................................18
  § 2511 ....................................................................................................................6
  § 2511(1)..............................................................................................................20
  § 2511(1)(a) and (b).............................................................................................20
  § 2511(2)(d) ...................................................................................................12, 13
  § 2511(3)(a) .........................................................................................................12
  § 2520(a)..............................................................................................................20
  § 2701(a)..............................................................................................................22
  § 2701(a)(1)..........................................................................................................23
  § 2701(c)(1)..........................................................................................................22
  § 2702(a)(1)..........................................................................................................24
  § 2702(b)(3)....................................................................................................24, 25

Children's Online Privacy Protection Act (COPPA) ..............................7, 26, 27, 28

Electronic Communications Privacy Act ............7, 12, 13, 14, 15, 18, 19, 20, 21, 28

Stored Communications Act...................................6, 7, 21, 22, 23, 24, 26

**OTHER STATE STATUTES, REGULATIONS, AND RULES**

Rule 12(b)(6)........................................................................................................8

6

# I.    <u>INTRODUCTION</u>

This lawsuit is an impermissible attempt to distort privacy statutes and weaponize them against Roblox Corporation ("Roblox" or "Defendant"), an online game platform that uses cookies and other standard internet technologies to improve their services. Plaintiffs Michael Garcia, Salena Garcia, and minor R.G. ("Plaintiffs") allege that Roblox, like virtually every online service, collected routine user information, such as URLs, cookies, IP addresses, clicks, and keystrokes, to create a "device fingerprint." (Dkt. No. 1 ("Compl.") ¶ 1). The Complaint, however, cannot be sustained pursuant to the statutes they invoke. The Children's Online Privacy Protection Act, 15 U.S.C. §§ 6502, 6503, 16 C.F.R. Part 312 ("COPPA") flatly prohibits private enforcement. Additionally, both the Electronic Communications Privacy Act, 18 U.S.C. § 2511 ("ECPA") and the Stored Communications Act, 18 U.S.C. § 2701 ("SCA"), the remaining two causes of action, permit a service provider's own, consent-based access to its network—precisely what Plaintiffs challenge here.

Moreover, lacking any viable federal claim, Plaintiffs also cannot demonstrate the concrete injury necessary for Article III standing. Their allegations, at most, describe the ordinary collection of device identifiers and usage metrics, all of which were clearly disclosed in Roblox's privacy policy and accepted by Plaintiffs. Finally, as Plaintiffs have filed a duplicative state court action based on the same facts and circumstances, further amendment would be futile. The Court should therefore dismiss this case in its entirety without leave to amend.[1]

---

[1] It should be noted that Roblox is filing this current Motion to Dismiss due to the deadline to respond to the Complaint, but it is also currently preparing and will be bringing a motion to compel arbitration based on the arbitration provisions contained within the Terms of Use that Plaintiffs incorporate into their Complaint and accepted when signing up for the service. Roblox is seeking certain targeted discovery from Plaintiffs in an abundance of caution and to streamline its motion to compel arbitration in an effort to promote judicial economy and efficiency and it will be filing its motion to compel arbitration forthwith. Roblox further notes that it requested Plaintiffs stipulate and agree to stay briefing on the Motion to Dismiss pending the motion to compel arbitration, but Plaintiffs declined. (See Declaration of Benjamin W. White, ¶ 5, filed concurrently herewith.)

## II.    FACTUAL BACKGROUND

Plaintiffs allege "Roblox offers an interactive online platform that hosts countless user-created games and virtual experiences." (Compl. ¶ 22). Plaintiffs Michael and Salena Garcia are, respectively, the father and stepmother of Plaintiff R.G, a twelve-year-old minor.  (*Id.* ¶¶ 10-12). They allege Plaintiff R.G. "has used the Roblox platform regularly since approximately 2021 (from around age 9 or 10), accessing it via Roblox's website and mobile app to play games and socialize with friends." (*Id.* ¶ 12). Plaintiffs Michael and Salena Garcia "directly interacted with the Roblox platform in California," with Michael Garcia "downloading the Roblox app and supervising R.G.'s use of Roblox" and Salena Garcia "visiting the Roblox website and assisting R.G. with setting up an account." (*Id.* ¶¶ 10-11). Plaintiffs acknowledge Roblox presented them with its "Term of Use and Privacy Policy" through a "clickwrap agreement" and "to the provided parental email address . . ." (*Id.* ¶¶ 29, 31, 58).

Plaintiffs allege "the communications generated by R.G.'s Roblox usage – including device identifiers, game interaction data, chat messages, and other online activities—were intercepted, stored, and disseminated by Roblox without parental consent." (*Id.* ¶ 12). "From the moment a user accesses Roblox's website or app, Roblox injects scripts that gather detailed device and behavior information." (*Id.* ¶ 25). Through these "mechanisms, Roblox builds a comprehensive profile of each user's device and activity." (*Id.* ¶ 26). Plaintiffs concede, however, "Roblox's privacy policy acknowledges collecting a wide range of user data (device identifiers, usage logs, etc.) ostensibly to improve services and safety." (*Id.* ¶ 24).

Based on these allegations, Plaintiffs allege violations of the ECPA; the SCA and COPPA. (*See generally*, Compl.). The same day they filed the instant action (the "Federal Action"), Plaintiffs filed another nearly identical action against Roblox in state court (the "State Action"). (*See* Request for Judicial Notice ("RJN"), ¶ 7, Ex. 7).

