Elaine F. Harwell (Bar No. 242551)
E-mail: elaine.harwell@procopio.com
Sean M. Sullivan (Bar No. 254372)
E-mail: sean.sullivan@procopio.com
Benjamin White (Bar No. 339169)
E-mail: benjamin.white@procopio.com
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Defendant
ROBLOX CORPORATION

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

MICHAEL GARCIA, SALENA GARCIA, AND R.G., a minor by and through her guardians Michael Garcia and Salena Garcia, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

ROBLOX CORPORATION,

Defendant.

Case No. 2:25-cv-03476

**DEFENDANT ROBLOX CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Date: August 29, 2025
Time: 1:30 p.m.
Dept: 9B
Judge: Judge Wesley L. Hsu

# TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 2
  A. The Court May Consider Roblox's Terms of Use and Privacy Policies ..... 2
    1. Judicial notice is proper for limited purposes. ..... 2
    2. The incorporation by reference doctrine applies. ..... 2
  B. Plaintiffs Lack Standing ..... 4
    1. Plaintiffs have not pled a concrete, particularized injury for their ECPA/SCA claims. ..... 4
    2. Plaintiffs Do Not Allege a Basis for Injunctive Relief. ..... 6
  C. The Complaint Fails to State a Claim ..... 8
    1. Plaintiffs' ECPA claim is insufficiently pled. ..... 8
    2. Plaintiffs' SCA claim is insufficiently pled. ..... 10
    3. Plaintiffs' COPPA claim is insufficiently pled. ..... 11
  D. The Court Should Disregard Plaintiffs' Meet and Confer Arguments ..... 12
  E. The Court Should Dismiss the Complaint With Prejudice. ..... 12
III. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page(s)**

**<u>FEDERAL CASES</u>**

*Bates v. United Parcel Serv., Inc.*
511 F.3d 974 (9th Cir. 2007) ........ 7

*Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*
268 F. Supp. 3d 1029 (N.D. Cal. 2017) ........ 2

*Carrico v. City & County of San Francisco*
656 F.3d 1002 (9th Cir. 2011) ........ 13

*City of Los Angeles v. Lyons*
461 U.S. 95 (1983) ........ 7

*Daniels-Hall v. Nat'l Educ. Ass'n*
629 F.3d 992 (9th Cir. 2010) ........ 2

*Davidson v. Kimberly-Clark Corp.*
889 F.3d 956 (9th Cir. 2018) ........ 7

*Grant v. Aurora Loan Servs., Inc.*
736 F. Supp. 2d 1257 (C.D. Cal. 2010) ........ 3

*Hodgers-Durgin v. de la Vina*
199 F.3d 1037 (9th Cir. 1999) ........ 7

*Hubbard v. Google LLC*
508 F. Supp. 3d 623 (N.D. Cal. 2020) ........ 11

*In re Carrier IQ, Inc.*
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 9

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020) ........ 5, 6

*In re Google, Inc. Privacy Pol'y Litig.*, No. 5:12–CV–001382–PSG,
2015 WL 4317479 (N.D. Cal. July 15, 2015) ........ 6

*In re iPhone Application Litig.*
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 10

*Khoja v. Orexigen Therapeutics, Inc.*
899 F.3d 988 (9th Cir. 2018) .......... 3

*Konop v. Hawaiian Airlines, Inc.*
302 F.3d 868 (9th Cir. 2002) .......... 6, 8

*Nissou-Rabban v. Cap. One Bank (USA), N.A.*
285 F. Supp. 3d 1136 (S.D. Cal. 2018) .......... 9

*Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 4

*Spokeo, Inc. v. Robins*
578 U.S. 330 (2016) .......... 4, 6

*Thurman v. Murillo*
No. 23-55010, 2024 WL 385652 (9th Cir. Feb. 1, 2024) .......... 12

*TransUnion LLC v. Ramirez*
594 U.S. 413 (2021) .......... 4, 5, 6, 7

*United States v. Corinthian Colleges*
655 F.3d 984 (9th Cir. 2011) .......... 12

