# EXHIBIT 1

Robert B. Salgado, Esq. (SBN 297391)
COUNTERPOINT LEGAL
600 B Street, Ste 1550
San Diego, CA 92101
Tel: (619) 780-3303
Fax: (619) 344-0332
*rsalgado@counterpointfirm.com*

Counsel for Plaintiffs

**Electronically FILED by
Superior Court of California,
County of Los Angeles
4/18/2025 3:50 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By C. Vega, Deputy Clerk**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES – COMPLEX CIVIL

MICHAEL GARCIA, SALENA GARCIA, AND R.G., a minor, by her guardian Michael Garcia, on behalf of themselves and all others similarly situated

Plaintiff,

v.

ROBLOX CORPORATION, a Delaware corporation, and DOES 1-10, inclusive,

Defendants.

CASE NO. 25STCV11498

*Assigned to*

**CLASS ACTION COMPLAINT FOR:**

1. **CALIFORNIA INVASION OF PRIVACY ACT (CIPA)**
2. **CALIFORNIA CONSUMER PRIVACY ACT (CCPA)**
3. **CALIFORNIA "SHINE THE LIGHT" LAW**
4. **CALIFORNIA UNFAIR COMPETITION LAW**
5. **INTRUSION UPON SECLUSION**
6. **VIOLATION OF CALIFORNIA CHILDREN'S ONLINE PRIVACY PROTECTIONS**

JURY TRIAL DEMANDED

## I.    INTRODUCTION

1.    Plaintiffs bring this class action on behalf of all California residents who have used the Roblox platform since July 1, 2021 – including minors and their parents – against Defendant Roblox Corporation ("Roblox") for unlawful tracking and data-harvesting practices. Roblox has surreptitiously collected users' personally identifiable data (notably children's data) through covert device fingerprinting, keylogging, and cross-platform surveillance on its website and apps, all without users'

knowledge or consent. This action seeks to hold Roblox accountable for violating California's privacy and consumer protection laws, including the California Invasion of Privacy Act, the California Consumer Privacy Act (as amended by the CPRA), California's "Shine the Light" law, the Unfair Competition Law, the common law tort of Intrusion Upon Seclusion, and California's children's online privacy provisions (such as the Age-Appropriate Design Code and COPPA-related duties). Plaintiffs seek injunctive relief to stop these practices, statutory damages (e.g. $5,000 per violation under CIPA, $3,000 per willful violation under Shine the Light), as well as declaratory, restitutionary, and punitive relief to punish and deter Roblox's conduct.

### A.  **Roblox's Platform Dominated by Children**

2.      Roblox operates a massively popular online "metaverse" of user-created games and virtual experiences. Many of its users are children under 13 – roughly 60% of Roblox's daily active users were 13 years of age and older, and 40% were under the age of 13.[1] Roblox's business model targets young audiences through child-friendly branding and content. By design, Roblox knew or should have known that a significant portion of its users are minors. Despite this, Roblox has engaged in data practices that track, profile, and exploit these minors across devices and over time. Roblox's own privacy disclosures acknowledge that it displays targeted ads to users and "tracks users on the service and across the internet over time," even while claiming not to sell personal data. In reality, Roblox shares user personal information with third parties for marketing and personalized advertising and even permits third-party companies to collect data from Roblox users for their own purposes. These practices violate California statutes and offend public policy by intruding on consumers' and children's privacy.

### B.  **Summary of Violations**

3.      Forensic analysis shows that Roblox's website and mobile apps embed hidden code that tracks users from the moment they visit or launch Roblox – even if they do not log in or have an account. Roblox secretly deploys techniques such as canvas fingerprinting (using the HTML5 Canvas API to

---

[1] Roblox 10-k filing for fiscal year ended December 31, 2024, filed February 18, 2025, SEC Accession Number: 0001315098-25-25632911.

CLASS ACTION COMPLAINT

generate a unique device rendering signature) and audio fingerprinting (using the Web Audio API to capture device-specific acoustic signatures) to create a persistent profile of a user's device. Roblox sets unique identifiers and cookies on user devices before any login or age verification, enabling it to recognize and track users on return visits and across different platforms. Roblox's systems capture extensive device and session information – including browser type and settings, installed fonts/graphics data, IP address, screen resolution, device identifiers, and other digital signatures – and transmit this information to Roblox's servers for analysis. These tracking signals have been documented in network logs (HTTP Archive "HAR" files and packet captures) using tools like Chrome DevTools, Charles Proxy, and Wireshark, confirming that Roblox covertly harvests data from users (including minors) on an ongoing basis. Roblox also employs persistent identifiers (for example, a browser cookie or local storage key known as ".RBXID") to tag users' browsers/devices. This allows Roblox to link a user's actions across multiple sessions and even across devices, effectively conducting cross-platform surveillance (for instance, connecting a user's web browser identity with their mobile app activity) without transparent notice or consent.

## C. Third-Party Data Sharing

4. Roblox's tracking apparatus is not used solely for internal functionality – it also sends user data to third-party analytics and advertising partners. Roblox's code causes users' devices to silently communicate with domains and services beyond the core game content delivery. For example, Roblox owns and operates a dedicated tracking domain "rbxtrk.com" used for collecting user data. Roblox also integrates third-party services such as Arkose Labs (a bot-detection and fraud prevention vendor) whose scripts run on Roblox and gather detailed device and behavior information from users (including minors) as part of security checks. Further, Roblox includes analytics and marketing trackers (like Google Analytics and other advertising pixels) that result in users' personal information being transmitted to outside companies for profiling and ad targeting. Roblox's own privacy policy evaluation confirms that personal information is shared with third parties and used for analytics and third-party marketing, including the creation of data profiles for personalized ads. In practical terms, children on Roblox are being tracked and profiled by ad-tech partners without their or their parents' knowledge. This secret data sharing with third parties violates multiple California privacy laws – including the

1   Shine the Light law's requirements about disclosing third-party data sharing – and contravenes the

2   reasonable expectations of parents and young users regarding a "safe" online play environment.

3             **D.  No Consent or Adequate Disclosure**

4        5.     At no point do Roblox's child users or their parents provide knowing, informed consent

5   to this intensive tracking. No conspicuous opt-in consent is requested when personal information is first

6   collected from minors. Roblox's user interface and onboarding process do not warn that the child's

7   device will be fingerprinted or that data will be transmitted to third-party marketing and analytics

8   services before any account creation or permission. In fact, Roblox's design bypasses parental consent

9   entirely, even though Roblox knows it is collecting personal information from children under 13.

10   Roblox's policies implicitly acknowledge that the service is used by children under 13 and that personal

11   data from those children is collected, yet "parental consent is not required before personal information

12   is collected or disclosed" for those users. This practice directly violates the California Consumer

13   Privacy Act/Privacy Rights Act (which imposes opt-in consent for sharing data of consumers under 16,

14   and parental consent for under 13) and flouts California's stringent protections for minors' data

15   (including the Age-Appropriate Design Code's requirement of high default privacy settings for

16   minors). Plaintiffs have compiled detailed technical evidence of these practices , and through this action

17   seek to put an end to Roblox's unlawful exploitation of its users' data – especially the personal data of

18   children.

19             **II.    JURISDICTION AND VENUE**

20        6.     This Court has subject matter jurisdiction over this action under Code of Civil Procedure

21   §410.10. The causes of action arise under California statutes and California common law, and the relief

22   sought exceeds the jurisdictional minimum of this Court. This case is not subject to exclusive federal

23   jurisdiction, as it asserts no federal causes of action and concerns California laws of general

24   applicability.

25        7.     Roblox Corporation is subject to personal jurisdiction in California. Defendant is a

26   Delaware corporation headquartered in San Mateo County, California. Roblox conducts substantial

27   business in California, including maintaining its principal offices here and operating an online platform

28   used by millions of California residents (including the proposed Class members). The wrongful acts

CLASS ACTION COMPLAINT

1  alleged in this Complaint were conceived, directed, and executed from California, and Roblox has

2  knowingly engaged in unlawful practices to the detriment of Californians, purposefully availing itself

3  of California law.

4         8.     **Venue is proper** in this Court pursuant to California Code of Civil Procedure §§ 395(a)

5  and 395.5. Although Plaintiffs Michael Garcia, Salena Garcia, and minor R.G. reside in San Diego

6  County, and Defendant Roblox Corporation is headquartered in San Mateo County, venue is proper in

7  Los Angeles County because Defendant conducts substantial business throughout California, including

8  within this County. A substantial part of the acts and omissions giving rise to Plaintiffs' and the Class's

9  claims occurred in this County, including the collection and exploitation of personal data in violation

10  of statutory and common law rights. Plaintiffs and Class Members suffered harm in this County, making

11  venue appropriate.

12                     **III.**    <u>**PARTIES**</u>

13         9.     Plaintiff Michael Garcia is an adult individual and a resident of San Diego County,

14  California. He is the father and legal guardian of Plaintiff R.G., a minor. Michael Garcia created a

15  Roblox user account and has used the Roblox platform, including the Roblox website and mobile app,

16  in California. He allowed his 12-year-old daughter R.G. to use Roblox during the relevant period, under

17  the belief that it was a safe, child-friendly service. Michael Garcia's own personal information (such as

18  device details and usage data) was also collected when he used Roblox, and his rights as a consumer

19  and as a parent were violated by Roblox's conduct. He brings this action both on his own behalf and

20  on behalf of his minor daughter R.G. Michael Garcia has a strong interest in protecting his child's

21  privacy and preventing unauthorized tracking of his child's online activities. Had he known that Roblox

22  was engaging in pervasive surveillance of his daughter's device and interactions, he would have taken

23  steps to prevent or limit R.G.'s use of the platform.

24        10.    Plaintiff Salena Garcia is an adult individual and resident of San Diego County,

25  California. She is the stepmother of Plaintiff R.G. and has also used the Roblox platform in California.

26  Salena Garcia maintained a Roblox user account to monitor or participate in her stepdaughter's online

27  play. In doing so, her personal information and usage data were likewise tracked by Roblox without

28  consent. She joins this action to represent the interests of herself and other California users who were

subjected to Roblox's data collection practices. As a parent-figure to a Roblox user, Salena Garcia was misled about the privacy protections in place and suffered a loss of control over personal and familial information.