### III.    LEGAL STANDARD

Dismissal under Rule 12(b)(6) is appropriate if the Complaint lacks a "cognizable legal theory" or "sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

The Court also need not accept as true allegations that are contradicted by judicially noticeable facts (*see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000)), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### IV.    ARGUMENT

#### A.    Plaintiffs Fail to Allege Standing

To satisfy Article III's standing requirement, a plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

1.    <u>Plaintiffs lack standing for injunctive and declaratory relief.</u>

Plaintiffs cannot show they're entitled to injunctive or declaratory relief because they have not established "a sufficient likelihood that [they] will again be wronged in a similar way" by Roblox absent such relief. *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 906 (N.D. Cal. 2020) (quotation omitted).  After all, "[a] plaintiff must have standing for each remedy sought." *Yothers v. JFC Int'l, Inc.*, No. 20-CV-01657-RS, 2020 WL 5015262, at *5 (N.D. Cal. May 14, 2020). For injunctive relief, that means "the threat of future injury is 'actual and imminent, not conjectural or hypothetical.'" *Bautista v. Valero Mktg. & Supply Co.*, No. 15-CV-05557-RS, 2018 WL 11356583, at *8 (N.D. Cal. Dec. 4, 2018). Mere allegations of possible future injury are insufficient. *Williams*, 449 F.Supp.3d at 906. And "[i]n the class action context, a named plaintiff must show she is personally subject to a likelihood of future injury." *Bautista*, 2018 WL 11356583, at *8 (quotation omitted).

Here, Plaintiffs allege Roblox "intercepted, stored, and disseminated" their data (Compl., ¶ 12). Yet they never claim they continue to use the Roblox platform, which means there is no "real and immediate threat" that new information will be collected. *Williams*, 449 F.Supp.3d at 906–07.  In *Williams*, the court found plaintiffs failed to allege the "real and immediate threat of repeated injury" necessary to demonstrate Article III standing to seek injunctive relief as there were no allegations the plaintiffs were currently using the service or that they actually intended or planned to purchase defendant's service again in the future. *Id.* at 906.  The court further found inadequate a general allegation that plaintiffs would continue to be harmed absent an injunction. In the instant Complaint, Plaintiffs do not allege any real or immediate threat of repeated injury.  Quite the opposite: Plaintiffs explicitly allege that "had they known their communications were being intercepted and their child's data exploited, they would not have supported the platform financially." (Compl. ¶ 34). It is implausible, to say the least, that Plaintiffs would continuously use a platform that they claim "shattered" their expectations of privacy with "highly offensive" conduct. (*Id.* ¶ 32).

As Plaintiffs have seemingly alleged they would not continue to put themselves in harm's way by continuing to use the platform and subjecting themselves to "highly offensive" conduct, Plaintiffs cannot establish real and immediate threat of repeated injury and thus, lack standing to maintain a claim for injunctive relief.  For the same reasons, Plaintiffs also lack standing to seek declaratory relief.  *See I.C. v. Zynga, Inc.*, 600 F.Supp.3d 1034, 1055 n.17 (N.D. Cal. 2022) (Plaintiffs who "lack standing to pursue injunctive relief . . . also lack standing to pursue declaratory relief."); *Bautista v. Valero Mktg. & Supply Co.*, No. 15-CV-05557-RS, 2019 WL 13170998, at *1 (N.D. Cal. Feb. 6, 2019) (same).

### 2.    Plaintiffs lack standing for their statutory claims.

Plaintiffs claim Roblox "has been surreptitiously intercepting their electronic communications and harvesting detailed personal data" (Compl. ¶ 1), but they fail to plausibly allege any concrete economic injury caused by this purported conduct. Merely alleging disclosure of information, without more, does not establish standing. *Gardiner v. Walmart, Inc.*, No. 20-CV-04618-JSW, 2021 WL 2520103, at *8 (N.D. Cal. Mar. 5, 2021) (stating "courts have widely held that 'personal information' does not constitute money or property under the UCL."); *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *14 (N.D. Cal. Sept. 20, 2011) (finding "a plaintiff's 'personal information' does not constitute money or property under the UCL.").  To "merely say the information was taken and therefore it has lost value" is insufficient to confer statutory standing where an economic injury is required. *Bass v. Facebook, Inc.*, 394 F.Supp.3d 1024, 1040 (N.D. Cal. 2019) (addressing UCL claim). Indeed, "generalized assertions of economic harm based solely on the alleged value of personal information" are simply not enough. *In re Facebook Internet Tracking Litig.*, 140 F.Supp.3d 922, 930 (N.D. Cal. 2015).

Plaintiffs dedicate much of their Complaint to describing how the Roblox platform generally "gather[s] detailed device and behavior information" and sends it "to Roblox-controlled analytics domains or directly to third-party servers." (Compl.

¶ 25). Yet when it comes to the specific information Roblox allegedly gathered from Plaintiffs themselves, the Complaint offers only a bare conclusion: "Roblox intercepted their communications or accessed their data without authorization." (*Id.* ¶ 32). This is a critical omission. As a federal court recently highlighted, even a plaintiff describing the functionality of pixel tracking technology "in considerable detail" still failed to establish a cognizable injury because he "provides no information from which the Court can infer that the Pixel actually captured his information." *Stevens v. TD Bank, N.A.*, No. CV 24-8311 (RMB/AMD), 2025 WL 1779164, at *4, 6 (D.N.J. June 27, 2025) (emphasis in original). That court concluded, "Without well-pled factual allegations establishing that TD disclosed *Plaintiff's* personal financial information" the plaintiff "cannot plead the necessary elements of his claims . . ." (*Id.* (emphasis in original)). The Complaint here suffers from the identical fatal flaw: Plaintiffs fail to describe any substantive information that Roblox obtained from ***them specifically***.