*United States v. Hayes*
763 F. Supp. 3d 1054 (E.D. Cal. 2025) .......... 3

*United States v. Ritchie*
342 F.3d 903 (9th Cir. 2003) .......... 3

*V5 Tech. v. Switch, Ltd.*
334 F.R.D. 297 (D. Nev. 2019) .......... 12

*Williams v. Apple, Inc.*
449 F. Supp. 3d 892 (N.D. Cal. 2020) .......... 6, 7

**FEDERAL STATUTES, REGULATIONS, AND RULES**

18 U.S.C.
§ 2510(8) .......... 8
§ 2511(2)(d) .......... 9
§ 2520(a) .......... 9
§ 2701(a)(1) .......... 10
§ 2701(c)(1) .......... 10

§ 2702(a) .......... 10
§ 2702(b)(3) .......... 11

Defendant Roblox Corporation ("Roblox" or "Defendant") submits this reply ("Reply") in further support of its motion to dismiss ("Motion") the complaint ("Complaint" or "Compl.") and in response to Plaintiffs' nearly two-weeks-late opposition (Dkt. No. 24) ("Opposition" or "Opp.").

## I. INTRODUCTION

Extra time did not cure the Complaint's defects. Plaintiffs' Opposition skims the surface of legal rules while avoiding the substance of what is pled. At its core, the Complaint still fails on multiple fundamental grounds: Plaintiffs identify no concrete, particularized injuries that would confer Article III standing. They cannot escape the "one party consent" exception that defeats their Electronic Communications Privacy Act ("ECPA") claims. The Stored Communications Act ("SCA") allegations collapse because, by their own admission, the supposed "access" was limited to Roblox's own systems, not covered "facilities." Most tellingly, Plaintiffs acknowledge there is no private right of action under the Children's Online Privacy Protection Act ("COPPA") yet inexplicably ask to proceed anyway.

The Opposition's deficiencies speak volumes. It rarely references the Complaint itself and never bridges the gap between pleaded facts and standing requirements for either damages or injunctive relief. It sidesteps the one-party-consent authorities and "own facility" SCA precedents cited by Defendant and offers no viable path for private litigants to assert COPPA claims.[1] This case suffers from irreparable legal defects that no amount of artful briefing can cure. The Court should dismiss the Complaint entirely with prejudice.

/ / /

/ / /

/ / /

/ / /

[1] Strangely, the Opposition dedicates multiple pages to 47 U.S.C. Section 230, which is not discussed in the Motion or the Complaint. (*See* Opp. at 3, 8-9, 18, 20).

## II. ARGUMENT

### A. The Court May Consider Roblox's Terms of Use and Privacy Policies

1. <u>Judicial notice is proper for limited purposes.</u>

Roblox requests judicial notice of publicly available versions of its Terms of Use and Privacy Policies referenced in the Complaint that each Plaintiff accepted. (*See* Dkt. No. 17-2 ("RJN")). Under Rule 201, courts may notice the existence and date of such materials, but not the truth of reasonably disputed factual assertions contained in them. *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017) (stating "[c]ourts cannot take judicial notice of the contents of documents for the truth of the matters asserted therein ***when the facts are disputed***") (emphasis added). Plaintiffs do not challenge the authenticity of these exhibits or that these pages existed on the dates shown; they merely label the policies "evolving." (Opp. at 12:12 – 14). The Court may therefore take notice that these versions existed on particular dates and contained the text shown.

Plaintiffs' reliance on *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010), does not support their argument. There, the Ninth Circuit approved judicial notice of the contents of government websites where authenticity was undisputed. *Id.* (finding judicial notice appropriate where information was made publicly available and "neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein"). Here, Roblox invokes Rule 201 for a narrower purpose: the existence/date and the text published, not to resolve contested facts.

As such, it is proper for the Court to take judicial notice of Terms of Use and Privacy Policies as Roblox requests.

2. <u>The incorporation by reference doctrine applies.</u>

Separately, the Terms of Use and Privacy Policies are reviewable under the incorporation-by-reference doctrine. The incorporation by reference doctrine "permits a court deciding a Rule 12(b)(6) motion to consider documents incorporated by

reference, but not physically attached to the complaint, if they are central to plaintiff's claim and no party questions their authenticity." *Grant v. Aurora Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 n.37 (C.D. Cal. 2010).