11.     Plaintiff R.G. is a 12-year-old minor residing in San Diego County, California. Her brings this action through her father and guardian, Michael Garcia. R.G. has been a frequent Roblox user since approximately 2021 (from around age 8 or 9 through his current age 12). She has accessed Roblox via multiple platforms, including using a web browser on a home computer and the Roblox app on a smartphone/tablet. At all relevant times, R.G. was under the age of 13 and legally incapable of providing consent to the collection of her data. Each time R.G. visited Roblox's website or opened the Roblox app, Roblox's software immediately and invisibly harvested information from her device (such as unique device fingerprints, persistent identifiers, and detailed telemetry about her behavior) without any notice to or permission from R.G. or her parents. R.G. – through his guardian – seeks relief for the unlawful invasion of her privacy and the violation of her statutory rights as a minor under California law.

12.     Defendant Roblox Corporation ("Roblox") is a Delaware corporation with its principal place of business in San Mateo County, California. Roblox develops, owns, and operates the "Roblox" online platform, which is accessible via web browsers at roblox.com and through Roblox applications on various operating systems (including Windows, macOS, iOS, Android, and gaming consoles). Roblox earns substantial revenue from its platform, including sales of virtual currency ("Robux"), in-game purchases, and advertising partnerships. At all relevant times, Roblox designed, implemented, and benefitted from the data-collection architecture within its platform that is at issue in this case. Roblox acted through its employees, agents, and third-party contractors (such as analytics or security vendors) in carrying out the tracking and data interception described herein. Each such person or entity was acting within the scope of their agency or contract with Roblox, making Roblox responsible for their conduct. Plaintiffs are informed and believe that Roblox's executives and engineers knew or reasonably should have known that these practices would result in the surreptitious collection of minors' personal information in California, in direct violation of state law and public policy.

///

CLASS ACTION COMPLAINT

### IV.     FACTUAL ALLEGATIONS

#### A.  Roblox's Business Model and Public Representations

13.     **The Roblox Platform – Child-Oriented by Design**: Roblox offers a virtual universe of user-generated games and social experiences accessible to anyone with an Internet connection. Users (often children) can sign up for free, create an avatar, play games created by others, chat with friends, and make in-game purchases. While registration is needed to use certain features, Roblox allows guests to browse and the mobile app begins collecting data at launch even without login. Roblox's user base includes tens of millions of children, and the company has publicly acknowledged that a large portion of its users are minors (with a significant segment under age 13). Roblox markets itself as a safe, creative environment for kids and teens – it provides parental controls and community standards ostensibly to protect younger users. However, behind this kid-friendly facade, Roblox's data practices are extraordinarily invasive, especially toward minors who do not understand they are being tracked.

14.     **Privacy Promises vs. Reality**: Roblox's Privacy Policy and related statements (which are dense documents not readily understood by children) give the impression that Roblox cares about user privacy. For example, Roblox asserts that it does not "sell" user data. It does mention using data for personalization and advertising, but such disclosures are buried in long policies and not obvious to a child or average parent. According to an independent evaluation of Roblox's privacy practices, Roblox admits it displays targeted ads and tracks users over time across the internet. Roblox further discloses that it shares personal information for third-party marketing purposes and even allows third parties to collect data from users for their own uses. These fine-print admissions stand in stark contrast to Roblox's wholesome public image. They are also misleading: a reasonable parent would not expect that "safe for kids" means "your child will be profiled for advertising and their data shared with unknown parties." Plaintiffs and Class members reasonably relied on Roblox to follow the law and not secretly exploit their information. Roblox's failure to be transparent, and its direct violations of children's privacy rights, give rise to the claims here.

#### B.  Roblox's Tracking Technology  - Device Fingerprinting and Unique IDs

15.     **Device Fingerprinting (Canvas & Audio)**: Through technical analysis, Plaintiffs discovered that Roblox employs device fingerprinting on both its website (roblox.com) and mobile

apps. Device fingerprinting involves collecting various device-specific data points to create a unique "fingerprint" that can recognize a device or browser on subsequent visits. Roblox's web client runs a script at the very initial loading of the homepage which utilizes the HTML5 Canvas element to produce an invisible image (canvas) and read pixel data from it, generating a hash unique to the user's browser/GPU configuration. This canvas fingerprinting occurs before the user is even prompted to log in or sign up, meaning first-time visitors and "guest" users are tracked. The fingerprint (a string of letters/numbers) is then sent to Roblox's servers (for example, to an endpoint like https://ecsv2.roblox.com which Roblox uses for telemetry). By this method, Roblox tags a device with a unique identifier without relying on cookies – an especially covert approach since it circumvents traditional cookie-based consent tools. In addition to canvas images, Roblox's code also performs audio fingerprinting: it uses the Web Audio API (via an OscillatorNode and OfflineAudioContext) to generate a sound signal inaudible to the user and measures the device's audio processing response, producing another unique hash (an audio entropy token). This audio fingerprint similarly does not alert the user and runs almost immediately on page load or app launch. Both canvas and audio fingerprints are highly invasive forms of digital biometric telemetry – they gather information about the user's device hardware and software that can be as identifying as a fingerprint, all without the user's awareness.

16.    **Tracking Cookies and Persistent IDs**: In tandem with fingerprinting, Roblox sets and uses persistent unique identifiers via cookies or local storage. For example, Roblox's web servers assign new visitors a cookie (commonly called ".RBXID") as soon as they load the Roblox homepage. The .RBXID cookie persists in the browser even if the user does not register or log in, and it is automatically transmitted back to Roblox with each subsequent page request. This identifier lets Roblox recognize returning visitors over days or weeks. If a user later creates an account or logs in, Roblox can link their prior activity (logged under that RBXID or fingerprint) to their now-identified account – effectively retroactively de-anonymizing the user's pre-login actions. Plaintiffs' network traffic analysis confirms that Roblox's site set multiple cookies with unique values at first contact, and those values remained constant across sessions. Similarly, in the Roblox mobile app, a unique device identifier is generated or retrieved on first launch (for instance, an Advertising ID or a Roblox-specific installation ID). That mobile ID is then used in communications with Roblox's servers even if the user has not logged in,

tying all app activity to a persistent device profile. These persistent identifiers function as a durable tag on the user's device or browser, allowing tracking across time. Even if a user clears cookies or uses an incognito browser, the fingerprint can recognize them; and even if they switch devices, logging into the same account links those device-specific records together.

17.     **Session Analytics and Telemetry**: Beyond unique IDs, Roblox collects a wide array of analytics data about user sessions. Internal network calls (captured in HAR logs) show that Roblox gathers information such as: what pages or game listings a user views, how the user's cursor moves or which buttons are clicked, the referral source (e.g. an external link or search query that led the user to Roblox), and detailed telemetry about the app's performance on the device. For example, Plaintiffs observed requests to a Roblox endpoint https://metrics.roblox.com that included parameters detailing user behavior and device metrics. Roblox also pings endpoints like https://tracing.roblox.com and https://lms.roblox.com/report, which appear to log user events and possibly load tracking pixels (one "lms" call returned a 1x1 transparent pixel to the browser). All of this happens invisibly in the background. None of these data points are necessary for providing the core gaming service to a one-time visitor or child playing a game. Instead, they seem aimed at profiling users for Roblox's commercial purposes – such as advertising optimization, personalized content delivery, or detecting if a user might be a previously banned account. In effect, Roblox is recording a user's every interaction (mouse movements, keystrokes, navigation choices) to feed its data analysis engines.

18.     **Cross-Platform Surveillance**: Roblox encourages users to engage across devices (a child might browse games on a laptop, then play on a phone). Roblox's data collection is designed to unify these interactions. Through the combination of fingerprinting and persistent IDs, Roblox can determine if the same person is using the service on different devices or browsers. For instance, if a user first tries Roblox on a home computer (acquiring a certain canvas fingerprint or cookie) and later installs Roblox on a tablet (which sends device info and likely prompts login to the same account), Roblox can correlate the two and know they belong to one profile. Even without an account, similar fingerprinting algorithms on web and app can probabilistically match a user. This allows Roblox to follow a child's online activities wherever they go, as long as they are interfacing with Roblox in some form. The result is a form of continuous surveillance – Roblox builds a comprehensive data profile of

CLASS ACTION COMPLAINT

1  its users (including children), combining their behaviors across platforms and over time. A user cannot

2  escape the tracking by switching devices or using "private" browsing; the system is engineered to defeat

3  those user privacy measures.

4  **C.  Involvement of Third Parties in Data Collection**

5  19.  **Third-Party Trackers (Analytics, Security, Advertising)**: Some of Roblox's tracking

6  features are implemented with third-party code or result in data being sent to third-party servers. Arkose

7  Labs is one example: Roblox uses Arkose's "FunCaptcha" service for bot detection during sign-ups

8  and logins. When a user interacts with Roblox's sign-up or login forms, Arkose Labs scripts execute,

9  collecting detailed device fingerprints (such as browser environment info and even user behavior

10 patterns like mouse movements or typing cadence) to assess if the user is a bot. While fraud prevention

11 can be legitimate, Arkose – a third party – then has access to data about Roblox's users (including

12 children's device and behavioral info) for its own analysis. Roblox has also begun integrating

13 advertising and marketing analytics partners into its platform. By 2024, Roblox announced partnerships

14 to introduce immersive ads and measure ad engagement – for instance, working with Integral Ad

15 Science (IAS) to track ad viewability. Such partnerships inevitably involve third-party tracking pixels

16 and scripts being embedded in Roblox experiences. Additionally, Roblox likely uses common analytics

17 providers (like Google Analytics, mentioned above, or others such as Mixpanel or Facebook Analytics)

18 to track user acquisition and usage. Plaintiffs' investigation noted that Roblox's web pages made

19 requests to domains associated with known analytics and social media platforms – for example, a call

20 to a URL path containing "/pixel", suggesting a Facebook or similar marketing pixel. Each such third-

21 party request represents user information being sent to an external server (whether owned by Roblox

22 or not) without the user's awareness. In many instances, these external domains drop their own cookies

23 or identifiers on the user's device, further augmenting the tracking.