In *Doe I v. Google LLC*, plaintiffs claimed Google "unlawfully track[ed], collect[ed], and monetize[d] their private health information through source code that is 'secretly embedded' on their health care providers' websites." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 837 (N.D. Cal. 2024). But the court unequivocally held that "loss of personal data is also not sufficient to demonstrate an economic injury." *Id.* at 845. Crucially, the court recognized that this holds true "even when, as here, there are allegations that the plaintiffs' personal data has a measurable monetary value and there is a market for such data that the plaintiffs could easily access." *Id.* The simple reason: such allegations "fail to explain why any alleged acquisition of personal information would necessarily mean that the plaintiffs could not still sell their data in the market they allege exists." *Id.* In short, Google's actions did not stop the plaintiffs from profiting from their allegedly "lost" data.

The same reasoning applies here. Plaintiffs claim Roblox "intercepted their communications or accessed their data without authorization." (Compl. ¶ 32). Yet

they offer only speculative allegations that "Roblox unjustly profited from its wrongdoing" because "Roblox's data practices **likely** increased user engagement (and thereby revenue) and advertising effectiveness." (*Id.* ¶ 34 (emphasis added)).  While Plaintiffs assert this data has "inherent value" that "Roblox monetized without any compensation to users" (*Id.*), they fail to allege Roblox obtained anything beyond "personal data." In fact, they concede the platform is "free to join." (*Id.* ¶ 22). Even if Plaintiffs *could* conclusively allege their data has "value," an "informational injury" alone is insufficient to confer Article III standing. Recording user data does not prevent the user from selling the same data somewhere else.  Consequently, Plaintiffs' claims fail for lack of standing.

### B.    Plaintiffs Fail to State a Claim Under the ECPA.

Plaintiffs' ECPA claim is fundamentally flawed. The Electronic Communications Privacy Act ("ECPA") "was intended to afford privacy protection to electronic communications," regulating various forms of electronic surveillance, including wiretaps and the unauthorized disclosure of communications. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002); *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d 970, 974 (C.D. Cal. 2017).  However, the ECPA, specifically 18 U.S.C. § 2511(3)(a), prohibits an electronic communication service provider from intentionally divulging the contents of a communication "to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1100 (9th Cir. 2014). Plaintiffs' allegations fail to meet the essential elements of an ECPA violation for several critical reasons, as detailed below.

#### 1.    Roblox consented to any interceptions.

Plaintiffs' ECPA claims fail at the outset because they cannot plausibly allege that Roblox illegally "eavesdropped" on its own conversations with users. The ECPA itself, in 18 U.S.C. § 2511(2)(d) — often called the "one-party consent rule"— expressly states: "It shall not be unlawful under this chapter for a person not acting

13

under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication . . ." This means that a party to a communication cannot "intercept" what it is already a part of in an unlawful way under the ECPA.

Plaintiffs allege Roblox violated the ECPA "by intentionally intercepting the electronic communications between users and Roblox's platform," and that "Roblox designed and deployed software code as an intercepting 'device' to divert portions of the communications stream to itself and third parties for unauthorized purposes." (Compl. ¶ 53). These allegations directly trigger the "one-party consent" exception. By their own admission, Plaintiffs concede Roblox was a party to the very communications it allegedly intercepted.

Courts consistently apply this exception to similar allegations. For instance, in *Katz-Lacabe v. Oracle Am., Inc.*, plaintiffs challenged Oracle's collection and sale of "personal information from internet users" through data synchronization. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 935 (N.D. Cal. 2023). The court dismissed the ECPA claim, reasoning that because Defendant's customers must have chosen to deploy Oracle's tools on their websites, it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent to such interception.'" *Id.* at 945 (relying on *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021)).

Plaintiffs attempt to sidestep this exception by asserting that the "purpose of the interception was to commit tortious and unlawful acts, namely, to violate users' privacy and to infringe on COPPA's protections." (Compl. ¶ 59 (citing 18 U.S.C. § 2511(2)(d))). However, to vitiate the one-party consent rule, Plaintiffs must actually *allege* Roblox intercepted communications "for the ***purpose*** of committing a criminal or tortious act." 18 U.S.C. § 2511(2)(d) (emphasis added). These conclusory statements are insufficient to establish a criminal purpose. In fact, Plaintiffs' own allegations contradict these assertions, stating Roblox's "motive was to gather data for

profit and insight" and "to enhance its profits." (*Id.* ¶¶ 56, 60). Seeking profit, while perhaps a business strategy, does not equate to a criminal or tortious purpose under the ECPA, especially when Roblox was a party to the communication.

In a highly relevant decision, *Roe v. Amgen Inc.*, the court addressed similar allegations that the defendant used "Google tracking pixels" on its website to share medical information with third parties. *Roe v. Amgen Inc.*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 at *1 (C.D. Cal. June 5, 2024) (Scarsi, J. presiding). This Court found the plaintiffs' allegations "self-defeating" because "their complaint is only susceptible to an inference that Defendant, as the creator and operator of its website, consented to the use of data collection tools it installed on its website." *Id.* at 6. Just like Plaintiffs here, their *Roe* plaintiffs also alleged that the "crime-tort exception" applied. However, this Court rejected that argument, holding the exception was inapplicable where the plaintiffs "aver that Defendant's motivations were to improve their marketing and advertising efforts." *Id.* The *Roe* court concluded that "the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally." *Id.*

## 2.    Plaintiffs consented to any interceptions.

Not only did Roblox, as a party to the communication, consent, but Plaintiffs themselves also consented to the alleged interception. They admit that "Roblox's Privacy Policy (which most users, especially children, are unlikely to read) does disclose in broad terms that Roblox collects device identifiers, usage info, and may use it for improving services or safeguarding their users while in-game . . ." (Compl. ¶ 30). Plaintiffs further acknowledge that Roblox presented them with its "Term of Use and Privacy Policy" through a "clickwrap agreement" and "to the provided parental email address." (*Id.* ¶¶ 29, 31, 58).