The Complaint's theories (lack of consent; inadequate disclosures; purported contradictions with Roblox's stated practices) put the operative Terms of Use and Privacy Policies front and center. (*See* Compl. ¶¶ 24, 27, 29, 30, 31, 58, 80, 81). Plaintiffs cannot both premise their claims on those disclosures and prevent the Court from reading them. *See Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002–03 (9th Cir. 2018).

Plaintiffs, in their Opposition, rely on two cases, *Khoja,* 899 F.3d at 988, and *United States v. Ritchie*, 342 F.3d 903, 906 (9th Cir. 2003), for the position that "[i]ncorporation is a 'narrow' doctrine applied 'sparingly.'" (Opp. at 12:27-13:2). Notably, however, while those cases discuss the incorporation by reference doctrine, ***neither uses the quoted phrases "narrow" or "sparingly" as cited in Plaintiffs' Opposition***. Thus, Plaintiffs have misquoted the cases multiple times in their Opposition.[2] (*See* Opp. at 5:25–27; 10:5–8; 12:27–13:2).

Regardless, Plaintiffs do not dispute the authenticity of any document, as discussed *supra*. Instead, Plaintiffs argue the Complaint "challenges the adequacy and enforceability of Roblox's disclosures." Yet they also alleged to somehow not "adopt or rely on [them]." (Opp. at 10:22-25). Plaintiffs' position is inconsistent as they would have the Court construe their detailed allegations and quotations of Roblox's policies as fact, but then also assert the policies cannot be incorporated by reference where the doctrine does not serve their interests.

/ / /

[2] These nonexistent quotes, together with other features of the Opposition such as the superfluous Section 230 discussion, lend themselves to the strong suggestion that counsel relied on artificial intelligence or other similar technologies and did not sufficiently review the output product. Courts routinely admonish and even sanction similar conduct. *See, e.g., United States v. Hayes*, 763 F. Supp. 3d 1054, 1064 (E.D. Cal. 2025) (issuing sanctions for reliance on fictitious quotations).

Notably, in *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) (Hsu, J. presiding), plaintiff asserted defendant unlawfully shared users' personally identifiable and health information with third party advertisers through tracking tools on its website. The Court, in finding the defendant's privacy policy was incorporated by reference, relied on the fact "Plaintiff cites to them at least twice" and "they form the basis of her claims in that whether the policy discloses Defendant's use of any tracking tools is critical for establishing Defendant's potential liability." *Id.* at *4.

Here, as Plaintiffs have repeatedly referenced and extensively relied upon the Roblox Terms of Use and Privacy Policy, the Court may not only grant the judicial notice as to the existence and dates of the identified web pages and filings, but also consider the Terms of Use and Privacy Policies under the incorporation-by-reference doctrine.

**B. Plaintiffs Lack Standing**

1. <u>Plaintiffs have not pled a concrete, particularized injury for their ECPA/SCA claims.</u>

Plaintiffs never plausibly allege any concrete injury, *e.g.*, what content (as opposed to generic metadata) was captured from which Plaintiff, when, by what mechanism, or how it was tied to that Plaintiff's identity and later used or disclosed. Those omissions are dispositive on a facial attack. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–42 (2016) (a statutory violation does not itself confer standing; injury must be concrete and particularized); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–33 (2021) (finding the same; plaintiffs must show a harm with a "close relationship" to traditionally cognizable harms, not a bare procedural infraction).

Plaintiff's Opposition asserts, without citing to any paragraph of the Complaint, that Roblox's alleged "[s]ubstantive privacy invasions" suffice to establish standing. (Opp. at 13:25 – 14:6). Not so. The pleading does not identify any contemporaneous interception of contents of any of Plaintiffs communications or substantive

information obtained from ***them specifically*** (as ECPA requires), the repository allegedly accessed (as the SCA requires), or any downstream disclosure of any named Plaintiff's data. Those are not merits critiques; they are the factual predicates for concrete harm.