24 20.  **Concealment of Tracking Activities**: Roblox has designed its platform to conceal this

25 extensive data collection from users. The company does not prominently warn users or parents that by

26 using the service, they will be subject to constant monitoring. The data flows occur behind the scenes,

27 often using innocuously named domains or URLs that would not raise an obvious red flag to a

28 layperson. A reasonable parent allowing their child to play Roblox would assume that if the child hasn't

given any personal info (or if they're using a "guest" mode), the child's privacy is being respected. In reality, Roblox treats every user – even a 10-year-old on their first visit – as a data source to be tapped. The forensic evidence compiled makes clear that these practices are systematically deployed. Moreover, it appears Roblox took steps to avoid detection and consent requirements: for example, by using device fingerprinting which is harder for users to notice or block than cookies. Roblox knew that explicitly asking for consent (especially from parents on behalf of kids) would likely result in many refusing such tracking. Thus, Roblox chose to "take the data first and ask forgiveness (or forgiveness by obscurity) later." This conduct was willful and knowing – not an accident or an oversight. It demonstrates an intent to subvert user privacy choices in pursuit of data collection.

21.    **Impact on Plaintiffs**: Roblox's practices impacted Plaintiffs directly. Each time minor R.G. used Roblox (whether via the website or mobile app), her device was fingerprinted and her activities were silently recorded. For example, when R.G. first visited Roblox's homepage on a browser, a unique canvas fingerprint of her device was computed and sent to Roblox's servers (creating a lasting identifier for that browser). When R.G. later installed the Roblox app on her smartphone, the app immediately transmitted the phone's identifier (and likely an Advertising ID plus a new fingerprint) back to Roblox. Neither R.G. nor her father/guardian were ever given a chance to consent to this data collection, nor even made aware it was occurring in the background. As a result, Roblox likely compiled a detailed profile on R.G. that includes which games she plays, when and for how long she plays, what device(s) she uses, and possibly inferences about his preferences or habits. Roblox may have shared or utilized R.G.'s data to tailor in-app content or ads – in essence, treating a young child as just another consumer to be behaviorally analyzed and targeted. Plaintiff Michael Garcia, as a parent, was also directly harmed: he was misled about Roblox's safety and privacy, and his right to control his child's personal information was taken away without his knowledge. Both the child and parents suffered a loss of privacy and security that California law endeavors to protect.

## V.    CLASS ALLEGATIONS

22.    Class Definition: Plaintiffs seek to represent a class defined as:

All individuals who, at any time from July 1, 2021, to the present, were California residents and either (a) used the

CLASS ACTION COMPLAINT

Roblox platform (website or app) while under the age of 18,
or (b) are the parents or legal guardians of such individuals.

23.     This "Class" includes both: (a) minor users of Roblox (including current minors and those who were minors during the class period), and (b) the parents/guardians of those minor users. For clarity, individuals who are now adults but used Roblox as minors during the class period are included (they can affirm these claims on reaching adulthood), as are current minors whose claims are asserted through their guardians. Excluded from the Class are Defendant Roblox and its officers and employees; any judge presiding over this case and their immediate family; and any individuals who have already settled or released their claims regarding these issues.

24.     Plaintiff R.G. and Plaintiffs Salena Garcia and Michael Garcia, as the guardians of Plaintiff R.G., also seek to represent the *Children Under 13 Subclass* (California Subclass # 1) defined as follows:

> All individuals who, at any time from July 1, 2021, to the present, were California residents under the age of 13 who used the Roblox platform (website or app), and from whom Roblox collected personal information without first obtaining verifiable parental consent.

25.     The Primary Class and the California Subclasses are together referred to herein as the "Class" unless otherwise specified.

26.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

27.     Plaintiffs reserve the right to modify or amend the definition of the proposed classes as appropriate.

28.     <u>Numerosity</u>: The Class is so numerous that joinder of all members is impracticable. Roblox's user base in California includes hundreds of thousands (if not millions) of minors and their parents. Roblox boasts over 50 million daily active users globally, with tens of millions in the United States. Approximately 32.5 million Roblox users globally are under age 13, and a significant portion

12

1  of those are in California. The precise number of Class members is within Roblox's records, but it

2  clearly exceeds the capacity of individual joinder.

3        29.   <u>Commonality</u>: Under Code Civ. Proc. § 382, "when the question is one of a common or

4  general interest, of many persons, . . . one or more may sue or defend for the benefit of all. "There are

5  numerous questions of law and fact common to Class members, the answers to which will drive

6  resolution of the litigation. These common questions include, but are not limited to: (a) Whether

7  Roblox, through its website and apps, implemented systems that intercepted or recorded users'

8  electronic communications or activities without consent; (b) Whether Roblox's data collection included

9  the "contents" of communications or highly sensitive personal information; (c) Whether Roblox's

10  conduct violated the California Invasion of Privacy Act (Penal Code §630 et seq.), including §631

11  prohibiting wiretapping/unauthorized interception; (d) Whether Roblox collected personal information

12  from children under 13 without obtaining verifiable parental consent, in violation of California law and

13  public policy (including COPPA requirements as incorporated by state law); (e) Whether Roblox's

14  actions violated the CCPA/CPRA by collecting personal information without required notice,

15  sharing/selling minors' data without opt-in consent, and using data for undisclosed purposes; (f)

16  Whether Roblox's failure to provide disclosures or processes under Civil Code §1798.83 (Shine the

17  Light) violated Class members' rights; (g) Whether Roblox's conduct constitutes "unlawful" and/or

18  "unfair" business acts under the Unfair Competition Law; (h) Whether Roblox's systematic tracking of

19  minors constitutes an intrusion upon seclusion or a violation of the constitutional right to privacy; (i)

20  The nature of injunctive relief and other remedies necessary to rectify and prevent such privacy

21  violations; and (j) The measure of statutory damages, penalties, or restitution appropriate for Roblox's

22  violations. These questions are common to all Class members and have common answers, as Roblox's

23  conduct was uniform across all users (particularly all minor users and their parents were subjected to

24  the same tracking scheme).

25        30.   <u>Typicality</u>: Plaintiffs' claims are typical of the Class. Each Plaintiff (the minor R.G. and

26  her parents) was subjected to the same pattern of conduct by Roblox: using the Roblox platform resulted

27  in secret tracking and data interception before consent. The factual background – hidden device

28  fingerprinting, third-party data sharing, lack of notice – is the same for Plaintiffs and all Class members.

CLASS ACTION COMPLAINT

The legal claims (violations of CIPA, CCPA/CPRA, Shine the Light, UCL, intrusion tort, and children's privacy laws) arise from that common nucleus of operative facts. Plaintiffs have no unique defenses or circumstances that would make their claims different from those of the Class.

31.     Policies Generally Applicable to the Class: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class members uniformly and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

32.     Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Michael Garcia and Salena Garcia are conscientious parents who seek to vindicate not only their own and their child's rights, but also to protect all similarly situated California children and parents from Roblox's privacy abuses. They have no conflicts of interest with other Class members. Plaintiffs have retained counsel experienced in privacy, consumer protection, and class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action to achieve the best outcome for the Class.

33.     Superiority and Manageability: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The harm suffered by each Class member (invasion of privacy, statutory violations) is significant but may be small in terms of monetary value relative to the cost of individual litigation. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Absent a class, most Class members (especially minors) would find the cost of litigating their claims to be prohibitive and would lack effective access to justice. Class treatment permits a single court to resolve all Class members' claims consistently and efficiently, avoiding the risk of inconsistent judgments and duplicative litigation. Class action treatment will permit

14

the adjudication of relatively modest claims by certain Class members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts. Managing this case as a class action presents no undue difficulties, given that the evidence of Roblox's conduct is largely digital and common to all users. A class action also serves the public interest by aggregating numerous small claims into one lawsuit, thereby encouraging corporate accountability for widespread wrongdoing. Additionally, injunctive relief is necessary to protect all Class members and the general public, and such relief can only be achieved effectively on a class-wide basis.

34.    The nature of this action and the nature of the laws available to Plaintiffs and Class members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

35.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

36.    Adequate notice can be given to Class members directly using information maintained in Defendant's records.

37.    Unless a class-wide injunction is issued, Defendant may continue in its policy of tracking and exploiting the data of Class members, Defendant may continue to collect and disseminate

CLASS ACTION COMPLAINT

the data collected from its users as well as visitors to its website without obtaining parental consent or any consent at all from Class members.

38.    Class certification is also appropriate because Defendant acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

39.    Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. The claims asserted in this action are appropriate for class treatment under California law because they present predominant questions of law and fact that are common to all Class members. These common issues are susceptible to resolution through generalized proof and include, but are not limited to:

(a) Whether Roblox intercepted or recorded users' communications or interactions through its website and mobile app without consent, in violation of the California Invasion of Privacy Act (Penal Code § 630 et seq.), including whether such interception occurred contemporaneously with transmission and whether the data collected constituted the "contents" of a communication under §631;

(b) Whether Roblox collected personal information from minors, including those under the age of 13, without first obtaining verifiable parental consent, and whether such conduct violated the California Consumer Privacy Act (Civil Code §§ 1798.100 et seq.), as amended by the CPRA, including the requirements for notice, opt-in consent, and limitations on use and disclosure of minors' data;

(c) Whether Roblox failed to comply with Civil Code §1798.83 (the "Shine the Light" law) by disclosing users' personal information to third parties for marketing or analytics purposes without providing required disclosures or opt-out mechanisms;

(d) Whether Roblox's conduct constituted an unlawful or unfair business practice under California's Unfair Competition Law (Bus. & Prof. Code §§ 17200 et seq.), including whether Roblox's tracking and data-sharing practices violated public policy, were deceptive or misleading, or resulted in economic harm to consumers;

CLASS ACTION COMPLAINT

(e) Whether Roblox's use of covert tracking technologies such as device fingerprinting, persistent identifiers, and behavioral analytics constituted an intrusion upon seclusion under California common law, and whether that intrusion was highly offensive to a reasonable person;

(f) Whether Roblox violated California's children's privacy laws, including the Age-Appropriate Design Code Act (Cal. Civ. Code §§ 1798.99.28 et seq.), by failing to default to high privacy settings, engaging in profiling or behavioral targeting, or failing to provide clear disclosures accessible to children and parents;

(g) Whether Plaintiffs and Class members are entitled to statutory damages, restitution, injunctive relief, declaratory relief, and punitive damages under the foregoing causes of action;

40.    The resolution of these issues on a class-wide basis will materially advance the adjudication of this matter and promote judicial economy by avoiding duplicative determinations and ensuring consistent outcomes for similarly situated consumers.