A recent case, *Lakes v. Ubisoft, Inc.*, further supports this point. In *Lakes*, plaintiffs claimed a video game company improperly disclosed their personal information to a social media company via a tracking pixel. *Lakes v. Ubisoft, Inc.*, No.

24-CV-06943-TLT, 2025 WL 1036639 at *1 (N.D. Cal. Apr. 2, 2025). The court, however, found that "Defendant's disclosures clearly disclose that it allows partners to use cookies on the Website, that specific analytics and personalization cookies would be used, and that cookie identifiers and other similar data connected to the use of the site could be collected and shared." *Id.* at 5. The plaintiffs in *Lakes* argued the policy did not *specifically* disclose the exposure of "Plaintiffs' PII—consisting of video game titles combined with unique Facebook identifiers—to interception by Meta." But the Court declined to adopt such a "highly granular" reading of the one-party consent rule, concluding that "a reasonable user would understand from the Privacy Policy that he or she is consenting to the use of cookies including by third parties." *Id.* at 6. Plaintiffs' attempt to plead ignorance of Roblox's clearly disclosed data practices must similarly fail.

Here, Plaintiffs are attempting to impose a "highly granular" interpretation of the one-party consent rule that the ECPA simply does not contemplate. They argue that because "Roblox's Terms of Use and Privacy Policy did not explicitly disclose that the contents of interactions would be shared in real time with others," they could not have consented to the interceptions. (Compl. ¶ 58).

However, Plaintiffs' own Complaint undermines this assertion. They describe disclosures that clearly encompass the very conduct they challenge. In fact, Plaintiffs *concede* that Roblox's "privacy disclosures (when carefully read) admit that personal information is shared with third parties for marketing and analytics. In practice, this means data about users (unique IDs, device fingerprints, behavioral profiles) may be shared with outside ad networks or partners who then use it to serve targeted ads or to track the user on other sites." (*Id.* ¶ 27). Plaintiffs offer no explanation for how this explicit scope fails to disclose "that the contents of interactions would be shared in real time with others." (*Id.* ¶ 58). A reasonable user, armed with these disclosures, would understand that their data was being shared in real time with third parties.

CASE NO. 2:25-CV-03476

Plaintiffs extensively discuss in the Complaint, and therefore incorporate by reference, the Roblox Terms of Use ("TOU") and Privacy Policy ("Privacy Policy"). *See* discussion, RJN, section II. Indeed, the Complaint repeatedly references and relies on these documents. (Compl. ¶¶ 27, 29, 30, 31, 58, 80, 81). For example, Plaintiffs admit the Privacy Policy "does disclose in broad terms that Roblox collects device identifiers, usage info, and may use it for improving services or safeguarding their users while in-game . . ." (*Id.*, ¶ 30). Plaintiffs even discuss the "General Terms of Service and Privacy Policy link" where users can view these policies. (*Id.*, ¶ 29). Therefore, the Roblox Terms of Use and Privacy Policies are incorporated by reference into the Complaint and subject to judicial notice. *See Williams v. Oberon Media, Inc.*, No. CV098764-JFW AGRX, 2010 WL 1644888 at *1 (C.D. Cal. Mar. 4, 2010) (taking judicial notice of a video game developer's terms and conditions because they were incorporated by reference in the complaint).

All three Plaintiffs accepted Roblox's TOU.[2]  *See* RJN, ¶¶ 1, 3, 5. All versions of the TOU, including those which Plaintiffs accepted, incorporate the Privacy Policy. (*Id.*).  The Privacy Policy accepted by Plaintiffs Michael Garcia and Salena Garcia[3] stated:

> Roblox may disclose information collected from or about you with third-party advertising companies and/or advertising measurement companies to select advertisements for you, or measure and improve advertising effectiveness. In accordance with applicable law, we provide our users with choices about whether data is disclosed for this purpose. Data disclosed for this purpose includes:

[2] As noted above, Roblox is bringing a motion to compel arbitration based on the arbitration provisions contained within the TOU that Plaintiffs accepted. Roblox does not file a motion to compel arbitration concurrently with this motion to dismiss as it is seeking certain targeted discovery from Plaintiffs in an abundance of caution and to streamline its motion to compel arbitration in an effort to promote judicial economy and efficiency.

[3] The versions of the Privacy Policy that all three Plaintiffs accepted contain similar language disclosing data sharing with third parties.  *See* RJN, ¶¶ 2, 4, 6. The Privacy Policy accepted by Plaintiff R.G., in section 7 of the detailed Privacy Policy, disclosed sharing of Personal Information of its users "with our third-party agents, contractors, or service providers who are hired to perform services on Roblox's behalf.  These providers may operate or support certain functions of the Service. [ ] " *See RJN*, Ex. 2, p. 22. The Privacy Policy further disclosed that the third-party service providers included "Analytics services (e.g. Google LLC)" and "User Acquisition services (e.g., AppsFlyer)." (*Id.*).

17

- Contact Identifiers
- Device identifiers

(*See*, *e.g.*, *id.*, Ex. 4, § 4).