Plaintiffs argue "TransUnion distinguishes between risk-only claims and completed violations causing concrete harm; Plaintiffs allege the latter." *Id.* at 14:13- 15. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 426–33 (2021), however, did not discuss invasion of privacy or interception of data, let alone stand for the proposition that collection of personal information constitutes a concrete privacy injury. While violations of privacy can be actionable, plaintiffs must do more than assert vague references to interceptions of communications or access to data without authorization to satisfy the requirements under Article III of an injury that is concrete and particularized. A particularized injury must affect the plaintiff in a personal and individual way, while a concrete injury must be real and not abstract or purely procedural.

Indeed, the Ninth Circuit decisions Plaintiffs rely on illustrate the gap in their pleading. In *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598–99 (9th Cir. 2020), plaintiffs alleged Facebook surreptitiously tracked logged-out users' browsing histories across the web using cookies, captured granular URL strings revealing page requests, associated them with specific user IDs, and disseminated them, facts the court held plausibly implicated concrete privacy interests. Here, by contrast, Plaintiffs do not identify any comparable details: no logged-out tracking theory, no specific URL or query contents attributed to any Plaintiff, no allegation of linkage to a persistent identifier, and no particularized dissemination or misuse. They just recite statutory language or assert very generalized privacy violations. That failure to allege what was captured, about whom, and how it was used defeats concreteness and particularization at the pleading stage.

/ / /

District courts regularly dismiss similar "interception" complaints when they do not specify (i) the information allegedly intercepted, (ii) the path/mechanism of capture, and (iii) the use or disclosure tying the practice to a particular plaintiff. *See*, e.g., *In re Google, Inc. Privacy Pol'y Litig*., No. 5:12–CV–001382–PSG, 2015 WL 4317479, at *4 (N.D. Cal. July 15, 2015) (rejecting standing where plaintiffs alleged "economic injury resulting from Google's providing access to Plaintiffs' personal information to third parties, and the non-economic harm associated with the very fact of this access."); *cf. Konop v. Hawaiian Airlines, Inc*., 302 F.3d 868, 878 (9th Cir. 2002) (stating ECPA interaction requires contemporaneous acquisition; whether that occurred turns on specific technical facts plaintiffs have not pled).

Plaintiffs also assert that they "allege economic injury (e.g., loss of the benefit of their bargain and the diminished value/control of their data and device resources)." (Opp. at 14:8-10). The Complaint cites none of that. It does not allege what price Plaintiffs paid, what privacy promise supposedly commanded a price premium, how they overpaid, or any facts showing Roblox "diminished [the] value/control of their data and device resources." *Id.* Conclusory allegations that Roblox benefitted from intercepting data likewise do not establish injury and standing.

In short, unlike the detailed tracking allegations that satisfied concreteness in *Facebook Internet Tracking*, Plaintiffs offer only abstract labels ("interception," "harvesting") unmoored to particularized facts about any named Plaintiff. Under *Spokeo* and *TransUnion*, that is not enough. The ECPA/SCA damages claims should be dismissed for lack of Article III standing.

2. <u>Plaintiffs Do Not Allege a Basis for Injunctive Relief.</u>

Plaintiffs fail to allege "a sufficient likelihood that [they] will again be wronged in a similar way" absent injunctive relief. *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 906 (N.D. Cal. 2020) (quotation omitted). Plaintiffs' Opposition asserts "ongoing exposure," (Opp. 15:6), but the Complaint alleges only past conduct, such as that Roblox "intercepted, stored, and disseminated" data, (Compl. ¶ 12), and affirmatively

pleads that, had Plaintiffs known of the alleged practices, "they would not have supported the platform financially," (*id.* ¶ 34), and that Roblox "shattered" their privacy expectations, (*id.* ¶ 32). Those allegations do not plausibly suggest that any named plaintiff intends to use Roblox again and faces a real and immediate threat of future harm. *Williams*, 449 F. Supp. 3d at 906 (no injunctive standing absent likely future injury).