## FIRST CAUSE OF ACTION

### Count I – Violation of California Invasion of Privacy Act (CIPA)

*(Cal. Penal Code § 630 et seq. – Unlawful Interception of Electronic Communications)*

41.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

42.    **Roblox's Conduct as "Eavesdropping/Interception"**: Roblox has violated the California Invasion of Privacy Act, including Penal Code §631(a), by intentionally intercepting and receiving the contents of Class members' communications without consent. Section 631(a) makes it unlawful to use any machine or device to intercept communications over any telegraph or telephone wire, line, or cable, or to read or learn the contents of any message, without the consent of all parties to the communication. California courts have held that §631 applies to Internet communications (such as website interactions and data transmissions). Roblox's actions constitute a modern form of wiretapping: it covertly embeds code that taps into the data stream between users and Roblox's own servers, diverting that data to unauthorized destinations (Roblox's tracking servers and third parties).

43.    **Communications at Issue**: Whenever Plaintiffs and Class members use Roblox's website or app, they send and receive electronic communications. For example, when R.G. navigates

to a game page on Roblox.com, her browser sends an HTTPS request to Roblox's web server (which includes the URL being requested, cookies and other header data identifying her session, etc.), and Roblox's server responds with the content of that page. In the mobile app, similar communications occur via API calls fetching game data or account info. These communications are intended to be between the user (or their device) and Roblox's servers for the purpose of using the service. Plaintiffs and Class members reasonably expected that these communications would be used only to deliver Roblox content and facilitate gameplay, and not to be secretly intercepted or observed by others separate from providing the service.

44. **Secret Duplication and Diversion of Messages**: Roblox contrived a scheme to eavesdrop on these communications by duplicating and diverting portions of them to unauthorized recipients. Specifically, Roblox's software causes Plaintiffs' devices to initiate additional, hidden communications to various tracking domains – some owned by Roblox (but separate from the main service) and some owned by third parties – whenever the user is interacting with Roblox. For example, when R.G.'s browser loaded the Roblox homepage, the embedded scripts caused her browser to silently contact https://ecsv2.roblox.com (a Roblox telemetry domain) and https://ssl.google-analytics.com/ga.js (Google's analytics domain) to transmit details about her device and actions. These transmissions occurred contemporaneously with the legitimate content fetch and were not necessary to show R.G. the page; rather, they were a separate channel of communication solely for data collection. In essence, Roblox inserted "listeners" and outbound taps into the communication pipeline between users and itself. Those listeners (tracking scripts, pixels, analytics code) sent data to either Roblox's own tracking servers (separate from the normal game content servers) or directly to third-party servers.

45. **Interception of Content**: The information Roblox intercepted includes the "contents" of communications under CIPA. "Contents" means the intended message to be communicated – not just record information like an IP address. Here, Roblox's tracking captured URLs of pages visited (which disclose specific game titles or user selections), user inputs and clicks (for instance, which game a child searched for or clicked on), and even keystrokes in text fields. These are part of the content of the user's interaction with Roblox. For example, if a child searched for a keyword on Roblox or clicked on a chat, that query or action is content that was intercepted by analytics logging. Even if some argue

18

CLASS ACTION COMPLAINT

1  this is "metadata," §631 forbids intercepting any communication in transit, regardless of content vs.

2  metadata distinctions. The simultaneous, unseen transmission of user data to analytics endpoints means

3  the communication was being tapped mid-stream.

4      46.    **Lack of All-Party Consent**: Plaintiffs and Class members did not consent (let alone

5  consent on behalf of their minor children) to any such interception. They did not know that when they

6  or their children used Roblox, additional silent communications carrying personal data would be sent

7  to third parties or separate servers. Roblox never disclosed in any clear manner that it would be

8  eavesdropping on users' interactions and siphoning data to others. Indeed, minors cannot legally

9  consent to such data interception in any event, and no parental consent was obtained. To the extent

10  Roblox might rely on a generic privacy policy, such after-the-fact disclosure does not meet CIPA's

11  requirement of actual knowledge and consent to the specific interception. Roblox's privacy policy

12  never plainly states, "We will monitor everything you do in real time and send it to third-party

13  analytics/advertisers." Vague references to cookies or advertising do not equate to the specific,

14  informed consent required under CIPA for wiretaps. Thus, all Class member communications were

15  intercepted "without the consent of all parties" to those communications.

16      47.    **Roblox's Use of a "Device" for Interception:** CIPA §631 applies not only to third-

17  party eavesdroppers but also to parties who use a "machine, instrument, or contrivance" to intercept a

18  communication. Here, Roblox utilized the users' own devices and browsers, via its embedded code (a

19  contrivance), to effectuate the interception. Roblox programmed its website and app to function as

20  surveillance instruments. This arrangement is analogous to using a tape recorder on a phone line –

21  Roblox's code is the recorder inserted into the line between the user and Roblox's servers. Additionally,

22  Roblox enlisted **third-party contrivances** like Google Analytics and Arkose Labs scripts, which

23  qualify as instruments used to listen in on the communication. The presence of third-party analytics

24  code means there was an independent third-party "listening" to the conversation between user and

25  Roblox – a classic CIPA violation scenario.

26      48.    Aiding and Abetting: Roblox is liable both as a direct violator and as one who aided and

27  abetted third-party violations. Roblox deliberately configured its platform to allow and facilitate third-

28  party tracking scripts (such as those of Google Analytics, Stripe, Arkose, advertising pixels) to siphon

user data. In doing so, Roblox provided those third parties the means and access to eavesdrop on communications between users and Roblox. Roblox knew these parties would receive and review the data (indeed that was Roblox's purpose for including them) and Roblox intended to benefit from it (through analytics insights, fraud prevention, or ad revenue). Providing the wiretap code and access constitutes aiding in the interception under CIPA §631(a). Thus, Roblox is liable for each instance of third-party interception it facilitated.

49.    **Injury from Invasion of Privacy:** As a result of Roblox's actions, Plaintiffs and Class members have suffered the loss of their right to privacy in their communications. Private, personal details of their browsing and app usage that they reasonably expected to remain confidential between themselves and Roblox were instead secretly observed, recorded, and exploited. This is precisely the kind of harm CIPA was designed to prevent – an **encroachment upon the sanctity of one's communications**. The clandestine monitoring of children's online interactions is especially egregious, causing harm not only in the abstract but in the form of mental distress and distrust once discovered.

50.    Statutory Damages: Penal Code §637.2 permits any person whose communications were intercepted in violation of CIPA to recover either: (a) the greater of $5,000 or three times actual damages per violation, and (b) injunctive relief. Plaintiffs and the Class seek the statutory damage of $5,000 per Class member per violation of §631. Each Class member's usage of Roblox resulted in numerous interceptions (e.g., each distinct session or each distinct third-party tap can be considered a separate violation). At a minimum, each Class member is entitled to $5,000 for the fact of being wiretapped by Roblox's design. Class members will prove the number of individual violations at trial (for example, by showing the number of discrete sessions or days they used Roblox, each constituting an unlawful interception). Plaintiffs additionally seek injunctive relief under CIPA to permanently enjoin Roblox from continuing to intercept or assist in intercepting user communications without the requisite consent.

51.    Willfulness and Punitive Consideration: Roblox's conduct under this Count was willful and knowing, or at minimum highly negligent. This was not a one-time oversight – it was an intentional system design to capture data. Roblox, a sophisticated tech company, was undoubtedly aware of

California's strict privacy laws (including CIPA) and proceeded regardless. The Court should therefore award the maximum statutory damages to each Class member to deter such blatant disregard of privacy.

## SECOND CAUSE OF ACTION

**Count II – Violation of California Consumer Privacy Act (CCPA), as amended by the California Privacy Rights Act (CPRA)**

*(Cal. Civ. Code § 1798.100 et seq. – Unlawful Collection, Use, and Sharing of Personal Information)*

52.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

53.     **Roblox as a Covered "Business":** Roblox is a "business" under the CCPA/CPRA (Cal. Civ. Code §1798.140(c)). Roblox is a for-profit entity that collects personal information from California residents and determines the purposes and means of processing that information. Roblox easily meets the statutory thresholds for a business: it has annual gross revenues far exceeding $25 million and annually collects personal information from well over 100,000 California consumers (including the Class). Therefore, Roblox is obligated to comply with the CCPA/CPRA's requirements regarding notice, disclosure, and honoring consumer rights.

54.     **Personal Information at Issue:** The data that Roblox collected from Plaintiffs and Class members (including minors) qualifies as **"personal information"** under Civil Code §1798.140(v). Roblox collected multiple categories of personal info as enumerated in the statute, such as: **Identifiers** (unique personal identifier, device identifier, IP address, cookie ID, account name), **Internet or electronic activity information** (browsing history on Roblox, search queries, interactions with website or app features, clickstream data), and **Geolocation data** (approximate location derived from IP addresses, e.g. city or region). Roblox also collected inferences drawn from this data to create a profile of users' preferences or behavior. In the case of minors, persistent identifiers and any profiling of behavior are expressly deemed personal info concerning children. An evaluation by Common Sense Media of Roblox's privacy indicated that Roblox automatically collects a broad array of personal data – including potentially sensitive data and usage analytics – and does not limit collection to what is necessary for the product. Thus, the information at issue falls squarely within CCPA's protection of personal information.

CLASS ACTION COMPLAINT

55.     **Failure to Provide Notice at Collection (Cal. Civ. Code §1798.100(b)):** The CCPA requires businesses to inform consumers, **at or before the point of collection**, about the categories of personal information to be collected and the purposes for which they will be used. Roblox violated this provision by collecting personal information from Plaintiffs and Class members without providing proper notice at collection. When a child or parent first began using Roblox – for example, visiting the website or launching the app – **no just-in-time notice or pop-up informed them** of what data would be collected and why. A reasonable consumer starting to use a kids' gaming app would have no idea that device fingerprints, advertising IDs, and behavior metrics were being harvested. Roblox's only disclosures were buried in its general Privacy Policy, which a minor would not read or understand, and which a parent would only encounter after the fact (often after data was already collected). By failing to provide a clear, conspicuous notice at collection (e.g. a banner or dialog saying "Roblox collects device IDs and analytics data for advertising – see here for choices"), Roblox **violated CCPA §1798.100(b)**. This deprived consumers of the opportunity to know what personal info was being taken at the outset, as the law requires.