The Privacy Policy further stated:

- To market our services, inter alia, via social media platforms in order to bring new users to our websites and to maintain and increase our user base, we may process Personal Information such as IP addresses, information on users' browser or operating system, including language settings, regional location information and user names or user IDs.   The legal basis for the processing of this data is Roblox's legitimate interest in maintaining our user base, bringing new users to our websites and informing (potential) users about interesting events, Art. 6 sec. 1 sent. 1 lit. f GDPR ("legitimate interest").

- When you choose to create an Ad Account, we may collect additional information for your account (such as name, email, address, business information, etc.) in order to create an account. The basis for processing this personal data is Article 6 sec. 1 sent. 1 lit. b ("performance of a contract"). We may also retain transaction details and purchase and payment history. The legal basis for processing these personal data is our legitimate interest in being able to resolve subsequent disputes and inquiries, Article 6 sec. 1 sent. 1 lit. f GDPR ("legitimate interest").

(*Id.* § 7). Each version of the Privacy Policy accepted by Plaintiffs further clarified that Roblox may "share users' information, including Personal Information like billing information or usernames, with our third-party agents, contractors, or service providers who are hired to perform services on Roblox's behalf." (*Id.).*  This policy does not just state this in broad terms; it specifically names these services and explains their functions. (*Id.*). The Privacy Policy also discloses that Roblox will monitor "chats, forums, group walls, personal posts, or other features" to "check that it meets our Community Standards and complies with our Terms of Use." (*Id.* § 3).

In short, there is no "interception" alleged in the Complaint that is not explicitly covered by the Privacy Policy to which Plaintiffs consented. Since both Plaintiffs and Roblox consented to these alleged "interceptions"—even though the ECPA requires only one party's consent—their ECPA claim must fail.

### 3.    Plaintiffs do not allege Roblox intercepted "content."

Plaintiffs' ECPA claim faces a second, equally fatal flaw: they fail to allege Roblox intercepted "content" as defined by the statute. The ECPA specifically defines "contents" as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). The Ninth Circuit has clarified that "'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication" such as a name, address, or the identity of a subscriber or customer. *In re Zynga Privacy Litig.*, 750 F.3d at 1106–1107. For example, the *Zynga* court held that a "Facebook ID" and a "webpage address"—which identify a user and a webpage location, respectively—were not "content information" regulated by the ECPA. (*Id.*).

Plaintiffs allege Roblox "builds a comprehensive profile of each user's activity," including "technical fingerprints (canvas hashes, audio hashes, installed fonts, GPU and CPU traits), persistent IDs linking sessions, behavioral metrics (typing speed, clicking patterns), and context about the user's content (such as which games or pages they visit)." (Compl. ¶ 26). While they summarily conclude that "much of this information qualifies as the 'contents' of communications or highly personal data," they never identify any substantive "content" that was communicated. (*Id.*).

This Court has repeatedly rejected similar allegations of mere record gathering and profile creation. In *Heiting v. Taro Pharmaceuticals USA, Inc.*, the plaintiff alleged the defendant "generally collects personal information from website users, including personal identifiers, device identifiers, commercial information, electronic and sensory data, browser information, operating system information, and may deduce

additional demographic details." *Heiting v. Taro Pharmaceuticals USA, Inc.*, 709 F. Supp. 3d 1007, 1018 (C.D. Cal. 2023) (Garnett, J. presiding).  The court explicitly declined to construe these kinds of data as "content" or "assume out of whole cloth what the contents of any communications were." *Id*. Similarly, in *Heiting v. athenahealth, Inc.*, despite allegations that the defendant recorded customer service chats, the court found the plaintiff failed to "identify any substantive communications she believes were impermissibly intercepted" and refused to infer the messages contained anything beyond record information. *Heiting v. athenahealth, Inc.,* No. 2:23-CV-10338-FLA (DFMX), 2024 WL 3761294 at *1, 5 (C.D. Cal. July 29, 2024) (Aenlle-Rocha, J. presiding).

Other courts have likewise distinguished between "content" and "record information." In *Yale v. Clicktale, Inc.*, the court dismissed a CIPA claim (which employs the same "content" analysis as the ECPA) where the website captured keystrokes, mouse clicks, visit duration, IP addresses, location, browser type, and operating system. *Yale v. Clicktale, Inc.,* No. 20-cv-07575-LB, 2021 WL 1428400, at *1, *3 (N.D. Cal. Apr. 15, 2021).[4]  The court concluded these were non-content information. (*Id.*) Most recently, in *Daghaly v. Bloomingdales.com, LLC*, the Ninth Circuit declined to recognize a consumer's mere website visit as "content" of a "communication," distinguishing it from actual "information she might have entered." *Daghaly v. Bloomingdales.com*, LLC, No. 23-4122, 2024 WL 5134350 at *1 (9th Cir. Dec. 17, 2024).

To hedge their bets, Plaintiffs also allege "when R.G. typed a message to a friend in a game, that chat text was transmitted as an electronic signal to Roblox's servers." (Compl. ¶ 52). However, just like the plaintiff in *Heiting v. athenahealth, Inc.*, Plaintiffs fail to allege the **kind** of information these messages contained. They appear to expect this Court to assume the messages contained "content," as opposed

---

[4] Courts employ the same "content" analysis for California Invasion of Privacy Act ("CIPA") and ECPA claims.  *See Heerde v. Learfield Communications, LLC*, 741 F. Supp. 3d 849, 865 (C.D. Cal. 2024); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022).

to mere record information. This "requires too great an inference" and is insufficient to satisfy the ECPA's pleading requirements. *Heiting v. athenahealth, Inc.*, No. 2:23-CV-10338-FLA (DFMX), 2024 WL 3761294 at *5.