The Ninth Circuit's injunctive-standing decisions confirm the point. In *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969–70 (9th Cir. 2018), injunctive relief was permitted only because the plaintiff plausibly alleged an intent to purchase the product again but could not rely on defendant's representations. Here, Plaintiffs plead the opposite, no intent to continue using or "support[ing]" Roblox, so *Davidson* is inapposite. Further, a putative class cannot cure the named plaintiffs' lack of standing for prospective relief. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (en banc); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc).

Nor does the request for COPPA-aligned declaratory/injunctive relief change the Article III analysis. Forward-looking remedies require a "real and immediate threat of repeated injury," not merely past exposure. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–06 (1983); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 435–36 (2021) (finding plaintiffs seeking injunctive relief must demonstrate a risk of future harm that is sufficiently imminent and substantial). Plaintiffs plead no facts showing ongoing use of Roblox or an intent to return such that future harm is likely.

Because the named Plaintiffs allege only past injury and disclaim any intent to use the platform going forward, the Court should dismiss their claims for injunctive and declaratory relief for lack of Article III standing.

/ / /

/ / /

/ / /

**C. The Complaint Fails to State a Claim**

The Complaint's deficiencies extend far beyond standing. Although the Opposition dismisses Roblox's claim-specific arguments as "factual disputes," pleading deficiencies are ripe for resolution on a motion to dismiss.

1. Plaintiffs' ECPA claim is insufficiently pled.

According to the Opposition, "[t]he Complaint alleges contemporaneous acquisition of the substance of users' communications—e.g., specific page paths, queries, and interaction data revealing what users said/requested—while those communications were in transit." (Opp. at 16:10-12). But while the Complaint recites collections of "technical fingerprints (canvas hashes, audio hashes, installed fonts, GPU and CPU traits), persistent IDs linking sessions, behavioral metrics (typing speed, clicking patterns), and context about the user's content (such as which games or pages they visit)" (Compl. ¶ 26), Plaintiffs never identify any *substantive* "content" that was communicated. *Id.; see also* 18 U.S.C. § 2510(8) (defining "contents" as information concerning the "substance, purport, or meaning" of a communication). Nor does the Opposition cite any paragraph that that actually pleads "contemporaneous acquisition of the substance of users' communications." (Opp. at 16:10-11). An "interception" must be contemporaneous with transmission; allegations that information was later "stored and disseminated" (Compl. ¶ 12) do not satisfy this requirement. *Konop*, 302 F.3d at 878.

Plaintiffs also dismiss Roblox's "party exception" arguments as "fact disputes" (Opp. at 16:24-27), but the exception applies from the face of their own pleading. ***Plaintiffs*** allege Roblox violated the ECPA "by intentionally intercepting the electronic communications between users and Roblox's platform," and that "Roblox designed and deployed software code as an intercepting 'device' to divert portions of the communications stream to itself and third parties." (Compl. ¶ 53). By Plaintiffs' own account, Roblox was a party to the very communications it received from users on its platform. ECPA makes clear it "shall not be unlawful" for a party to intercept a

communication, absent an independent criminal or tortious purpose. 18 U.S.C. § 2511(2)(d). Plaintiffs plead no facts showing any separate criminal or tortious purpose beyond the interception theory itself.

Nor is "consent" a free-floating "fact dispute" on this record. It is the Opposition, not the Complaint, that questions "what screens were presented, how conspicuous, what minors or parents saw, whether consent was informed/specific, and whether it covered the challenged interceptions." (Opp. at 16:24-27). The Complaint itself alleges that Roblox provided a clickwrap "Terms of Use and Privacy Policy," including "to the provided parental email address," and that Privacy Policy disclosed collection of device identifiers and usage information. (Compl. ¶¶ 29–31, 58 ("Privacy Policy …does disclose in broad terms that Roblox collects device identifiers, usage info, and may use it for improving services or safeguarding their users while in-game . . ."). On a Rule 12 motion, the Court looks to the Complaint, incorporated materials, and matters properly noticed. *Nissou-Rabban v. Cap. One Bank (USA), N.A.*, 285 F. Supp. 3d 1136, 1146 (S.D. Cal. 2018). Plaintiffs plead neither the absence of consent nor facts that would take this case outside § 2511(2)(d); and, as discussed *supra*, the Court may consider Plaintiffs' unchallenged acceptance of the TOU/Privacy Policy.