56.     **Collection/Use of Children's Data Without Required Opt-In Consent:** The CCPA (as amended by CPRA) includes special protections for minors' data. If a business **"sells" or "shares"** personal information of consumers younger than 16, it must obtain affirmative opt-in consent (for under 13, from a parent/guardian; for ages 13–15, from the minor) before doing so. *"Selling"* is defined broadly as disclosing personal info for monetary or other valuable consideration, and *"sharing"* is defined as disclosing personal info for **cross-context behavioral advertising** (i.e. targeted advertising based on personal data from different services). Roblox violated these provisions in multiple ways:

   a. **Sharing Personal Info of Children for Advertising:** Roblox caused personal information of minor users (like R.G.) to be shared with third-party advertising and analytics companies for the purpose of tracking and targeting – which falls under "sharing" for cross-context behavioral advertising. For example, loading **Google Analytics** or other ad trackers on a child user's session meant that data about the child's device and behavior was sent to third parties who would use it to profile the child across contexts (both on and off Roblox). Roblox also integrated marketing SDKs/pixels that likely facilitated targeted ads to these minors on

Roblox and possibly on other platforms. Under Cal. Civ. Code §1798.120(c), Roblox needed to obtain **opt-in authorization from the child's parent** before any such sharing. Roblox did not do so – no consent dialog, no parental control mechanism, nothing. The default was that all users (including young children) were opted **in** to data sharing by Roblox. This is a direct violation of the CCPA/CPRA's minors' opt-in requirement.

      **b. Possible Sale of Data:** Even if Roblox contends it did not "sell" data, any exchange of data for value could constitute a sale. Roblox benefited from providing user data to third parties – for instance, by using Google's services, Roblox possibly improved ad revenue or user retention (which is value to Roblox). If any arrangement involved Roblox disclosing personal info and in return receiving enhanced analytics or integration that has monetary value, that is arguably a "sale" under the CCPA's broad definition. For minors under 13, *any sale of data is prohibited absent parental consent.* Roblox never obtained parental consent for such activity.

      **c. No Mechanism for Consent:** Roblox had **no mechanism for obtaining affirmative authorization** from parents of under-13 users (or from teens 13–15) for selling or sharing personal info. Plaintiffs Michael and Salena Garcia were never presented with any toggle or form to authorize Roblox to share R.G.'s data. In fact, Roblox's own privacy FAQ (as evaluated by third parties) indicates that **parental consent is not required before collecting or disclosing under-13 data** – effectively an admission of violating this CCPA rule. By failing to even attempt to get opt-in consent for minors, Roblox violated Cal. Civ. Code §1798.120(c).

      57.    **Failure to Honor "Do Not Sell/Share" (Cal. Civ. Code §1798.120 & §1798.135):** The CCPA gives consumers the right to direct a business to stop selling their personal info (the "Do Not Sell" right). Businesses that sell personal info must provide a clear and conspicuous "Do Not Sell My Personal Information" link on their website or a similar mechanism, and honor opt-out requests. During much of the class period (2021–2023), Roblox did **not** display any "Do Not Sell My Info" link on its homepage or in the app interface, presumably because Roblox took the position that it doesn't "sell" data. However, as alleged, Roblox was *sharing* personal info for advertising (and possibly selling by broad definition). Its failure to provide an easy opt-out mechanism itself violates the CCPA. Class members 16 or older (or parents acting for minors) had no straightforward way to stop Roblox from

1    disseminating their data. Only in mid-2023 or later (around CPRA's effective date) did Roblox add

2    more robust privacy controls, but by then much of the class period had passed. Thus, Roblox violated

3    former Civil Code §1798.120(a) and §1798.135 by **not providing notice of the right to opt-out and**

4    **not honoring an opt-out**, since it didn't treat its activity as a sale/share when it was.

5        58.    Use of Personal Info Beyond Disclosed Purpose (Purpose Limitation – Cal. Civ. Code

6    §§1798.100(c), 1798.140(ae)): The CCPA/CPRA require that a business's collection and use of

7    personal info be reasonably necessary and proportionate to the purposes disclosed and for which the

8    consumer provided the data. In other words, a business can't collect data under the guise of one purpose

9    and then use it for another, incompatible purpose. Here, Roblox collected data under the general

10    pretense of running a gaming platform, but it then used that data for undisclosed purposes like targeted

11    advertising, profiling, and growth analytics. For example, a parent might assume that any data collected

12    from their child would be used only to enable gameplay (e.g., remembering game progress, or basic

13    account functions). Instead, Roblox aggregated the child's data to analyze engagement, predict

14    purchases, and tailor monetization strategies – purposes never clearly disclosed to consumers. Using

15    comprehensive tracking on children is not necessary to provide the core Roblox service (a child can

16    play a game without Roblox needing to fingerprint their device or track their every click). Such usage

17    is disproportionate and outside what an average user would expect. By using personal info in ways that

18    were "incompatible with the disclosed purpose" (or by failing to adequately disclose the true purpose),

19    Roblox violated the CCPA's purpose limitation and data minimization principles. This is reinforced by

20    California's AADC (discussed later) which emphasizes that data collection from children should be

21    minimal and only for necessary purposes – a standard Roblox did not meet.

22        59.    **Data Retention and Security (Cal. Civ. Code §§1798.100(a)(3), 1798.105):** On

23    information and belief, Roblox retained personal data of Class members (including identifiers and

24    profiles) indefinitely or for long periods, and potentially stored it without robust security (though no

25    breach is alleged here). The CPRA requires businesses to disclose retention periods and not retain data

26    longer than reasonably necessary. Roblox's privacy policy during the class period did not clearly

27    specify retention durations for most tracking data, and it likely kept unique identifiers to track returning

28    users over years. While Plaintiffs focus on collection/sharing violations, to the extent evidence shows

CLASS ACTION COMPLAINT

Roblox also violated retention or security provisions, Plaintiffs reserve the right to seek relief for those aspects as well (e.g., deletion of unlawfully retained data).

Private Right of Action and UCL "Unlawful" Claims: The CCPA (prior to CPRA) had a limited private right of action, primarily for data breaches (Civil Code §1798.150). Many of Roblox's CCPA violations described are enforced by the California Attorney General/California Privacy Protection Agency. Plaintiffs acknowledge that there may not be a direct statutory damages claim for these violations under §1798.150 (since that section is tailored to breaches). However, Plaintiffs invoke the Unfair Competition Law (Count IV) as a vehicle to enforce these CCPA/CPRA violations under the UCL's "unlawful" prong. The CCPA violations (lack of notice, illegal data sharing, etc.) constitute unlawful business practices independently actionable under the UCL, which provides restitution and injunctive relief. Additionally, to the extent the Court finds any portion of the CCPA/CPRA privately enforceable (especially under CPRA's expanded consumer rights effective 2023), Plaintiffs seek to directly enforce those as well. In any event, **injunctive relief** is expressly available under the CCPA and CPRA (the statutes contemplate courts issuing injunctions even if statutory damages are limited to breaches). Plaintiffs seek **injunctive and declaratory relief** to require Roblox's compliance with the CCPA/CPRA going forward, an issue of great public importance given the involvement of children's data.

**Relief Requested**: Plaintiffs, on behalf of the Class, seek all relief available for Roblox's CCPA/CPRA violations. This includes: an injunction barring Roblox from continuing the above-described unlawful practices (e.g. requiring proper notices and opt-ins for minors, halting any sale/sharing of minor data without consent, and deletion of existing data collected unlawfully); any statutory damages or civil penalties that may be awardable (for example, CPRA empowers the California Privacy Protection Agency to seek penalties up to $7,500 per intentional violation involving minors' data – Plaintiffs will coordinate with regulators and do not seek double recovery, but note this to underscore the egregiousness and reasonable attorneys' fees and costs as allowed by statute (the CCPA provides for fees in enforcement actions, and/or such fees can be recovered under Code of Civil Procedure §1021.5 as this is a public interest enforcement).

     60.

1

2  **THIRD CAUSE OF ACTION**

3  **Violation of California "Shine the Light" Law**

4  *(Cal. Civil Code § 1798.83 – Failure to Disclose Personal Information Sharing for Direct Marketing)*

5   61.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth

6  herein.

7   62.   **Statutory Background:** California's "Shine the Light" law (Civil Code §1798.83)

8  gives California residents the right to inquire about how a business shares their personal information

9  with third parties for the third parties' direct marketing purposes. The law requires covered businesses

10  to either (a) provide California customers, upon request, a detailed disclosure of certain information-

11  sharing with third parties, or (b) publish in their privacy policy a statement that the business does not

12  share personal information for third parties' direct marketing or provide a mechanism to opt-out of such

13  sharing. A "customer" under §1798.83 means an individual who is a California resident and has

14  provided personal information to the business in the course of obtaining products or services (which

15  includes free services like an online platform account). The statute covers a broad range of "personal

16  information" (anything that identifies or could be associated with an individual) and "third parties"

17  (entities separate from the business, or affiliates if outside certain use restrictions). If a business fails to

18  comply with §1798.83, the customer may recover a civil penalty of $500 per violation (and up to $3,000

19  per willful or reckless violation), plus attorneys' fees.

20   63.   **Roblox as a Covered Business & Plaintiffs as Customers:** Roblox is a business with

21  customers in California as defined by the Shine the Light law. Plaintiffs Michael Garcia and Salena

22  Garcia are **"customers"** under §1798.83 because they, as individuals in California, provided personal

23  information to Roblox in the course of establishing and using their Roblox accounts (even if the service

24  is free, they provided info like email, username, and device data in exchange for use of the platform).

25  Likewise, minor R.G.'s personal information was provided to Roblox in the course of service usage

26  (with her parents' assistance or permission). Roblox in the preceding calendar years obtained names,

27  contact information, and other personal details from these individuals through account sign-up and

28  service use, establishing an ongoing business relationship.

64.    Roblox's Disclosure of Personal Info to Third Parties for Marketing: During the relevant period, Roblox disclosed personal information about its users to third parties and knew or reasonably should have known that those third parties used the information for the third parties' direct marketing purposes (as that term is used in §1798.83). Specifically, as detailed above, Roblox allowed third-party advertising networks and analytics partners (such as Google, Facebook, or other ad tech companies) to collect data on Roblox users for targeted advertising – which is direct marketing. For instance, by integrating marketing pixels or ad tags on its platform, Roblox enabled those third parties to gather data like device IDs, browsing history on Roblox, and possibly demographic info, which the third parties then used to serve ads either on Roblox or across other sites/apps tailored to the user. Also, Roblox itself shared data with measurement and marketing partners (e.g., to measure ad engagement or attribute user growth campaigns) – those partners used the data to optimize advertising, which is a marketing purpose benefiting them or their clients. The personal information shared included unique identifiers (cookies or advertising IDs), device information, and user activity that can identify a user across contexts. Under §1798.83, such sharing triggers an obligation to disclose the categories of info and third parties upon customer request.