### 4.    There is no secondary liability under the ECPA.

Roblox cannot be held liable for the alleged conduct of third-party vendors, such as Google Analytics, Stripe, or Arkose Labs, even if they were involved in collecting and analyzing user data. Plaintiffs claim Roblox "embedded third-party tracking code … into its platform, effectively outsourcing the interception to those parties," and that Roblox is liable under 18 U.S.C. § 2511(1)(a) and (b) for "procuring other persons to intercept and for aiding and abetting interceptions." (Compl. ¶ 57). However, Plaintiffs' argument fundamentally misunderstands the scope of civil liability under the ECPA.

While 18 U.S.C. § 2511(1) does contain "procurement" language, this section does not define the scope of the private cause of action. "The 1986 amendments to the ECPA specifically *eliminated* a civil cause of action for "procurement." As explained in *Herzer v. Redstone*:

> "The 1986 amendments to the ECPA eliminated a civil cause of action for 'procurement' under the ECPA, removing language that stated that 'any person who wire or oral communication is intercepted, disclosed or used in violation of this chapter shall . . . have a civil cause of action against any person who . . . procures any other person to intercept, disclose, or use such communications.'"

*Herzer v. Redstone*, No. 17-CV-7545 PSG (KSX), 2018 WL 5094933 at *6 (C.D. Cal. July 10, 2018) (quoting former 18 U.S.C. § 2520).

The current version of the ECPA is clear: "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, **which engaged in that violation** such relief as may be appropriate." 18 U.S.C. § 2520(a) (emphasis added). Courts have consistently interpreted this

language to mean that "there is simply no secondary liability (such as aiding and abetting) under the ECPA." *In re Carrier IQ, Inc*., 78 F.Supp.3d 1051, 1089 (N.D. Cal. 2015).

*In re Carrier IQ* directly addressed similar allegations that the defendant "provid[ed] an avenue through which [third parties] were able to effectuate such an interception." *Id.* at 1089. The court emphasized that the ECPA's civil enforcement provision targets the "person or entity . . . which engaged in that violation.'" *Id.* (quoting 18 U.S.C. § 2520(a)). It concluded that "nothing in this statute 'condemns assistants, as opposed to those who directly perpetrate the act' and a 'statute that is this precise about who, other than the primary interceptor, can be liable should not be read to create a penumbra of additional but unspecified liability.'" *Id.* (quoting *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003). The court further cited *Valentine v. WideOpen West Finance, LLC*, which recognized that "courts have declined to find a private cause of action against those who aid and abet or conspire with others to intercept, disclose, or use electronic communications in violation of the ECPA." *Valentine v. WideOpen West Finance, LLC*, 288 F.R.D. 407, 412 (N.D. Ill. 2012).

Because Plaintiffs' Complaint explicitly alleges "Roblox procured [] third parties to intercept communications between users and the platform" (Compl. ¶ 57), and given that the ECPA provides no basis for secondary liability, Plaintiffs' ECPA claim against Roblox must be dismissed.

## C.    Plaintiffs Fail to State a Claim Under the SCA.

Plaintiffs' claims under the Stored Communications Act (SCA) are similarly deficient. The SCA was enacted to "address[ ] access to stored wire and electronic communications and transactional records." *Konop v. Hawaiian Airlines, Inc.,* 302 F.3d at 874 (internal quotation marks omitted). It establishes a private right of action against anyone who:

"(1) intentionally accesses without authorization a facility through which an electronic communications service is provided; or (2)

intentionally exceeds an authorization to access that facility; and
thereby obtains, alters, or prevents authorized access to a wire or
electronic communication while it is in electronic storage in such
system."

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1057 (N.D. Cal. 2012) (citing
18 U.S.C. § 2701(a)).

Crucially, to state a valid SCA claim, Plaintiffs must allege that Roblox
accessed **without authorization** "a facility through which an electronic
communication service is provided." *Id.* (citing 18 U.S.C. § 2701(a)(1)). As explained
below, Plaintiffs' allegations fall short of this essential requirement.

> 1.    Roblox cannot be liable under the SCA for accessing its own
>       facility.

Plaintiffs allege Roblox "engag[ed] in the extensive data collection described,
accessed communications in storage on its own servers and on user devices in a
manner that exceeded authorization" in violation of 18 U.S.C. § 1701. (Compl. ¶ 67).
In essence, they claim Roblox illegally accessed communications on its own website
or mobile application. This alleged conduct, however, falls squarely within a critical
exception provided in 18 U.S.C. § 2701(c)(1). This subsection explicitly states that §
2701(a) does not apply "to conduct authorized … by the person or entity providing a
wire or electronic communications service." Roblox, as the provider of the service,
plainly authorized its own access to these communications.

Courts have consistently rejected SCA claims premised on a service provider
accessing its own facilities. In *In re Google Assistant Privacy Litigation*, for example,
plaintiffs made the same allegation: that Google accessed its own "remote servers"
without authorization. 457 F.Supp.3d 797, 822 (N.D. Cal. 2020). The court swiftly
dismissed this argument, holding that "of course, Defendants have authorization to
access their own servers." *Id.* (citing 18 U.S.C. § 2701(c)(1)). This aligns with
established precedent, as seen in *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026-27
(N.D. Cal. 2014), which found that "[t]he SCA grants immunity to 18 U.S.C. § 2701(a)

claims to electronic communication service providers . . . for accessing content on their own servers." Similarly, in *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *12 (N.D. Cal. Dec. 3, 2013), the court stated, "[w]hatever the propriety of Google's actions, it plainly authorized actions that it took itself." Here, Plaintiffs' SCA claim is fatally flawed because Roblox is, by definition, authorized to access its own "facilities."