Finally, the Opposition's summary conclusion that Roblox's "procurement" of interceptions by others is a "factual" determination fares no better. (Opp. at 17:2-5). The question of whether the ECPA contemplates secondary liability is one of law, not fact. The ECPA provides a civil remedy against the person "**which engaged in that violation,**" 18 U.S.C. § 2520(a) (emphasis added), and courts have consistently found there is no aiding and abetting or secondary liability under the ECPA. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1089 (N.D. Cal. 2015). Plaintiffs, in their three-sentence discussion of secondary liability, do not address the plain language of the ECPA. That theory requires well-pled facts that (i) a third party actually intercepted contents contemporaneously in violation of § 2511 and (ii) Roblox intentionally caused that

unlawful interception. Plaintiffs allege neither who intercepted what "contents," nor when, nor how. As such, Plaintiffs' ECPA claim should be dismissed.

2. <u>Plaintiffs' SCA claim is insufficiently pled.</u>

The SCAs' access prong requires an allegation that Roblox, ***without authorization,*** accessed "a ***facility*** through which an electronic communication service is provided." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1057 (N.D. Cal. 2012) (citing 18 U.S.C. § 2701(a)(1)) (emphasis added). The Opposition contends "[w]hether the repositories at issue (provider-side servers, caches, or analogous systems) are a 'facility through which an ECS is provided' and whether the data was in 'electronic storage' (subparts A/B) are mixed questions of law and fact not amenable to Rule 12 dismissal." (Opp. at 17:15-19). Plaintiffs' own pleading forecloses that theory. They allege Roblox accessed communications "in storage ***on its own servers*** and on ***user devices***." (Compl. ¶ 67 (emphasis added)). Accessing one's own systems is expressly excluded. *See* § 2701(c)(1) (conduct "authorized . . . by the person or entity providing" the service); *iPhone Application*, 844 F. Supp. 2d at 1059-60. Further, end-user devices are not "facilities through which an ECS is provided." *Id.* at 1060. Here, Plaintiffs unambiguously allege Roblox only accessed its own facilities or mobile phones that do not constitute facilities. (*See* discussion, Mot. at 23-24). Courts have consistently rejected similar claims. *Id.* (collecting cases).

Plaintiffs' disclosure theory under § 2702 fares no better. That provision applies only to a provider's knowing divulgence of the contents of communications in its custody, in its capacity as an ECS/RCS provider, and subject to enumerated exceptions. 18 U.S.C. § 2702(a). The Opposition (not the Complaint) alleges Roblox "knowingly divulged the contents of communications to third parties without valid consent." (Opp. at 17: 21-22). Yet in the Complaint, Plaintiffs acknowledge "Roblox's privacy disclosures (when carefully read) admit that personal information is shared with third parties for marketing and analytics." (Compl. ¶¶ 27, 30). The TOU, which the Court may also consider, only reinforce Plaintiffs' consent to the alleged third-

party sharing. Those concessions undercut any bare assertion of an unlawful divulgence and, at minimum, implicate the statute's consent exception. *See* § 2702(b)(3).

Stripped of rhetoric, the Complaint alleges access to Roblox's own servers and user devices, and alleges disclosures of non-content metadata. No SCA claim can be sustained on those allegations.

3. <u>Plaintiffs' COPPA claim is insufficiently pled.</u>

It is undisputed that COPPA provides no private right of action, either for damages or equitable relief. *See Hubbard v. Google LLC*, 508 F. Supp. 3d 623, 629-30 (N.D. Cal. 2020). Plaintiffs all but concede as much, acknowledging the Court may "conclude[] private plaintiffs cannot obtain COPPA-specific equitable relief," then suggesting that would not affect their ECPA/SCA claims. (Opp. at 18:7-8). But that concession resolves the point: Plaintiffs cannot use the ECPA or the SCA to salvage a standalone COPPA cause of action. A claim that does not exist cannot be re-pled by reframing the remedy.