65.    **Roblox's Failure to Provide Required Disclosures or Opt-Out:** Roblox did not comply with either option provided by the Shine the Light law. **(a)** Roblox did not provide California customers, upon request or otherwise, a disclosure of what personal info had been shared and with whom. To Plaintiffs' knowledge, Roblox had no dedicated mechanism (email or address) to accept §1798.83 requests or to respond with the mandated information (lists of third-party marketing data recipients). **(b)** Roblox also did not have a section in its privacy policy clearly titled "Your California Privacy Rights" or equivalent that stated it either does not share personal info for direct marketing or that explained how to opt-out of such sharing. While Roblox's privacy addendum (see "US State Privacy Policy Addendum") contains CCPA information, it does not satisfy Shine the Light's specific requirement of disclosing third-party marketing sharing. In fact, Roblox's policies were silent or at best unclear about the extent of third-party marketing use – certainly they did not give users a way to learn details or opt out other than broad CCPA rights (which, as noted, Roblox did not properly facilitate

during much of the class period). Because Roblox **failed to provide any Shine the Light disclosure or an appropriate opt-out policy**, it violated Civil Code §1798.83.

66.     **Willful Violation:** Roblox's violation of the Shine the Light law was **willful or intentional**, or at minimum reckless. Roblox is a major corporation presumably aware of California's consumer privacy statutes. Its decision to share data with marketing partners without implementing the required disclosure or opt-out indicates a conscious disregard for the law's requirements. Roblox cannot credibly claim ignorance, as many businesses include a "California Privacy Rights" section in their policies or a do-not-share statement to comply with §1798.83. Roblox's omission suggests it chose not to comply to avoid drawing attention to its data sharing or to avoid the burden of handling such inquiries. Therefore, the higher statutory penalty for willful violations (up to $3,000 per violation) should apply.

67.     **Injury and Standing under §1798.83:** Plaintiffs and Class members were deprived of their statutory right to transparency about Roblox's third-party data sharing. Had Roblox complied, Plaintiffs could have requested a list of third parties who received their data for marketing and potentially taken action (e.g., demanding deletion or opting out). Roblox's non-compliance kept them in the dark about where their and their children's personal info went. This informational injury and the privacy invasion of having one's data shared without knowledge are exactly what §1798.83's remedies address.

68.     **Relief Requested**: Under Civil Code §1798.83(c), each Plaintiff and Class member may recover a civil penalty of up to $500 per violation, and up to $3,000 per violation if the Court finds the violation to be willful, intentional, or reckless. Plaintiffs seek the maximum $3,000 per Class member, as Roblox's conduct was at least reckless if not knowing. Each Class member experienced at least one violation (Roblox's failure to provide the required disclosure during the year after they provided personal info). In addition, §1798.83 allows recovery of attorneys' fees by prevailing customers, so Plaintiffs seek an award of reasonable attorneys' fees and costs. Plaintiffs also seek appropriate injunctive relief compelling Roblox to comply with §1798.83 henceforth – for instance, an order requiring Roblox to (a) provide an option for California users to request a "Shine the Light" disclosure, and (b) prominently disclose in its policies the rights Californians have and whether data is shared for

direct marketing. Such relief will benefit the Class and the public by ensuring greater transparency in Roblox's practices.

69.

### FOURTH CAUSE OF ACTION

**Violation of California Unfair Competition Law (UCL)**

*(Cal. Bus. & Prof. Code § 17200 et seq. – "Unlawful" and "Unfair" Business Acts and Practices)*

70.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

71.     **"Unlawful" Prong:** Roblox's acts and practices described in this Complaint constitute **unlawful business practices** in violation of the UCL. Roblox has violated numerous statutes and regulations, including but not limited to: the California Invasion of Privacy Act (Penal Code §631 and related provisions); the California Consumer Privacy Act/Privacy Rights Act (Civil Code §1798.100 et seq.); the Shine the Light law (Civil Code §1798.83); the federal Children's Online Privacy Protection Act (15 U.S.C. §§6501-6506) and its implementing regulations (to the extent these can be enforced via UCL as predicates); and California constitutional and common law privacy protections. Each of these independent violations renders Roblox's conduct "unlawful" under Business & Professions Code §17200. For example, by surreptitiously intercepting communications and user input, Roblox violated CIPA – that statutory violation is actionable under the UCL. By collecting and sharing children's personal data without parental consent, Roblox violated COPPA (a law embodying public policy to protect minors) – that too is actionable via the UCL's unlawful prong. By failing to comply with CCPA/CPRA requirements, Roblox engaged in unlawful conduct that the UCL can address. Thus, Plaintiffs' UCL claim piggybacks on the violations detailed in Counts I–III and Count V–VI, consolidating them as a basis for UCL relief.

72.     "Unfair" Prong: Independently, Roblox's conduct was unfair under the UCL. The unfairness standard is met under either the "tethering" test (conduct that violates a stated public policy) or the balancing test (conduct that is immoral, unethical, oppressive, or substantially injurious with no countervailing benefit). Roblox's actions meet both tests. Public policy as expressed in statutes like COPPA, CIPA, CCPA, and the California Constitution strongly favors safeguarding personal privacy,

especially for children. Roblox's secret tracking of minors flies in the face of these policies, making it unfair. From a balancing perspective: The harm to consumers (particularly vulnerable children) from Roblox's hidden surveillance is substantial. It invades their privacy, potentially exposes them to tailored marketing or manipulation, and denies parents control over kids' data. The average user gets no benefit from being tracked – the service would function fine without invasive monitoring. Roblox, on the other hand, gains a competitive and economic advantage by exploiting user data (improving engagement, advertising efficiency, etc.). The harm to consumers outweighs any utility of Roblox's practices because alternative, less-intrusive means to run the service were available (Roblox could have limited data collection to what's necessary, or obtained consent and likely many would opt out, which might reduce Roblox's profits but wouldn't stop the service from running). Moreover, Roblox's take-it-or-leave-it approach (users must submit to tracking if they want to play) and the asymmetry of knowledge (Roblox knows it's tracking, users do not) render the situation oppressive and unavoidably unfair. There is also an element of unethical behavior in tracking children for profit under cover of a "fun game". Therefore, Roblox's practices offend established public policy and are unethical and injurious, satisfying the UCL's unfairness criteria.

73.    **(Fraudulent Prong – Not Directly Alleged):** Plaintiffs do not plead a separate UCL "fraudulent" prong violation with particularity, as this case is primarily about hidden conduct rather than affirmative misrepresentations. However, to the extent necessary, Roblox's omissions and misleading assurances could be considered fraudulent. Roblox represented that it values privacy and does not sell data, which would likely deceive reasonable consumers into thinking their data wasn't being widely shared or tracked. Parents like Michael and Salena Garcia were likely deceived by Roblox's failure to inform them of the true extent of tracking. This fraudulent aspect further underscores the unfairness and unlawfulness of Roblox's practices, but Plaintiffs focus on unlawful/unfair prongs for relief.

74.    **Economic Injury (Standing)**: Plaintiffs and Class members have suffered economic injury as a result of Roblox's unlawful and unfair acts, which gives them standing under the UCL (Bus. & Prof. Code §17204). Although privacy harms are often viewed as intangible, California law recognizes that personal data has value and unauthorized use of it can constitute economic harm. Here,

1    Roblox took valuable personal and behavioral information from Plaintiffs without compensation.

2    Companies pay significant sums for user data and targeted access to consumers – by covertly capturing

3    and monetizing Class members' data, Roblox obtained something of value (data profiles, advertising

4    revenue) that rightfully belonged to those users. This uncompensated transfer is an economic loss to

5    Plaintiffs (loss of potential property interest in their data, and loss of the opportunity to refuse or

6    monetize their data themselves). Additionally, some Class members paid money to Roblox (for

7    premium subscriptions or in-game purchases). Had they known Roblox was betraying their privacy,

8    they might not have spent money on Roblox or would have paid less – thus they overpaid for a service

9    of lower privacy quality than advertised, which is a monetary injury. Moreover, Roblox's unjust

10   enrichment from using Class members' data corresponds to an economic loss by the Class, which is

11   recoverable via restitution.

12       75.    **UCL Remedies – Injunction and Restitution**: Pursuant to Business & Professions

13   Code §17203, Plaintiffs seek injunctive relief and restitution. Injunctive relief is necessary to stop

14   Roblox's ongoing wrongful conduct. Specifically, Plaintiffs request a permanent injunction requiring

15   Roblox to: (a) cease all tracking of users (especially minors) without express informed consent; (b)

16   implement an opt-in consent mechanism for any data collection from children or any sharing of

17   personal info of consumers under 16, in compliance with the CPRA and COPPA; (c) refrain from

18   intercepting or recording users' communications (keystrokes, clicks, etc.) without prior consent of all

19   parties, as CIPA requires; (d) delete all personal data collected from Class members without proper

20   consent, or sequester it under Court supervision, and cease further use or sharing of such data; (e) fully

21   comply with the California Age-Appropriate Design Code Act (discussed below) by conducting a

22   thorough Data Protection Impact Assessment and implementing high-privacy default settings for

23   minors; and **(f)** provide clear notice on the Roblox platform about its data practices and obtain

24   affirmative consent from users (or parents for minors) for any future collection beyond what is

25   necessary. These injunctive measures will protect the Class and the public by ensuring Roblox

26   dramatically changes its practices.

27       76.    **Restitution/Disgorgement:** Plaintiffs also seek restitutionary disgorgement of the **ill-**

28   **gotten gains** Roblox obtained through its unfair practices. This includes money Roblox made from

using Class members' personal data. For example, any advertising revenue attributable to improved ad targeting from Class data, or profits from increased user engagement driven by data analytics, should be quantified and returned. Also, any monetary savings Roblox realized by skirting compliance (for instance, the cost of implementing proper consent flows or losing user engagement if it had been honest) can be measured as unjust profit. Plaintiffs request that the Court impose a constructive trust on such profits and order Roblox to **disgorge all monies obtained from its unfair and unlawful acts** for the benefit of the Class. Exact amounts will be proven at trial, but could include tens of millions of dollars in ad revenue attributable to minor users' data.