2.    <u>Plaintiffs' devices are not "facilities" protected under the SCA.</u>

Plaintiffs' SCA claim also fails because their personal devices are not "facilities" protected by the SCA. Plaintiffs allege that "Roblox effectively accessed data stored on users' own devices (such as browser local storage, cookies, or cached app data) by using scripts to retrieve identifiers or fingerprints." (Compl. ¶ 68). This argument mirrors claims rejected in *In re Google Assistant Privacy Litigation*, where plaintiffs similarly contended their personal devices, enabled with "Google Assistant," constituted protected "facilities" under the SCA. 457 F. Supp. 3d 797, 821-22 (N.D. Cal. 2020).  The court in *Google Assistant* correctly recognized that a "facility" under the SCA is one "through which an electronic communication service is provided." 18 U.S.C. § 2701(a)(1). Citing the Fifth Circuit's opinion in *Garcia v. City of Laredo, Tex.*, the court emphasized:

> "The relevant 'facilities' that the SCA is designed to protect are not computers that *enable* the use of an electronic communication service, but instead are facilities that are operated by electronic communication service providers and used to store and maintain electronic storage."

*Garcia v. City of Laredo, Tex.*, 702 F.3d 788, 792 (5th Cir. 2012) (emphasis in original) (holding that plaintiff's cell phone was not a "facility"). Therefore, an "individual's personal device 'does not provide an electronic communication service just because the device *enables* use of electronic communication services,'" *id.* (emphasis in original); "rather, that device is, in every practical sense, the 'user.'" *In re Google*, 457 F. Supp. 3d 797, 821 (quoting *Garcia*, 702 F.3d at 792).

24

As Plaintiffs do not allege themselves to be "electronic communications services," their personal devices cannot be considered "facilities" under the SCA. *See In re iPhone Application Litig.*, 844 F. Supp. 2d at 1058 (noting the "odd" result if a communication service could grant access to user's home computer to third parties through such an interpretation); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 147 (3d Cir. 2015). Plaintiffs' attempt to stretch the definition of "facility" to include their personal devices is unsupported by law and precedent.

Further, as noted by *Garcia*, this interpretation is consistent with the legislative history behind the SCA, which notably only dealt with facilities operated by electronic communications services, such as electronic bulletin boards and computer mail facilities. *Garcia*, 702 F.3d at 793. The legislative history makes no mention of individual devices. *Id.* As Plaintiffs' personal devices are not protected by the SCA, Plaintiffs have no claim under the SCA and it must be dismissed.

3. <u>Plaintiffs consented to the sharing of data.</u>

Plaintiffs allege Roblox violated 18 U.S.C. section 2702(a)(1), which prohibits an electronic communication service from "knowingly divulge[ing] to any person or entity the contents of a communication while in electronic storage by that service . . ." Plaintiffs further contend that by "channeling that information to third parties such as Google, Stripe, or others, Roblox knowingly divulged the contents of stored communications to persons not intended to receive them," citing Roblox's forwarding of an "HTTP request" to "Google Analytics" as an example. (Compl. ¶ 69). The SCA, however, provides a crucial exception: a provider "may divulge the contents of a communication … (3) with the lawful consent of the originator or an addressee or intended recipient of such communication, or the subscriber in the case of remote computing service …" 18 U.S.C. § 2702(b)(3).

Here, Plaintiffs provided their consent to these data exchanges with third parties when they accepted Roblox's terms and conditions. This is directly analogous to the case *Rosenow v. Facebook, Inc*., where the plaintiff alleged he did not consent to

Facebook's disclosure of his "personal and private information" to law enforcement. *Rosenow v. Facebook, Inc.*, No. 19-CV-1297-WQH-MMP, 2025 WL 951277 at *13 (S.D. Cal. Mar. 28, 2025). The defendants countered that the plaintiff "consented to their disclosures by agreeing to their respective privacy policies." *Id*. The court, taking judicial notice of Facebook's operative terms and conditions ("Statements of Rights and Responsibilities") incorporated by reference into the complaint, found that the plaintiff "consented to the terms of Facebook's 2010 Privacy Policy" by accepting the incorporating terms and conditions. *Id*. Because the privacy policy "clear[ly] and unequivoca[lly]" stated that Facebook "may also share information when we have a good faith belief it is necessary to prevent fraud or other illegal activity," the court held that the plaintiff consented to the third-party disclosures, thereby satisfying the exception under 18 U.S.C. § 2702(b)(3).

Plaintiffs' own Complaint here confirms their consent. Plaintiffs acknowledge that "Roblox's privacy disclosures (when carefully read) admit that personal information is shared with third parties for marketing and analytics. In practice, this means data about users (unique IDs, device fingerprints, behavioral profiles) may be shared with outside ad networks or partners who then use it to serve targeted ads or to track the user on other sites." (Compl. ¶ 27). They further state that "Roblox's Privacy Policy (which most users, especially children, are unlikely to read) does disclose in broad terms that Roblox collects device identifiers, usage info, and may use it for improving services or safeguarding their users while in-game . . ." (*Id*., ¶ 30).

As detailed previously in Section IV.B.1., there is simply no disclosure alleged in the Complaint that is not explicitly covered by the Privacy Policy to which Plaintiffs consented. Plaintiffs' conclusory assertion that "Roblox's pervasive data mining was not necessary for providing the Roblox game service – it was done for marketing and analytics, which is outside the scope of any authorization given by users" (Compl. ¶ 71) is directly contradicted by the Privacy Policy itself. The Policy explicitly states that Roblox "may disclose information collected from or about you with third-party

26

advertising companies and/or advertising measurement companies to select advertisements for you, or measure and improve advertising effectiveness." (RJN, Ex. 4, § 4). Therefore, Plaintiffs fail to state a claim under the SCA.