Plaintiffs also say the Motion raises "merits and remedial questions better addressed on a fuller record (*e.g.*, what information was collected from minors, what notices were given to parents, what verification occurred)." (Opp. at 18:4-7). The pleading, however—not hypothetical proof—controls Rule 12. And the Complaint repeatedly acknowledges assent to Roblox's Terms of Use and its incorporated Privacy Policy. (Compl. ¶¶ 27, 29, 30, 31, 58, 80, 81). When Plaintiff R.G. accepted the Terms of Use, she explicitly represented that she obtained parental consent. (Compl. ¶ 29). Plaintiffs Michael and Salena Garcia further admit they received email notice of R.G.'s acceptance of the Terms of Use. (Compl. ¶ 29). They also independently accepted the Terms of Use when using the platform. (RJN, ¶¶ 3, 5). Those admissions and judicially noticeable facts reinforce why the COPPA count fails as a matter of law. Even crediting Plaintiffs' allegations, COPPA affords them no private cause of action.

As COPPA does not recognize private suits, amendment would be futile. The COPPA claim should be dismissed without leave to amend.

**D. The Court Should Disregard Plaintiffs' Meet and Confer Arguments**

Plaintiffs devote pages to argue that the pre-filing conference failed to meet the Local Rule timing requirements. But they never contend there was no conference; to the contrary, they concede the parties held a live conference call and substantively discussed the motion. *Id.* They also do not dispute the supporting Declaration, which shows defense counsel began trying to schedule the conference on July 14, offered to meet at any time (including after hours), and Plaintiffs' counsel declined to meet earlier or extend the deadline. Dkt. 17-3.

Plaintiffs' claim of prejudice is unsupported. They identify no issue they would have narrowed with more time and, during the call, refused both to narrow issues and to extend the meet-and-confer period. Under these circumstances, denial on Local Rule 7-3 grounds is unwarranted. *See Thurman v. Murillo*, No. 23-55010, 2024 WL 385652, at *1 (9th Cir. Feb. 1, 2024) (finding the meet-and-confer requirement promotes efficiency but "does not grant a right to any party, nor does it protect a party from unfair prejudice"). Courts routinely decline to reward gamesmanship that frustrates conferral. *See V5 Tech. v. Switch, Ltd*., 334 F.R.D. 297, 302 (D. Nev. 2019) (stating "gamesmanship … that thwarts the meet-and-confer process is not grounds to deny" relief).

The meet-and-confer rule exists to facilitate resolution and streamline disputes, not to manufacture a procedural veto where no prejudice exists. The Court should reject Plaintiffs' red-herring argument and reach the merits.

**E. The Court Should Dismiss the Complaint With Prejudice.**

"Leave to amend is warranted if the deficiencies can be cured with additional allegations that are 'consistent with the challenged pleading' and that do not contradict the allegations in the original complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (internal quotes omitted). Leave to amend "is properly

denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

Overcoming Plaintiffs' lack of standing and other defects would require contradicting the original Complaint and judicially noticeable records. Plaintiffs cannot reverse course to allege non-informational injury or continuing harm. Having cited the Privacy Policy throughout the Complaint, Plaintiffs also cannot delete these allegations and feign ignorance or retract their consent. Additionally, allowing amendment will not change the fact that COPPA does not permit a private right of action or that the ECPA does not contemplate procurement liability. As such, amendment in this instance is futile and the Court should dismiss the Complaint with prejudice.

## III. CONCLUSION

For the foregoing reasons, and as discussed in the Motion, Roblox requests the Court grant its Motion to Dismiss as to each cause of action without leave to amend.

DATED: August 29, 2025

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: */s/ Elaine F. Harwell*
Elaine F. Harwell
Sean M. Sullivan
Benjamin White

Attorneys for Defendant
ROBLOX CORPORATION

**L.R. 11-6 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Roblox, certifies that the Reply in Support of Motion to Dismiss (Dkt. No. 27) contains 3,914 words, which complies with the word limits of L.R. 11-6.1 and Section G.4 of the Court's Standing Order For Newly Assigned Civil Cases.

DATED: August 29, 2025

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: */s/ Elaine F. Harwell*
Elaine F. Harwell
Sean M. Sullivan
Benjamin White

Attorneys for Defendant
ROBLOX CORPORATION