77.    **Public Injunctive Relief:** The primary aim of the injunctive relief sought under the UCL is to protect the general public, especially children who will use Roblox in the future, by requiring Roblox to change its data practices. Thus, the relief is in the nature of a **public injunction**. Plaintiffs are acting as private attorneys-general to stop acts that threaten public interest. This is significant because if Roblox has any arbitration clause or class action waiver, claims for **public injunctive relief** under California law are not subject to private arbitration and must be heard in court. Plaintiffs assert their right to pursue such relief in this judicial forum.

78.    **Attorneys' Fees:** Under Code of Civil Procedure §1021.5 (California's Private Attorney General Doctrine) and any other applicable law, Plaintiffs seek an award of attorneys' fees for conferring a substantial public benefit by enforcing important privacy rights. Roblox's practices affect a broad segment of the public (nearly every California child who uses the internet), and stopping these practices has societal value that far exceeds any individual stake. Therefore, an attorneys' fee award is justified to encourage and reward the prosecution of this action in the public interest.

79.

## FIFTH CAUSE OF ACTION

### Intrusion Upon Seclusion (Common Law Invasion of Privacy)

80.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

81.    **Intrusion Upon Seclusion Elements**: California recognizes the tort of intrusion upon seclusion (also called intrusion into private affairs) as one aspect of the right to privacy. The elements

32

are: (1) intrusion into a private place, conversation, or matter; (2) in a manner highly offensive to a reasonable person. Additionally, the California Constitution (Article I, Section 1) guarantees an inalienable right to privacy, which supports a similar cause of action requiring: a legally protected privacy interest, a reasonable expectation of privacy, and an intrusion so serious as to constitute an egregious breach of social norms. Plaintiffs and Class members allege that Roblox's conduct satisfies these criteria.

82.    **Private Matters Interfered With:** Plaintiffs and Class members had a reasonable expectation of privacy in their personal digital activities on Roblox. Children using Roblox from their homes or personal devices have an expectation that their **devices' unique characteristics** (like hardware fingerprints or audio outputs) will remain private and not be secretly recorded. They also expect that their **personal interactions** with the platform – what they click, type, view, or search – are not being watched by someone else beyond what is necessary to provide the service. These aspects (device uniqueness and individual online behavior) are inherently personal and not knowingly exposed to the public or third parties. A child's gaming session at home is analogous to a private play session – the child (and parent) do not expect an unseen observer logging everything.

83.    **Roblox's Intrusion:** Roblox intentionally intruded into these private digital spaces by deploying code to **monitor and record every user action and device detail** without permission. This included capturing biometric identifiers (canvas and audio fingerprints), logging keystrokes and mouse movements, tracking browsing content, and sharing data with third parties – all invisible to the user. Roblox effectively **placed a surveillance apparatus in Plaintiffs' personal devices**. This was not a trivial or isolated peeking, but a systematic and ongoing **surveillance regime**.

84.    Highly Offensive Conduct: The intrusion was and is highly offensive to a reasonable person, especially given it involves children and was done for corporate profit. Society expects that children should be able to play a game or browse a website without being covertly spied upon. Several factors make Roblox's intrusion particularly offensive: (a) Clandestine Nature – Roblox did all of this surreptitiously, with no notice, exploiting users' lack of awareness; (b) Degree of Intrusion – the breadth of data collected (from hardware specs to behavior patterns) is far beyond what a user would ever consciously agree to share, essentially profiling one's personality or identity; (c) Context – Children –

targeting minors who cannot consent elevates the moral offensiveness; and (d) Purpose – doing it to gain advertising revenue or engagement (commercial gain) rather than any compelling need (like emergency or security) tilts it toward outrage. Any reasonable parent would be shocked and angered to learn that a child's game was logging the child's every move and device detail. Indeed, such conduct could be deemed egregious under community norms.

85.    **Serious Invasion of Protected Privacy Interest**: California's Constitution and common law protect the privacy of personal data and communications, especially in the home. Plaintiffs had a legally protected privacy interest in their family's online activity and in their son's personal development without secret monitoring. Roblox's actions constitute a serious invasion of this interest – not a routine business practice that people knowingly tolerate. The data Roblox collected can reveal intimate things: a device fingerprint combined with usage times might imply the household schedule; chat or search logging could reveal a child's thoughts; even the pattern of game choices can indicate personal interests. Roblox's compilation of such data is a grave affront to personal security and autonomy.

86.    **Damages from Intrusion:** Plaintiffs and Class members suffered harm in the form of mental distress (outrage, anxiety, betrayal) upon learning of the intrusion, loss of their right to control private information, and exposure to continued privacy risks (since data once collected can be misused or breached). The invasion also potentially led to over-targeting of children with manipulative content, which is another harm. At least nominal damages are appropriate for the invasion of a privacy right even if no quantifiable loss is shown.

87.    **Punitive Damages Justified:** Roblox's conduct was malicious, oppressive, or in reckless disregard of Plaintiffs' rights, warranting punitive damages. Roblox acted with a willful indifference to the privacy and well-being of children. It concealed its activities knowing full well that no reasonable parent would approve. To punish Roblox and deter similar privacy invasions by others, the Court should award **punitive damages** in an amount sufficient to make an example of this behavior.

88.    **Relief Requested:** For this Count, Plaintiffs seek compensatory damages (including for mental anguish and loss of privacy value), nominal damages to vindicate the rights if compensatory can't be quantified, and punitive damages as described. Additionally, Plaintiffs seek appropriate

1    equitable relief, such as an order requiring Roblox to destroy or return all personal data obtained
2    through its intrusion (to the extent not addressed by other counts' relief), and injunctive relief to prevent
3    future intrusions (overlapping with what is sought under the UCL).

4                                    **SIXTH CAUSE OF ACTION**

5                     **Violation of California Children's Online Privacy Protections**

6          *(Cal. Civ. Code § 1798.99.28 et seq. – California Age-Appropriate Design Code Act and related*
7                     *Children's Privacy provisions, and Incorporating COPPA duties via UCL)*

8          89.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth
9    herein.

10         90.    **Policy and Law Favoring Children's Privacy:** California has robust public policy and
11   now statutory law aimed at safeguarding the privacy of minors online. The federal Children's Online
12   Privacy Protection Act (COPPA) has long required parental consent for collection of personal
13   information from children under 13. California has extended these protections through its own laws.
14   Notably, the **California Age-Appropriate Design Code Act (AADC)**, Cal. Civ. Code §1798.99.28–
15   .99.40, which took effect on July 1, 2024, imposes obligations on businesses likely to be accessed by
16   children under 18. Even before the AADC, California's constitution enshrines the right to privacy for
17   all individuals, including children, and the Unfair Competition Law allows treating COPPA violations
18   as unlawful acts (since COPPA reflects a fundamental policy). In short, there is a clear mandate:
19   companies must put children's best interests first when designing online services, minimizing data
20   collection and profiling of minors.

21         91.    **Applicability to Roblox – Covered "Business" and "Likely to be Accessed by**
22   **Children":** Roblox meets the criteria of the AADC as it (1) is a business under the CCPA (as
23   established above), and (2) provides an online service or feature "likely to be accessed by children"
24   (defined in AADC as consumers under 18). It is more than likely – it is a certainty – that children use
25   Roblox, given Roblox's own demographics showing a significant percentage of users under 18 (and
26   under 13). Roblox's platform is replete with design elements appealing to children (cartoon avatars,
27   games, virtual play with friends). By all indicators (audience composition, content, marketing, etc.),
28   Roblox had reason to know minors constitute a large portion of its users. Therefore, Roblox had a duty

                                             35

under the AADC to comply with a range of child-centric privacy measures starting by the Act's effective date (July 1, 2024), and even before that date, Roblox's conduct violated the underlying principles that AADC codifies, which this Complaint asserts via UCL and common law.

92.    Violations of the AADC and Children's Privacy Duties:

**a. Failure to Conduct Data Protection Impact Assessment:** The AADC requires businesses to undertake a Data Protection Impact Assessment for any online service likely to be accessed by children, assessing how the product uses children's data and identifying risks to children (Cal. Civ. Code §1798.99.31(a)(1)). On information and belief, Roblox either failed to perform an adequate children's privacy impact assessment or, if it did, ignored glaring risks that the assessment would have uncovered. Any reasonable assessment would have flagged that fingerprinting and behavioral tracking of children pose significant privacy and safety risks. The fact that Roblox launched and maintained such features indicates non-compliance with this duty (and if done, not acting on it, which violates §1798.99.31(a)(2) requiring mitigation of identified risks).

**b. Collection of Data Not "Necessary" for the Service:** The AADC and general child privacy principles mandate **data minimization for minors** – do not collect, use, or retain personal data of children beyond what is necessary to provide the service the child actively seeks (see AADC §1798.99.31(b)(4) and (b)(3)). Roblox blatantly violated this by collecting extensive data (fingerprints, usage telemetry, third-party info sharing) that is **not necessary** for a child to play games. For instance, a child's enjoyment of Roblox does not require Roblox to know the child's exact device fingerprint or to log their scroll movements. These were done for Roblox's benefit, not to deliver the game functionality. Therefore, Roblox collected and retained children's personal info that was not strictly needed, in violation of the data minimization requirement. This is an unlawful business practice under the UCL (unlawful and unfair prongs), as it violates the AADC's standard and COPPA's spirit that you shouldn't collect more than necessary even with consent.

**c. Failure to Configure Default Settings to High Privacy:** The AADC requires that all default privacy settings for children be set to a high level of privacy (unless a business can

show a compelling reason otherwise). Roblox's defaults were the opposite: data collection was **on by default**, with no easy way to opt out. For example, personalized ads and tracking were enabled without any action by the user. Roblox did not present a privacy dashboard to minors upfront, nor default features like targeted ads to "off." Indeed, children had no idea these settings even existed. Thus, Roblox failed to provide privacy-protective defaults and has no compelling justification to override this requirement (profit is not a justification under the law).