### D.    Plaintiffs Cannot Sustain a Claim Under COPPA.

Plaintiffs' claims under the Children's Online Privacy Protection Act (COPPA) are fatally flawed for multiple reasons, starting with the fundamental principle that the statute does not authorize private enforcement.

#### 1.    COPPA does not authorize a private right of action.

COPPA and its regulations require "companies that operate websites and online services marketed toward children must provide certain disclosures about their data collection activities and must safeguard the confidentiality, security, and integrity of the children's personal online information." *Jones v. Google LLC*, 73 F.4th 636, 641 (9th Cir. 2023). The statute, however, explicitly grants rule-making authority to the Federal Trade Commission ("FTC") and shares enforcement authority with state attorneys general. 15 U.S.C. §§ 6502(b), 6504. Importantly, COPPA ***does not*** authorize a private right of action, a point confirmed by the Ninth Circuit. *Jones*, 73 F.4th at 641 (citing 15 U.S.C. § 6505).

Plaintiffs themselves concede that COPPA "does not provide a private damages right of action for individuals." (Compl. ¶ 76). Nevertheless, they attempt to circumvent this absolute bar by asserting they are not seeking damages but rather invoking COPPA "to establish Roblox's violations of law as a predicate to equitable relief and to highlight that Roblox's purpose in its interception scheme was illegal . . ." (*Id.*). They further assert that they "seek injunctive and declaratory relief to enforce COPPA's requirements, complementing government enforcement." (*Id.*). **COPPA, however, simply does not recognize *any* private right of action, whether for damages or for injunctive and declaratory relief.** As one court put it, "[t]he Court finds that allowing private plaintiffs to bring suits for violations of conducted [sic] regulated by COPPA, even styled in the form of state law claims, with no obligation

27

to cooperate with the FTC inconsistent with the treatment of COPPA violations as outlined in the COPPA statute." *Hubbard v. Google LLC*, 508 F. Supp. 3d 623, 630 (N.D. Cal. 2020). As a private party cannot bring a claim under COPPA, Plaintiffs' COPPA claim fails as a matter of law and must be dismissed.

## 2.    Plaintiffs do not establish COPPA violations.

Even if a private right of action existed, Plaintiffs fail to plausibly allege a COPPA violation. COPPA mandates that "the operator of any website or online service directed to children that collects personal information from children" must obtain "verifiable parental consent for the collection, use, or disclosure of personal information from children . . ." 15 U.S.C.A. § 6502(b). "Verifiable parental consent" is defined as "any reasonable effort (taking into consideration available technology), including a request for authorization for future collection, use, and disclosure described in the notice, to ensure that a parent of a child receives notice of the operator's personal information collection, use, and disclosure practices, and authorizes the collection, use, and disclosure, as applicable, of personal information and the subsequent use of that information before that information is collected from that child." 15 U.S.C. § 6501(9).

Plaintiffs allege "Roblox collected persistent identifiers and associated data from children under 13 (including R.G.) without parental consent." (Compl. ¶ 79). This bare assertion, however, is contradicted by Plaintiffs' own admissions throughout their Complaint. They do not deny agreeing to Roblox's TOU and its incorporated Privacy Policy, which they acknowledge repeatedly. (Compl. ¶¶ 27, 29, 30, 31, 58, 80, 81). The TOU, which R.G.'s parents accepted, clearly states, in relevant part:

> Users under the age of 18 ("Minor Users") require a parent or legal guardian (a "Guardian") to allow them to use the Services and to agree to these User Terms and the other applicable Roblox Terms.  By permitting a Minor User to use the Services,  the Guardian of the Minor User becomes subject to these User Terms and any other applicable Roblox

Terms and agrees to be responsible for the Minor User's
activities on the Services.

(RJN, Ex. 3, 5, § 1). When Plaintiff R.G. accepted the TOU, she explicitly represented

that she obtained parental consent. (Compl. ¶ 29). Plaintiffs Michael and Salena

Garcia, R.G.'s parents, further admit they received email notice of R.G.'s acceptance

of the TOU. (Compl. ¶ 29). They also independently accepted the TOU when creating

their own accounts. (RJN, ¶¶ 3, 5).

As thoroughly discussed above in Section IV. B. 1., the Complaint fails to allege

any disclosure that is not explicitly detailed in Roblox's Privacy Policy. The Privacy

Policy comprehensively outlines Roblox's data collection, use, and disclosure

practices. Therefore, Plaintiffs Michael and Salena Garcia were unequivocally

apprised "of the operator's personal information collection" as required under

COPPA. 15 U.S.C. § 6501(9).

Assuming, *arguendo*, Plaintiffs have a private right of action under COPPA,

which they do not, Plaintiffs received notice and authorized the data collection and

practices through their acceptance of the TOU and Privacy Policy. As such, Plaintiffs

have failed to allege substantive COPPA violations sufficient to support any of their

claims, including their ECPA claim.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Roblox respectfully requests that the Court grant its

Motion to Dismiss as to each cause of action without leave to amend.

DATED: July 23, 2025                    PROCOPIO, CORY, HARGREAVES &

SAVITCH LLP

By:  /s/ Elaine F. Harwell
            Elaine F. Harwell
            Sean M. Sullivan
            Benjamin W. White

            Attorneys for Defendant ROBLOX
            CORPORATION