      **d. Inadequate Age Appropriate Disclosure:** The AADC requires that privacy information, terms, policies, etc., be presented in clear language suited for the age of likely child users. Roblox did not provide any child-friendly notice of its data practices. Its privacy policy is written for adults and buried in help documentation. The interface never gave a simple explanation like "Roblox may collect information about how you play to show you ads." Nor did Roblox provide *"prominent, accessible tools"* for children or parents to exercise privacy rights. These failures meant children and parents were effectively kept uninformed, violating §§1798.99.31(a)(7) and (a)(10).

      **e. Profiling and Behavioral Advertising to Children:** The AADC prohibits **profiling children by default** (using personal data to analyze or predict preferences/behavior) unless strict conditions are met (appropriate safeguards and necessity or compelling interest). Roblox's tracking and creation of user profiles for personalized content/ads is exactly profiling. Roblox did this without obtaining any new consent from minors or parents after the AADC effective date, and without any evidence that profiling is necessary to provide the service the child requested. It is certainly not in children's **best interests** to be profiled for monetization. Therefore, Roblox's actions violate §1798.99.31(b)(2), as profiling was on by default with no compelling justification or opt-in.

      **f. No Signal of Monitoring to Child Users:** AADC §1798.99.31(a)(8) and (b)(7) effectively require that if a child is being monitored or tracked, the child should get an **obvious signal** of that monitoring. Roblox provided no such signal. For example, if a parent account is observing a child or if Roblox is tracking location, a notice should appear to the child. Roblox's

continuous data logging of interactions and possibly content moderation monitoring were invisible. This lack of transparency to the child violates the AADC.

**g. Failure to Obtain Parental Consent (COPPA Violation):** Even aside from the AADC, Roblox violated COPPA's well-known requirement: **verifiable parental consent** before collecting personal information from a child under 13. Roblox collected personal info (such as persistent identifiers, which COPPA treats as personal info when used for behavioral advertising or profiling) from R.G. and similarly situated children without notifying parents or obtaining their consent. Roblox also did not provide a COPPA-compliant privacy notice directly to parents describing what was collected. These are core COPPA violations (15 U.S.C. §6502(b) and 16 C.F.R. §312.5). While COPPA itself is enforced by the FTC/State AG and has no private action, the UCL's unlawful prong allows Plaintiffs to sue based on this unlawful business practice. Roblox's disregard for COPPA is evidence of its general disregard for children's privacy laws.

93.     **Resulting Harm:** Roblox's violations of children's privacy protections have caused distinct harm to the minor Class members and their parents. Children like R.G. have been **exposed to risks** that the laws intended to prevent: their data was collected and potentially used in ways that could harm their well-being or future interests (for example, personal data could later be compromised or used to influence them). Parents suffered the harm of losing control over their young children's data and being unable to make informed choices to protect them. The trust that parents put in Roblox as a presumably child-friendly platform was betrayed, resulting in anger and emotional distress when the truth is revealed. There is also a societal harm: children's healthy development and autonomy are undermined by constant surveillance and targeting.

94.     **Relief Sought (Injunctive and Equitable):** Because the AADC is primarily enforced by the California Attorney General (with civil penalties up to $2,500 per violation or $7,500 per intentional violation involving kids), this Complaint does not seek those civil penalties here (to avoid conflict or double recovery). Instead, Plaintiffs seek **injunctive relief** through the Court to ensure Roblox's compliance, which complements public enforcement. Specifically, Plaintiffs ask for a strong injunction requiring Roblox to: **conduct a full Data Protection Impact Assessment** and submit its

findings to the Court or a monitor; **implement all measures necessary to comply with the AADC**, such as high privacy defaults for all minors, easy-to-understand disclosures for kids, and tools for parents/kids to control data; **cease any profiling or targeted advertising for users under 18 unless and until strict conditions are satisfied in line with the law**; and **delete all personal data of Class member children collected without parental consent**, or provide a mechanism for parents to review and request deletion of their child's data. These requirements align with what AADC demands and what COPPA would require (e.g., parental consent or deletion).

95.     **Restitution/Disgorgement for Unjust Enrichment from Minors:** Plaintiffs also seek, via the UCL, restitutionary disgorgement of profits Roblox obtained from exploiting children's data. For example, revenue Roblox earned from advertisements shown to children or from improved engagement metrics tied to violating these privacy laws should be subject to restitution. Roblox should not be allowed to keep profits earned through practices that California law condemns as against children's interests. Any such monetary relief overlaps with the UCL Count and will be fashioned in an appropriate way to avoid double counting, but the principle is that Roblox must **account for and surrender gains from its misconduct toward minors**.

96.     **Attorneys' Fees for Protection of Children:** Given the strong public interest in enforcing children's privacy rights, Plaintiffs will seek attorneys' fees (for example, under §1021.5) as prevailing plaintiffs who conferred a benefit on a broad class of persons (all California children online).

97.     In summary, through this Count, Plaintiffs invoke the Court's equitable powers to enforce California's new Age-Appropriate Design Code and related child privacy requirements against Roblox, and to incorporate Roblox's COPPA violations into the case via state law. Roblox's treatment of children's data was unlawful, unfair, and harmful, and relief is necessary to bring Roblox into compliance with the law and protect California's children.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment against Defendant as follows:

a) **Class Certification:** An order certifying this case as a class action under California Code of Civil Procedure §382; appointing Plaintiffs Michael Garcia, Salena Garcia, and R.G. (by her guardian) as Class Representatives; and appointing their counsel as Class Counsel.

b) **Injunctive Relief:** A permanent injunction requiring Roblox to halt its unlawful practices and implement privacy safeguards, including but not limited to: **(a)** Ceasing all tracking of users (especially minors) without express, informed consent; **(b)** Implementing an opt-in consent mechanism for any data collection from children under 16 or any sharing of personal information of consumers under 16, in compliance with CCPA/CPRA and COPPA (parental consent for under 13); **(c)** Stopping any interception or recording of user communications (such as keystrokes, mouse movements, or network data to third parties) unless and until all users (or parents for minors) have given consent, as required by CIPA; **(d)** Deleting (or segregating and shielding) all personal data collected from Class members without appropriate consent, and prohibiting further use or disclosure of such data; **(e)**Complying with the California Age-Appropriate Design Code Act by conducting a thorough Data Protection Impact Assessment for Roblox, providing the results to the Court or regulators as needed, and implementing all necessary changes (for example, defaulting all child user settings to high privacy, disabling profiling/behavioral ads for minors, providing age-appropriate notices, and giving tools for parents/kids to control data sharing); and **(f)** Clearly and conspicuously disclosing its data collection and sharing practices on the Roblox platform, and honoring user privacy choices (including a "Do Not Sell or Share" option and a method for California consumers to request info about third-party data sharing).

c) **Declaratory Relief:** A declaration that Roblox's past and ongoing conduct as alleged violates the California Invasion of Privacy Act, the CCPA/CPRA, the Shine the Light law, the Unfair Competition Law, and constitutes an intrusion upon seclusion and a violation of California's constitutional right to privacy. Such a declaration will help Class members understand their rights and will have a deterrent effect on Roblox and similar companies.

d) **Statutory Damages (CIPA):** An award of statutory damages of **five thousand dollars ($5,000)** per violation per Class member for Roblox's violations of CIPA (or three times actual damages if greater, per Penal Code §637.2). Each Class member is entitled to at least $5,000 for the

unauthorized interception of their communications. The exact number of violations (e.g., number of discrete sessions wiretapped) may be determined in later proceedings, but statutory minimum damages are sought for each Class member.

  e) **Statutory Penalties (Shine the Light):** An award of civil penalties under Civil Code §1798.83 of **$3,000 per Class member** for Roblox's willful, intentional, or reckless violations of the Shine the Light law. Alternatively, at least $500 per Class member if the Court were to find the violation non-willful (but Plaintiffs assert willfulness). These amounts may be aggregated or applied per year of violation as the Court deems just.

  f) **Compensatory Damages:** An award of actual and compensatory damages in an amount to be proven at trial for the harm caused by Roblox's conduct. This includes damages for the unlawful intrusion upon seclusion, such as compensation for mental anguish, invasion of privacy, loss of peace of mind, and the economic value of the privacy rights taken. Also included are any out-of-pocket losses or expenses incurred by Class members related to these violations (if any).

  g) **Punitive Damages:** An award of **punitive and exemplary damages** sufficient to punish Roblox and deter similar conduct, in light of Roblox's willful and conscious disregard of Class members' rights – particularly the rights of children. The request for punitive damages is especially pertinent to the Intrusion Upon Seclusion claim and any finding of malice, oppression, or fraud (e.g., Roblox's clandestine tracking of kids for profit).

  h) **Restitution and Disgorgement:** An order compelling Roblox to disgorge and restore all **ill-gotten gains** obtained from its unlawful and unfair practices to the Class. This includes restitution of profits earned from using Class members' data and the monetary benefits Roblox accrued by skirting privacy laws. The Court should impose a constructive trust on such amounts. Examples of amounts to be disgorged may include: revenue from targeted advertising that used Class member data, incremental profits from increased user engagement due to invasive analytics, and cost savings from not implementing proper privacy compliance. These sums will be determined according to proof, and the Court has broad equitable power to make Class members whole and to strip Roblox of unjust enrichment.

i) **Attorneys' Fees and Costs:** An award of reasonable attorneys' fees and costs of suit. Plaintiffs seek fees under any applicable provision: for example, CIPA (§637.2) allows recovering three times actual damages which can include fees; Shine the Light (§1798.83) explicitly allows attorneys' fees for prevailing customers; the Private Attorney General Statute (Code Civ. Proc. §1021.5) supports fees due to the enforcement of important rights affecting the public interest (here, privacy rights of minors and consumers at large); and any contractual or common fund basis as appropriate if a fund is created for the Class.

j) **Pre- and Post-Judgment Interest:** An award of interest on any monetary relief, at the maximum rate allowed by law, from the date of injury or such date as the Court deems appropriate until the date of full satisfaction of judgment.

k) **Other Relief:** Such other and further relief as the Court deems just and proper. Given the evolving nature of privacy harms, Plaintiffs also seek any declaratory or equitable relief needed to effectuate a complete outcome (for instance, maybe the appointment of an independent monitor or auditor to oversee Roblox's compliance for a period of time, paid by Roblox, if the Court finds that necessary).

**Jury Trial Demand:** Plaintiffs demand a trial by jury on all causes of action so triable.

RESPECTFULLY SUBMITTED

Dated: April 16, 2025

_____

Robert B. Salgado, Esq.
Attorney for Plaintiffs

42