Morgan D. Ross, Esq. (SBN 270650)
Robert B. Salgado, Esq. (SBN 297391)
**COUNTERPOINT LEGAL**
600 B Street, Ste 1550
San Diego, CA 92101
Tel: (619) 780-3303
Fax: (619) 344-0332
morgan@counterpointfirm.com
rsalgado@counterpointfirm.com

*Attorneys for Plaintiffs and Putative Class*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL GARCIA, SALENA GARCIA, AND R.G., a minor by and through her guardians Michael Garcia and Salena Garcia, on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br>vs.<br>ROBLOX CORPORATION,<br>Defendant | Case No.: 2:25-cv-03476<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT ROBLOX CORPORATION'S MOTION TO COMPEL ARBITRATION**<br>Date: November 14, 2025<br>Time: 1:30 p.m.<br>Dept: 9B<br>Judge: Judge Wesley L. Hsu |

**INTRODUCTION**

Roblox's motion rests on a premise it never proves: that these Plaintiffs—including a minor—actually agreed to arbitrate. The record doesn't come close. Roblox relies on generic screenshots and a paralegal's narration about what "the user" supposedly clicked, but it never ties any alleged assent to a named person, specific device, date, build/version, or server log. That is not competent proof of mutual assent under California law.

First, formation fails. For the minor (R.G.), Roblox shows no COPPA-compliant verifiable parental consent, no parent-executed clickwrap for the child's account, and no user-specific evidence that the minor ever saw or accepted an arbitration clause. For the parents, Roblox's own timeline shows their accounts were created after the 2023 events it treats as "assent," defeating any third-party-beneficiary or estoppel theory. And the minor expressly disaffirms any purported contract (Fam. Code § 6710).

Second, even if Roblox could prove a contract, the arbitration provision is unenforceable due to procedural and substantive unconscionability. Procedurally, this is a non-negotiable, hyperlink-buried clickwrap that is presented on a child-facing service without meaningful parental involvement, which is classic oppression and surprise. Substantively, the clause is one-sided (class/public-injunctive waivers, confidentiality, forum/fees, and mass-arbitration throttles) and invalid under McGill to the extent it purports to waive public-injunctive relief.

Third, Roblox's scope arguments overreach. The complaint targets pre-login and pre-assent tracking/fingerprinting and interceptions. Conduct that occurs before any alleged agreement is not "arising out of" or "relating to" a later clickwrap—and cannot be swept into arbitration by retroactive say-so.

Fourth, Roblox's evidentiary showing is defective. The Jit/White declarations do not lay the 803(6) business-records predicates, fail to provide 901 or 902 authentication for the screenshots and exports, do not supply native files or metadata,

and never identify who actually clicked what, on which device, or when. The Court should sustain Plaintiffs' evidentiary objections and give those materials no weight.

Fifth, the Request for Judicial Notice adds nothing. The Court may notice the existence of a public filing, but not take it for the truth of contested facts—or to bypass Roblox's burden to prove assent with admissible evidence.

Because Roblox has not carried its threshold burden to show a valid agreement with each Plaintiff covering the claims at issue, and because the arbitration clause is in any event unconscionable and unenforceable, the motion should be denied. At a minimum, any non-arbitrable claims (especially the minors' class claims) should proceed in court, with no discretionary stay.

## DISPUTED STATEMENT OF FACTS

### I. Roblox Fails to Show That Plaintiffs Accepted the TOU

Roblox's Section A asserts that "each Plaintiff accepted" the Terms of Use and its arbitration clause through sign-up, gift-card redemption, and a Robux purchase. The actual, plaintiff-specific evidence does not support that claim.

#### A. No Plaintiff admits accepting any TOU; each denies assent (often to date-specific RFAs)

R.G. acknowledges creating and using her accounts but denies accepting any TOU, including on the date Roblox spotlights (May 22, 2023). (White Declaration, Exhibit 4, Resp. Interrogatory 2; Resp. Admission No. 6). R.G. also denies that either parent accepted any TOU on her behalf, and after reasonable inquiry, she has no recollection that anyone accepted the TOU for her. (*Id*. at Ex. 4, Resp. Admission No. 8). She possesses no documents evidencing acceptance (e.g., emails/confirmations)—which, if they exist, would be in Roblox's systems. (*Id*. at Exhibit 4, Resp. to RFP No. 2).

Michael admits creating his own account, but he denies accepting any TOU and denies accepting TOU for R.G. as well. (*Id*. at Exhibit 5, Resp. Interrogatory Nos. 2, 3, 4 and 6).

Salena Garcia: Salena likewise admits creating her own account and associating a phone number, but she denies accepting any TOU (including date-specific denials) and denies accepting TOU for R.G. She clarifies that any "authorization" to R.G. was permission to play, not authority to enter a contract. (White Declaration, Ex. 6, Resp. Interrogatory Nos. 1, 2, 3, 4, 5 and 6).

The only competent, party-specific evidence the Court has—Plaintiffs' sworn discovery responses—squarely denies assent by any Plaintiff.

**B. <u>The operative complaint pleads the opposite of Roblox's "acceptance" story: no informed consent, no COPPA-compliant parental consent, and pre-consent surveillance.</u>**

The complaint alleges that Roblox's tracking and interceptions occurred without informed consent (Dkt. 1, ¶ 28); that a child cannot consent to such interceptions (Dkt. 1, ¶ 29); and that Roblox failed to obtain verifiable parental consent Dkt.28, ¶ 28). Those allegations are fundamentally inconsistent with Roblox's suggestion that Plaintiffs "accepted" an arbitration clause upon sign-up and later transactions. These are not concessions of assent; they are allegations negating assent and COPPA-compliant consent.

**1. Roblox distorts the pleading about "clickwrap via parental email."**

In its facts discussion, Roblox leans on the notion that the TOU were presented through a clickwrap tied to a "parental email." (Dkt. 33-1, Pg. 10:7-13). The complaint passages they rely on do not concede a valid parental-consent clickwrap; instead, they allege that any email that came after the child's engagement was no mechanism for obtaining verifiable parental consent at sign-up. (*Citing* Complaint ¶ 29 (alleging generally, that after account set up Roblox sends parental email after minor's personal information is collected), ¶ 31 (alleging generally that Roblox purpose of collecting a minor's private information before any possible "theoretical consent" was attempted), and ¶ 58 (alleging that certain collection methods used by Roblox to collect data from minor children is outside the scope of their own Terms

of Use).

**2. The complaint's theory centers on pre-assent tracking—conduct that does not "arise out of" any contract a user might later click.**

Roblox's Section A tries to fold all claims into a "continuing relationship" governed by its TOU. But the complaint targets pre-login / pre-assent data interceptions and fingerprinting. Those factual allegations don't depend on any TOU, and they directly undercut the premise that a later clickwrap governs the challenged conduct.

**C. <u>Roblox Fails to Demonstrate Acceptance During Account Creation</u>**

Roblox attaches generic UI screenshots, welcome messages, and account-info pages. None of these materials shows who clicked what, when, on which device, or what build/version was rendered to these Plaintiffs at the asserted times. Plaintiffs produced limited account screenshots identifying accounts in use, but—after a diligent search—no acceptance confirmations are in their possession; that data, if it exists, resides with Roblox. This is a material failure by Roblox to meet their burden to prove mutual assent by each Plaintiff. Screens and summaries untethered to named users, device IDs/IPs, timestamps, or server logs do not carry that burden—especially against Plaintiffs' direct denials.

**1. Ronita Jit Cannot Authenticate Business Records**

Ronita Jit's declaration identifies her as a "Senior Paralegal, Litigation and Legal Operations at Roblox Corporation." (Jit Decl., Dkt. 33-4, ¶ 1). Ms. Jit states that she is "responsible for supporting litigation needs, including assisting with discovery, responding to subpoenas, and conducting dispute-related investigations." *Id*. She further states that her work makes her familiar with the systems and records that, among other things, relate to account-holder records and account sign-in flow. *Id*. Her testimony is based on her personal knowledge and her "review of records maintained in the ordinary course of Roblox's business." *Id*. However, Ms. Jit is a Paralegal, not the custodian of record. Ms. Jit does not explain how the records are

kept, when the records are recorded, the system by which the records are recorded or anything specific about her first three Exhibits or where they came from. The Memorandum also concedes this point by arguing that the TOU allegedly "assented to" by the Plaintiffs was done on "substantially similar flows to purchase Robux and redeem a gift card[]" which also is an acknowledgement that Ms. Jit's Exhibits 3 and 4 are also not tethered to any specific Plaintiff. If Ms. Jit were a custodian of record, she might be able to provide us with insight into how these records are kept and be able to describe the regularly conducted business activities.

**2. Roblox's UI exemplars don't prove what these Plaintiffs saw.**

Section A treats exemplar screens as if they establish what was displayed to R.G. or to either parent on particular dates and builds, including a supposedly conspicuous notice that clicking "Sign Up/Continue" agrees to "the arbitration clause." (Dkt. 33-1, Pg. 11:3-11). Screenshots in Section A are generic; they are not authenticated as true and accurate renderings to these Plaintiffs on the dates Roblox says assent occurred. Additionally, the usernames displayed in the screenshots do not match the usernames associated with the plaintiffs. (Jit Decl., Dkt. 33-5, Ex. 1 (username "hellokitty78704"); Jit Decl., Dkt. 33-6, Ex. 2 (username "Gjnnkknm"); *cf.* Jit Decl., Dkt. 33-4, table on Pg. 3 (R.G.'s username: "********grill," MG's username: "*****5764," and SG's username: "**6455"). These screenshots appear to be taken with someone's phone. *Id.*

Exhibits 3 and 4 to Jit's Declaration fail for the same reasons. Exhibit 3 purports to be a screen someone would see if they were to redeem Roblox codes, but in the upper left corner this is a screen from someone with the username "Ro_vista" which does not match any of the usernames associated with the Plaintiffs. Finally, Exhibit 4 in the Jit Declaration shows a screen that someone might find if they were going to purchase Robux with real money. However, Exhibit 4 provides the last 4 digits of someone's account that is not associated with any Plaintiff. Without native files, build/version identifiers, or device/user attribution, these images have little

probative value on formation.

That gap between evidence of actual, verifiable, Plaintiff interactions with the menu screens and generic claims as to what screens a "user" might have seen matters. On a motion to compel arbitration, Roblox bears the burden to prove mutual assent by each Plaintiff. Screens and summaries untethered to named users, device IDs/IPs, timestamps, or server logs do not carry that burden—especially against Plaintiffs' direct denials.

**D. <u>The "repeated assent" theory strings together different flows (sign-up, gift-card redemption, Robux purchase) with no person-level proof.</u>**

Section A contends Plaintiffs also "assented" through redemption and purchase flows. (Memorandum, Dkt. 33-1, Pg. 23:7-14). But the memo's own presentation confirms these are different UI contexts and relies on the same generic images; it still never shows who redeemed the card, who tapped "OK/Buy," or that a parent (rather than the child) performed those actions—or that any of this displayed a conspicuous arbitration disclosure to the actor. This is not agreement by these Plaintiffs; it is speculation. (*Supra* II(A)(3)(b) above)

**E. <u>Roblox's parent-account narrative can't supply assent for the child on this record.</u>**

Section A leans on an adult "continuing relationship" frame, but (a) the parents' accounts were created for supervision after the child's activity began (per Roblox's own timeline), and (b) Section A still doesn't show a parent actually completed a conspicuous arbitration clickwrap for the child's account at relevant times. *See* Jit Decl., Dkt. 33-4, Pg. 3 table; *supra* II(A)(3)(b). Without user-specific proof, "a parent might have clicked at some point" is not mutual assent by this child to this arbitration clause on those dates.

Roblox also tries to recast parental permission as contractual assent, but the record shows the opposite. R.G. admits she had permission to "play" Roblox, which SG confirms as well. (White Decl., Dkt. 33-15, Ex. 4, Admission No. 14; Dkt. 33-

17, Ex. 6, Admission No. 11). However, neither SG or MG accepted any TOU on behalf of the minor or authorized the minor to enter a contract. (*Id.* at Ex. 5, Admission No. 7 and Ex. 6, Admission No. 7).

**F. <u>Communications and Notice Assertions are Unsupported by User-Specific Evidence</u>**

Neither MG nor SG have any recollection of receiving TOU-acceptance communications about R.G., and R.G. does not recall adding either parent's contact info to her accounts. (White Decl., Ex. 4, Interrogatory No. 2; Ex. 5, Interrogatory No. 4; Ex. 6, Interrogatory No. 6). Plaintiffs located no such communications after a reasonable search. Again, if such notices/logs exist, they would be within Roblox's systems, which it has not authenticated with user-level data here.

**G. <u>Section A's reliance on case law presumes facts they have not proved.</u>**

Roblox cites clickwrap/sign-in-wrap cases (Berman/Oberstein/Keebaugh, etc.) for the design standards that can make notice "reasonably conspicuous." But those authorities still require (1) proof of the actual presentation to the user and (2) a clear tie between the operative click and assent. Here, they have neither: no user-specific proof, no build/version attribution, and a complaint that pleads lack of informed/parental consent. Section A's legal discussion cannot fill the evidentiary hole.

## II. The TOUs and Arbitration Clauses are Deficient

**A. <u>No user-specific proof of "conspicuous" notice to these Plaintiffs.</u>**

Section B asserts conspicuous notice and then shows a side-by-side of 2023 vs. 2025 TOU "Notice / Scope / Services / Law." But Roblox never ties any alleged assent or on-screen notice to a named person, device, date, or build/version for R.G., Salena, or Michael. Their Section B table is generic; it's not evidence of what these Plaintiffs actually saw.

**B. <u>The 2023 TOU is Not Sufficient in Scope to Include All Allegations in the Complaint</u>**

Roblox's May 22, 2023 Terms of Use ("2023 TOU") are high-level rules of platform conduct and governance. They (i) describe "User Terms" and "other very important legal terms" in general, and (ii) point outward to a separate Privacy Policy for "User data and Roblox's use of that data." They do not disclose—let alone obtain knowing, specific consent to—the interception and tracking practices pleaded in the Complaint.

**1. No TOU disclosure or authorization for contemporaneous "wiretap-style" duplication of communications.**

The Complaint alleges that Roblox designed client and server code to copy the contents of communications in transit—e.g., duplicate page-request payloads and user IDs to Google Analytics and other analytics endpoints—amounting to a "tap on the line." The 2023 TOU contains no provision disclosing or authorizing contemporaneous duplication of communication contents to third parties.

**2. No TOU disclosure/consent for pre-submission keylogging and input capture.**

Plaintiffs plead that Roblox integrated "packet-sniffing" listeners capturing keystrokes (with timing) even when a user does not submit a form. The 2023 TOU nowhere describes or authorizes collection of unsubmitted text or keystrokes.

**3. No TOU disclosure/consent for device fingerprinting, persistent identifiers, and cross-platform reidentification.**

The Complaint alleges canvas/audio fingerprinting, durable UIDs (e.g., device UniqueID/RBXID) that persist across sessions and devices, and regeneration/synchronization that defeats cookie clearing/incognito. The 2023 TOU does not state that Roblox will fingerprint devices or deploy persistent cross-context identifiers for profiling.

**4. No TOU disclosure/consent for real-time telemetry streaming before login or consent.**

Plaintiffs allege telemetry beacons and analytics calls fire immediately upon

page load—before account login or any opportunity to review terms—transmitting device/behavioral data to Roblox and third parties. The 2023 TOU does not disclose pre-login collection or pre-consent streaming of behavioral telemetry.

**5. No TOU disclosure/consent for sharing minors' data with third-party analytics/advertising partners.**

The Complaint pleads cross-site tracking/analytics applied to a user base that includes large numbers of children, raising COPPA issues. The 2023 TOU does not itself disclose third-party analytics/advertising data sharing (especially as to minors); it merely points to a separate Privacy Policy.

**6. "Third-party services" and general disclaimers in the 2023 TOU are not disclosures of interception.**

While the TOU references "technical legal terms" and third-party content/tools in broad strokes, those passages function as governance and liability clauses—not as specific, contemporaneous consent to the pleaded interceptions, keylogging, fingerprinting, or pre-login telemetry. The 2023 TOU nowhere identifies analytics vendors, describes duplication of communications content, or authorizes packet-level capture.

**7. Incorporation by reference to the Privacy Policy is insufficient to expand TOU scope where the TOU itself is silent.**

The 2023 TOU's only statement about data practices is that the separate Privacy Policy "outlines the terms applicable to User data and Roblox's use of that data." That generic cross-reference does not convert undisclosed interception behaviors into TOU-authorized conduct—particularly where Plaintiffs allege the practices begin before any meaningful opportunity to review any policy.

**C. <u>The 2025 TOU Has a Broader Scope but is Still Deficient</u>**

a. <u>Clearer "Terms Suite" and stronger cross-references.</u>

The 2025 TOU opens by enumerating the contract stack (User Terms, Creator Terms, Community Standards, and the "Roblox Privacy & Cookie Policy") and

expressly states that the Privacy & Cookie Policy "outlines information that Roblox collects…how we protect that information, and how that information may be used."

**1. "Additional Terms" that may require separate consent.**

Roblox now lists add-ons—Advertising Standards, Advertising Terms (ads.roblox.com), AI-Based Tools, Biometric Privacy Notice, Creator Analytics Terms, DevEx, and a Facial Animation Privacy Notice—flagging that some may require "separate consent."

**2. Expanded "Third-Party Services" disclaimer.**

Section 9 elaborates that some parts of the Services include third-party content/tools and that Roblox "neither controls nor takes responsibility" for how third parties "collect, use, or store User information," pointing users to separate third-party policies.

**3. Safety/moderation narrative within the TOU package.**

Materials bundled with the TOU (Community Standards/OSA annex) describe automated systems that "review and monitor communications" to proactively block harmful content.

**D. <u>Why Thoe Changes to the 2025 TOU fail to Cure the Core Consent Gap</u>**

Despite clearer sign-posting, the 2025 TOU still does not disclose or obtain specific, knowing consent to the interception and data-capture behaviors Plaintiffs plead:

**1. No express disclosure/authorization for contemporaneous duplication of communications.**

Plaintiffs allege real-time copying of communication payloads to Roblox analytics and third-party endpoints (e.g., Google Analytics) at page load—"a tap on the line." Nothing in the 2025 TOU tells users that their communications/content will be duplicated to analytics vendors in transit; pointing to a Privacy & Cookie Policy generally does not convert that undisclosed practice into TOU-level consent.

**2. No disclosure/authorization for pre-submission keylogging/input capture.**

The Complaint alleges capture of keystrokes and timing data in login/chat fields even if the user never submits the form. The 2025 TOU does not state that Roblox records unsubmitted input.

**3. No disclosure/authorization for device fingerprinting and durable cross-context IDs.**

Plaintiffs plead persistent identifiers/fingerprints that re-identify users across sessions/devices, including after cookie clearing. The 2025 TOU nowhere says Roblox will fingerprint devices or synchronize durable IDs for cross-platform tracking; it merely cross-references policy suites.

**4. No disclosure/authorization for pre-login telemetry streaming.**

Plaintiffs allege telemetry/analytics calls fire immediately on page load—before account login or a chance to review terms—sending device/behavioral data to Roblox and third parties. The TOU does not say data begins flowing prior to acceptance.

**5. Third-party disclaimers aren't consent to first-party interception.**

Section 9 disclaims responsibility for third-party practices and tells users they may be subject to third-party terms, but that is a liability shield—not a disclosure that Roblox itself engineers duplication of communications to those third parties.

**6. "Additional Terms"/"separate consent" is too diffuse.**

Listing Advertising Terms, Creator Analytics, Biometric and Facial-Animation notices does not tell ordinary users that routine web interactions (sign-up, browsing, keystrokes) are intercepted/telemetered to analytics/anti-fraud vendors as alleged.

**7. Children's data: still no TOU-level specificity.**

The 2025 TOU re-emphasizes parental consent language and the binding nature of the terms for minors/guardians, but it does not disclose third-party

analytics/ads sharing of minors' data; again it relies on cross-references.

**8. Conclusion**

The 2025 TOU improves form (clearer architecture, more references, expanded third-party disclaimer) but leaves the substance of consent unchanged for our purposes. It still lacks any TOU-level disclosure or authorization for: (i) contemporaneous duplication of communications content to analytics vendors; (ii) pre-submission keylogging; (iii) fingerprinting/persistent cross-context identifiers; and (iv) pre-login telemetry streaming. The conduct alleged in the Complaint thus remains outside the scope of what the TOU itself discloses or authorizes, even after March 31, 2025.

**E. <u>"Scope/Services" does not reach the pled, pre-assent surveillance conduct.</u>**

Our claims center on pre-login / pre-assent interceptions (page-load telemetry, fingerprinting, third-party analytics routing). The 2023 TOU does not disclose or authorize that conduct; it pushes "data" issues to a separate Privacy Policy and says nothing about duplicative transmissions to analytics endpoints or device fingerprinting. A later, generic "relating to the Services" clause cannot retroactively capture pre-contract conduct. (2023 TOU excerpts in the record reflect this high-level, Privacy-Policy deferral.)

**F. <u>The 2025 TOU doesn't fix the gap for this case.</u>**

Even the updated March 31, 2025 TOU, which adds references to "Third-Party Services" and separate biometric notices, still does not disclose pre-consent interception, device fingerprinting for cross-device profiling, or wholesale keystroke/behavioral telemetry for analytics/ads.

**G. <u>Timing defeats any "continuing relationship" shortcut.</u>**

Roblox's formation story leans on 2025 flows and terms, but the alleged interceptions began before any alleged assent—and before the parents even created their accounts in 2025. A 2025 instrument cannot prove assent to bind 2023 conduct.

### H. Consumer-Friendly Arbitration Agreements Don't Cure Defects

**1. "Consumer-friendly" labels don't prove assent or enforceability.**

Whether a clause is "friendly" or recites fee-limits doesn't answer the threshold question—did these Plaintiffs agree? Roblox still has not produced user-specific evidence of assent. Section D's policy gloss cannot fill that evidentiary hole.

**2. The cited features don't address the child-context defects.**

This case involves a minor and alleged pre-assent surveillance. Statements about low fees, small-claims carve-outs, or administrator rules do nothing to show (i) conspicuous notice to a child/parents at the relevant time, (ii) verifiable parental consent, or (iii) that the clause isn't substantively one-sided in practice (e.g., confidentiality limits, forum logistics, potential mass-arbitration throttles—none of which are cured by calling the clause "cost-effective").

**3. 2025 embellishments are still beside the point.**

Some "consumer-friendly" talking points are drawn from the 2025 TOU (e.g., added cross-references and notices). They don't retro-justify practices alleged to have occurred in 2023, and they don't show that any such features were communicated to these Plaintiffs at the time Roblox says agreement formed.

## LEGAL STANDARD

### I. Movant's Burden; Court Decides Contract Formation Under State Law

On a motion to compel arbitration under the FAA, the moving party bears the burden to prove by a preponderance that a valid agreement to arbitrate exists with each plaintiff and that the dispute falls within its scope. Courts apply ordinary state-law principles of contract formation (here, California) to determine whether the parties formed any agreement at all. The court—not the arbitrator—must resolve formation before compelling arbitration. *See*, e.g., First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (courts decide whether parties agreed to arbitrate); Granite Rock Co. v. Teamsters, 561 U.S. 287, 296 (2010) (same); Nguyen v. Barnes

& Noble Inc., 763 F.3d 1171, 1175–79 (9th Cir. 2014) (no assent where website failed to provide reasonably conspicuous notice and unambiguous manifestation of assent).

Courts evaluate factual disputes over formation under a summary-judgment-like standard: if the non-movant produces specific facts showing a genuine dispute as to formation, the court must proceed under FAA § 4 to hold a summary trial (jury on request) on the "making of the arbitration agreement." 9 U.S.C. § 4; *see also* Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 413–14 (1996) (party seeking to compel bears burden; factual conflicts resolved at evidentiary hearing).

## II. Online Assent Requires "Reasonably Conspicuous" Notice And Unambiguous Manifestation

Under California and Ninth Circuit law, an online terms presentation binds a user only when (1) the interface provides reasonably conspicuous notice that continued use or clicking constitutes assent, and (2) the user unambiguously manifests assent (e.g., by clicking a button adjacent to clear notice). Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 856–58 (9th Cir. 2022); Oberstein v. Live Nation Ent., Inc., 60 F.4th 505, 515–19 (9th Cir. 2023) (enforcement turns on what this user saw and clicked); Sellers v. JustAnswer LLC, 73 Cal. App. 5th 444, 471–76 (2021); Long v. Provide Commerce, Inc., 245 Cal. App. 4th 855, 862–69 (2016). Generic exemplars are not enough; the proponent must tie notice/assent to the particular user, device, and time. Nguyen, 763 F.3d at 1178–79.

## III. Minors; Parental Consent; Disaffirmance

A minor's contracts are voidable at the minor's option and may be disaffirmed before majority or within a reasonable time thereafter. Cal. Fam. Code § 6710; *see also* I.B. ex rel. Fife v. Facebook, Inc., 905 F. Supp. 2d 989, 1001–03 (N.D. Cal. 2012) (minor could disaffirm online payment terms). Where a platform relies on parental consent for a child's account, the proponent must show verifiable parental consent and that a parent (not the child) actually assented to the specific terms at

issue. *See* 15 U.S.C. §§ 6501–6502; 16 C.F.R. pt. 312 (COPPA framework, referenced to evaluate reasonable notice/consent); *cf.* Norcia v. Samsung Telecomms. Am., LLC, 845 F.3d 1279, 1285–89 (9th Cir. 2017) (no arbitration without evidence consumer assented to terms).

**IV. Unconscionability (Procedural + Substantive; Sliding Scale)**

Even where formation is shown, an arbitration provision may be unenforceable if unconscionable under California law—requiring both procedural (oppression/surprise) and substantive (overly harsh/one-sided) elements, assessed on a sliding scale. Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114–21 (2000); Baltazar v. Forever 21, Inc., 62 Cal. 4th 1237, 1243–44 (2016); OTO, L.L.C. v. Kho, 8 Cal. 5th 111, 125–36 (2019). Adhesive, hyperlink-buried, child-facing clickwraps presented with no meaningful opportunity to negotiate support procedural unconscionability; provisions that, for example, waive public-injunctive relief, impose confidentiality, or create asymmetric remedies/costs can supply substantive unconscionability.

**A. Public-injunctive relief (McGill rule)**

An agreement that waives the right to seek public-injunctive relief in any forum is unenforceable under California law. McGill v. Citibank, N.A., 2 Cal. 5th 945, 961–63 (2017); *see also* Blair v. Rent-A-Center, Inc., 928 F.3d 819, 829–31 (9th Cir. 2019) (FAA does not preempt McGill).

**V. Delegation clauses**

Courts will enforce a delegation clause (gateway arbitrability issues to the arbitrator) only if there is "clear and unmistakable" evidence of the parties' agreement to delegate. First Options, 514 U.S. at 944; Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 69–72 (2010). Delegation cannot bypass the court's duty to decide formation in the first instance. Granite Rock, 561 U.S. at 299–300. In consumer contexts (and especially with minors), courts scrutinize whether the user actually received clear notice of any delegation (e.g., by conspicuous incorporation

of administrator rules). *See* Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (clear-and-unmistakable standard; acknowledging different result may apply to unsophisticated parties).

**VI. Scope**

Even with a valid agreement, disputes fall within an arbitration clause only if they "arise out of" or "relate to" the agreement as a matter of contract interpretation under state law. Pre-contract conduct (e.g., alleged surveillance occurring before any assent) is not captured absent clear retroactive language and proof of assent. See Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1284 (9th Cir. 2009) (scope is a contract question); *cf.* Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1128–30 (9th Cir. 2013) (no nonsignatory enforcement absent applicable doctrine and facts).

**VII. Stays**

If the court grants a motion to compel, FAA § 3 requires a stay of the claims or issues found referable to arbitration upon request, and—after Smith v. Spizzirri, 144 S. Ct. 1173, 1178–80 (2024)—courts must stay rather than dismiss those claims. The court retains discretion whether to stay non-arbitrable claims/parties not sent to arbitration. Britton v. Co-op Banking Grp., 916 F.2d 1405, 1412 (9th Cir. 1990); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 20 (1983) (FAA tolerates piecemeal litigation). If the court denies arbitration and the movant takes an interlocutory appeal under 9 U.S.C. § 16(a), the district court must stay proceedings as to the claims on appeal pending the Ninth Circuit's decision. Coinbase, Inc. v. Bielski, 599 U.S. 736, 744–47 (2023).

**ARGUMENT**

**I. Roblox Fails to Prove Mutual Assent by Any Plaintiff**

On a petition to compel, the movant must prove by a preponderance that each plaintiff actually agreed to arbitrate; courts apply ordinary California contract-formation rules, and the court (not the arbitrator) decides formation. *See*, *e.g.*, First

Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Granite Rock Co. v. Teamsters, 561 U.S. 287, 296–300 (2010); Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175–79 (9th Cir. 2014).

**A. Their Record Never Ties A Purported "Click" To A Named Person, Device, Time, Or Build/Version**

Roblox's showing consists of generic screenshots and narration about what "the user" supposedly sees in various flows (sign-up, gift-card redemption, purchase prompts). None of it links a specific Plaintiff, device ID/IP, timestamped server log, or app/web build to a particular assent event. That is not competent proof of assent under Ninth Circuit law, which requires reasonably conspicuous notice to the user and an unambiguous manifestation of assent by that user. Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 856–58 (9th Cir. 2022); Oberstein v. Live Nation Ent., Inc., 60 F.4th 505, 515–19 (9th Cir. 2023); Nguyen, 763 F.3d at 1178–79 (exemplars without evidence of what this user saw are insufficient).

- **Sign-up flows**. A blue hyperlinked "Terms" near a "Sign Up/Continue" button is not self-proving; Roblox must show this presentation was actually rendered to R.G. (the child) or to a parent at the time of the alleged assent, and that the user then clicked in a way that objectively manifested assent.

- **Gift-card redemption / purchase dialogs**. Even if those screens sometimes display arbitration language, Roblox still has to show who redeemed the card or clicked "OK/Buy" (child vs. parent), when, and under what on-screen notice. They offer no user-level telemetry to establish that.

Plaintiffs' sworn discovery responses, by contrast, deny that any Plaintiff accepted the Terms (and deny that a parent accepted for the minor). With the movant's evidence untethered to a user, the formation showing fails.

**B. The Minor Cannot Be Bound On This Record; Any Purported Agreement Is Voidable And Has Been Disaffirmed**

A minor's contracts are voidable at the minor's option. Cal. Fam. Code §

6710; *see* I.B. ex rel. Fife v. Facebook, Inc., 905 F. Supp. 2d 989, 1001–03 (N.D. Cal. 2012). Roblox offers no proof that a parent (not the child) executed a contemporaneous, conspicuous arbitration assent for the child's account, and no proof of verifiable parental consent consistent with COPPA's baseline. 15 U.S.C. §§ 6501–6502; 16 C.F.R. pt. 312. Absent parental assent, a child's click-through cannot bind her to arbitrate statutory privacy claims—particularly where, as here, the child has disaffirmed any purported agreement. *See also* Norcia v. Samsung Telecomms. Am., LLC, 845 F.3d 1279, 1285–89 (9th Cir. 2017) (no arbitration without evidence consumer assented).

**C. Parental permission to "play" is not assent to arbitrate or authority to bind the child**

Roblox tries to reframe "permission to use the app" as contractual authority. California law draws a sharp line between allowing a child to use a product and manifesting assent to a specific contract term. Without evidence that a parent actually received reasonably conspicuous notice and agreed to the arbitration clause for the child's account, there is no mutual assent. *Cf.* Nguyen, 763 F.3d at 1178–79 (mere proximity of links is not assent).

**D. Timing defeats any attempt to backfill assent via later parent activity or later TOUs**

Roblox's own chronology shows the parents' accounts were created in 2025, long after the 2023 events they claim amount to assent (account creation, gift-card redemption, $0.99 purchase). A 2025 clickwrap (or the 2025 TOU) cannot retroactively supply assent for earlier conduct. Nor can generic "continuing relationship" rhetoric substitute for proof of assent at the time of the alleged agreement.

**E. Nonsignatory theories (equitable estoppel / third-party beneficiary) do not apply on these facts**

Ninth Circuit law requires a tight fit between the claims and the alleged

contract or a recognized non-signatory doctrine; generalized "use of the service" is not enough—particularly where Plaintiffs do not sue on the contract. Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1128–30 (9th Cir. 2013) (no estoppel where claims do not rely on contract terms). Here, Plaintiffs' claims arise from pre-assent, extra-contractual surveillance practices; they do not "depend upon" the TOU, and Roblox has not proved a parent's assent that could support third-party-beneficiary enforcement against the child.

**F. At minimum, disputed issues of material fact on formation require a § 4 evidentiary hearing (and targeted discovery)**

If the Court finds any genuine dispute about what these Plaintiffs actually saw and clicked, the FAA requires a summary trial on the "making" of any arbitration agreement. 9 U.S.C. § 4; Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 413–14 (1996). The Court should (i) deny the motion on this record for want of proof, or (ii) alternatively, permit narrow, targeted discovery (e.g., user-level server logs, device/IP telemetry, build/version metadata, TOU version-control) and set a short § 4 evidentiary hearing focused on formation.

## II. The Arbitration Clause Is Unconscionable and Unenforceable

California law requires both procedural and substantive unconscionability, assessed on a sliding scale—the more one is present, the less the other need be shown. Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 114–21 (2000); OTO, L.L.C. v. Kho, 8 Cal.5th 111, 125–36 (2019); Sanchez v. Valencia Holding Co., LLC, 61 Cal.4th 899, 910–11 (2015). This clause fails on both dimensions.

**A. Procedural unconscionability (oppression & surprise)**

**1. Adhesive, non-negotiable TOU; notice buried in hyperlinks on small mobile screens**

Roblox's TOU is a classic adhesion contract offered on a take-it-or-leave-it basis. *See* Armendariz, 24 Cal.4th at 113 (adhesion supports procedural

unconscionability); OTO, 8 Cal.5th at 126–27. The alleged assent flows are "sign-in wrap" or "click-through" interfaces where the legal terms appear only as hyperlinks near action buttons on small screens. Under Ninth Circuit and California law, a term binds a consumer only if the presentation gives reasonably conspicuous notice and the user unambiguously manifests assent. Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 856–58 (9th Cir. 2022); Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1177–79 (9th Cir. 2014); Long v. Provide Commerce, Inc., 245 Cal.App.4th 855, 862–69 (2016); Sellers v. JustAnswer LLC, 73 Cal.App.5th 444, 471–76 (2021). Here, Roblox's own proof does not show that these Plaintiffs received conspicuous notice (or any notice of arbitration specifically) at the moment of the alleged clicks—heightening surprise. *See* Berman, 30 F.4th at 856–58 (poor labeling, small font, and inconspicuous links defeat assent).

**2. Child-facing product; minors' cognitive/reading constraints; no verified parental flow**

Roblox is a child-facing platform. Presenting legal terms via dense hyperlinks to a child user—without a verifiable parental consent flow—adds substantial oppression and surprise beyond ordinary consumer cases. See 15 U.S.C. §§ 6501–6502; 16 C.F.R. pt. 312 (COPPA); *cf.* I.B. ex rel. Fife v. Facebook, Inc., 905 F.Supp.2d 989, 1001–03 (N.D. Cal. 2012) (minor could disaffirm online payment terms). Where a minor interacts with the interface, California law presumes voidability at the minor's election. Cal. Fam. Code § 6710. No record evidence shows a parent received conspicuous arbitration notice and assented for the child's account. That defect alone supports strong procedural unconscionability.

**3. Deceptive "sign-in wrap" and post-hoc email practices (not conspicuous or contemporaneous with assent)**

Roblox relies on generic exemplars and post-hoc communications (e.g., emails) to imply assent. But California and Ninth Circuit cases stress contemporaneous notice at the point of contract—post-hoc emails or buried

hyperlinks do not cure a deficient on-screen presentation. *See* Nguyen, 763 F.3d at 1178–79; Berman, 30 F.4th at 856–58; Long, 245 Cal.App.4th at 862–69. Especially in the minor context, after-the-fact notices heighten surprise because the person purportedly bound lacked the capacity and opportunity to understand the waiver when it supposedly occurred.

### B. Substantive unconscionability

#### 1. McGill problem: waiver of public-injunctive relief

An agreement that waives the right to seek public-injunctive relief in any forum is unenforceable under California law. McGill v. Citibank, N.A., 2 Cal.5th 945, 961–63 (2017); *see* Blair v. Rent-A-Center, Inc., 928 F.3d 819, 829–31 (9th Cir. 2019) (FAA does not preempt McGill). To the extent Roblox's arbitration/waiver language bars public-injunctive remedies (e.g., relief aimed at stopping unlawful data practices affecting the public/minors), the clause is invalid and cannot be enforced to that extent.

#### 2. One-sided features (confidentiality, forum/venue, fee risk, carve-outs, mass-arbitration throttles if present)

Courts find substantive unfairness where provisions tilt the field or chill claims:

- Confidentiality provisions that hide systemic wrongdoing and impede claimants' ability to prove pattern-and-practice have been condemned. Ting v. AT&T, 319 F.3d 1126, 1151–52 (9th Cir. 2003).
- Forum/venue rules that impose undue burdens on consumers, especially where the drafter's claims retain easy pathways, can be one-sided. *See* Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1287–93 (9th Cir. 2006) (en banc).
- Fees/costs that expose consumers to risk beyond court norms or that deter small-value claims are substantively unconscionable. *See* Armendariz, 24 Cal.4th at 110–11; Gutierrez v. Autowest, Inc., 114 Cal.App.4th 77, 89–92 (2003). "Consumer-friendly" labels do not cure ambiguity or cost-shifting that in practice

chills access.

- Carve-outs reserving courtroom remedies for the drafter (e.g., IP/self-help or injunction carve-outs only the drafter realistically uses) are suspect. Nagrampa, 469 F.3d at 1285–87; *cf.* Baltazar v. Forever 21, Inc., 62 Cal.4th 1237, 1247–48 (2016) (neutral carve-outs may pass muster; one-sided ones do not).
- Mass-arbitration throttles (if present in the operative terms or administrator rules) that delay or cap filings, or shift fees to deter group claims, are substantively unfair because they effectively bar aggregation while depriving consumers of Rule 23 alternatives.

Here, taken together—and especially in the child-privacy context—these features are "overly harsh" and "unreasonably one-sided." Sanchez, 61 Cal.4th at 910–11.

**3. Unreasonable delegation/severability architecture (if costs/fees apply to gateway issues)**

Any delegation must be supported by clear and unmistakable assent. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 69–72 (2010); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). In consumer cases—particularly with unsophisticated parties—courts scrutinize whether the user actually received clear notice of delegation via incorporated rules. *See* Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015) (noting different result may apply to consumers). Where a delegation routes gateway disputes to arbitration while exposing consumers to up-front fees/costs or opaque administrator processes, the delegation itself is substantively unconscionable. *See* Nagrampa, 469 F.3d at 1281–84 (cost/venue structure); Ting, 319 F.3d at 1151–52 (secrecy impeding rights). In the minor context, any purported delegation is doubly infirm: there is no clear assent, and pushing capacity/formation questions behind a paywall or opaque process is unreasonably harsh.

**C. <u>Severance is inappropriate; pervasive unfairness infects the clause</u>**

Even if the Court identified individual offending provisions, severance is improper where the agreement is permeated by unconscionability—procedural defects at formation (adhesion, inconspicuous presentation to a child, lack of verified parental assent) combine with multiple substantive slants (public-injunctive waiver, confidentiality, fees/venue, carve-outs, and any throttling/administrative architecture) to create a fundamentally unfair scheme. *See* Armendariz, 24 Cal.4th at 124–25 (where multiple provisions are unconscionable, court may refuse enforcement entirely). The proper remedy is to deny enforcement rather than blue-pencil a child-facing arbitration program into something it never was.

## III. Any Alleged "Delegation Clause" Is Ineffective Here

### A. No clear and unmistakable evidence of delegation for a minor (and as to the parents, Roblox has no proof of notice/adoption of administrator rules)

A delegation provision is enforceable only if there is "clear and unmistakable" evidence the parties agreed to delegate gateway arbitrability issues. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 69–71 (2010). The burden is on Roblox. In consumer clickwrap cases, the Ninth Circuit asks what this user saw and clicked, and whether the interface made the allegedly incorporated rules (e.g., AAA) reasonably conspicuous. Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 856–58 (9th Cir. 2022); Oberstein v. Live Nation Ent., Inc., 60 F.4th 505, 515–19 (9th Cir. 2023).

Here, Roblox offers no user-specific evidence that R.G. (a child) or either parent ever received conspicuous notice of a delegation clause or of any incorporation of AAA (or other administrator) rules said to contain a delegation. There is no proof of a screen stating that by clicking "Sign Up/Continue/Buy," the user specifically agreed that an arbitrator—not a court—would decide arbitrability. *See* Ajamian v. CantorCO2e, L.P., 203 Cal. App. 4th 771, 789–91 (2012) (no "clear and unmistakable" delegation absent unambiguous language or conspicuous

incorporation); Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565–66 (9th Cir. 2014) (consumer not bound where contract terms weren't reasonably communicated). That failure is dispositive for the minor, and independently fatal as to the parents, given the absence of proof they were ever shown, much less adopted, any administrator rules containing a delegation. *See* Brennan v. Opus Bank, 796 F.3d 1125, 1130–31 (9th Cir. 2015) (recognizing different result may apply for unsophisticated parties/consumers).

**B. The asserted delegation is itself procedurally and substantively unconscionable in this child-context**

Even if Roblox could show a facial delegation, the delegation agreement must independently satisfy California unconscionability limits. Rent-A-Center, 561 U.S. at 70–74 (a party may specifically challenge the delegation provision itself). This record shows both prongs:

**1. Procedural unconscionability (oppression/surprise).**

The alleged delegation is embedded in an adhesive, hyperlink-buried TOU presented on small screens to a child-facing audience, without verified parental consent. That is the paradigm of oppression/surprise. See OTO, L.L.C. v. Kho, 8 Cal. 5th 111, 126–36 (2019); Long v. Provide Commerce, Inc., 245 Cal. App. 4th 855, 862–69 (2016); Sellers v. JustAnswer LLC, 73 Cal. App. 5th 444, 471–76 (2021). A minor cannot meaningfully understand or bargain over a gateway waiver of the right to ask a court whether a contract exists.

**2. Substantive unconscionability.**

Routing threshold capacity/formation issues (including a child's voidability/disaffirmance, Cal. Fam. Code § 6710) to a private forum—potentially with up-front fees, secrecy, and administrator-controlled procedures—unfairly deters vindication of statutory privacy rights and elevates form over the court's core role. *See* Ting v. AT&T, 319 F.3d 1126, 1151–52 (9th Cir. 2003) (confidentiality provisions can be one-sided); Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1281–

93 (9th Cir. 2006) (en banc) (venue/cost structure may be unconscionable). In a case about children's data, pushing gateway issues behind an arbitral paywall (or opaque administrator rules) is "overly harsh" and "unreasonably one-sided." Sanchez v. Valencia Holding Co., LLC, 61 Cal. 4th 899, 910–11 (2015).

**C. Even with a delegation clause, courts decide formation—and formation fails on this record**

Delegation does not displace the court's duty to decide whether an agreement exists in the first place. Granite Rock Co. v. Teamsters, 561 U.S. 287, 299–300 (2010); Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1140–41 (9th Cir. 1991) (court decides "whether any agreement between the parties was ever concluded"); Kum Tat Ltd. v. Linden Ox Pasture, LLC, 845 F.3d 979, 983–84 (9th Cir. 2017) (same). The movant must first prove a user-specific mutual assent to any arbitration agreement with each plaintiff. As shown above, Roblox's record never ties a purported click to a named person, device, time, or build/version; the minor has voided/disaffirmed any alleged agreement; and there is no evidence of verifiable parental consent or parental assent for the child's account. Because formation fails, any purported delegation necessarily fails with it.

## IV. Scope: The Claims Do Not "Arise Out Of" Any Alleged Agreement

Arbitration is a matter of contract, and a party may be required to arbitrate only those disputes it has agreed to submit. AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 648 (1986). Scope turns on ordinary state-law contract interpretation, and—critically—there can be no agreement to arbitrate disputes that predate formation. Granite Rock Co. v. Teamsters, 561 U.S. 287, 299–300 (2010) ("courts should order arbitration only where the court is satisfied that the formation of the parties' arbitration agreement…is not in issue" and the dispute is within its terms).

**A. Pre-login and pre-assent tracking/fingerprinting and interceptions fall outside any later TOU clickwrap**

Plaintiffs' claims target pre-login, pre-assent conduct—page-load interceptions, device/browser fingerprinting, and duplicative transmissions to analytics endpoints that occur before any alleged clickwrap. A later "agree" button cannot retroactively authorize or capture earlier interceptions. See Granite Rock, 561 U.S. at 299–300 (no arbitration for disputes arising before contract formation). Because Roblox has not proved when (or that) any Plaintiff agreed to arbitrate, disputes tied to pre-assent telemetry fall outside any putative clause as a matter of law.

**B. <u>Roblox's broad "relating to the Services" reading cannot retroactively capture pre-contract statutory violations</u>**

Roblox leans on expansive phrasing ("arising out of or relating to the Services") to sweep in everything that happens on or around its platform. But "relating to" language does not rewrite the temporal limits recognized in Granite Rock, nor does it convert statutory surveillance claims into contract disputes. California and Ninth Circuit law require a nexus to the agreement actually made; broad language cannot bind a consumer to arbitrate claims that do not depend on, or post-date, any assent. See, e.g., Comedy Club, Inc. v. Improv W. Assocs., 553 F.3d 1277, 1284 (9th Cir. 2009) (scope is a contract question); Kramer v. Toyota Motor Corp., 705 F.3d 1122, 1128–30 (9th Cir. 2013) (refusing to compel where claims do not rely on the contract). Here, the alleged Wiretap/SCA/COPPA violations exist independently of any TOU and allegedly occurred before any user-specific agreement—placing them outside scope.

**C. <u>Class claims premised on uniform pre-assent conduct cannot be forced to arbitration absent individualized assent</u>**

The class claims rest on uniform, platform-level practices (pre-assent tracking/fingerprinting and third-party routing). To compel arbitration of class claims, Roblox must still establish individual assent by each class member whose claims it would force into arbitration. See Nguyen v. Barnes & Noble Inc., 763 F.3d

1171, 1178–79 (9th Cir. 2014) (no enforcement without proof of this user's assent); Kramer, 705 F.3d at 1128–30 (no nonsignatory/estoppel short-cuts when claims do not rely on the contract). Where, as here, the alleged misconduct precedes any putative agreement and does not depend on TOU terms, class claims cannot be redirected to arbitration through generalized "use of the Services" rhetoric or boilerplate scope clauses.

## V. Roblox's Evidence is Inadmissible or Entitled to No Weight

### A. Jit Declaration: FRE 602, 901, 803(6), 805, 1002–1003

Lack of foundation / personal knowledge (FRE 602). Jit says she "reviewed records maintained in the ordinary course," but never explains how the particular exhibits were created, by whom, when, or how they accurately reflect what these Plaintiffs saw or clicked. Narration about what "the user" did—without device ID, IP, timestamped log entries, or build/version attribution—is speculation, not percipient testimony.

#### 1. Failure to authenticate (FRE 901)

For screenshots/exports (sign-up screens, gift-card redemption, purchase pop-ups), Jit does not identify the source system, export method, query parameters, or that the images are true and correct copies of what was rendered to these Plaintiffs on the relevant dates. No native files, no metadata, no hash values, no build/version identifiers. That is insufficient to authenticate ESI.

#### 2. Business-records predicates missing (FRE 803(6))

A blanket statement that Roblox keeps records in the ordinary course does not satisfy the required elements: (1) made at or near the time by someone with knowledge; (2) kept in the course of a regularly conducted activity; (3) making such records was a regular practice; (4) shown by a custodian or other qualified witness (or a Rule 902(11) certification); and (5) no indication of untrustworthiness. Jit never connects those predicates to each exhibit.

#### 3. Hearsay within hearsay (FRE 805)

Several exhibits embed multiple layers—UI text, transaction summaries, and third-party content (e.g., gift-card terms, analytics notices). Each layer needs its own exception; none is supplied.

**4. Best-evidence / duplicate fairness (FRE 1002–1003).**

Reliance on cropped screenshots and PDFs—without native files, EXIF/metadata, or chain-of-custody—creates a "genuine question" about originals and fairness. When accuracy is at issue (as it is here), duplicates should be excluded or given minimal weight.

The Jit declaration does not carry Roblox's burden to prove user-specific assent with admissible evidence.

**B. <u>White Declaration: procedural summaries; mischaracterizations; no formation facts</u>**

White's declaration is largely procedural (meet-and-confer, service, attaching our discovery). Where it ventures into merits ("Plaintiffs incorporated/accepted the TOU"), it misstates the Complaint and offers no personal knowledge or records tying assent to a named Plaintiff. It supplies no device-level logs, no timestamped acceptance events, and no foundation to prove who clicked what when.

**C. <u>Generic screenshots and exemplar flows are not proof of what these users saw/clicked</u>**

Under Ninth Circuit law, online assent turns on what this user saw and whether notice was reasonably conspicuous adjacent to an unambiguous manifestation of assent. Generic exemplars (marketing images, test-environment shots, or stylized UI) do not establish the on-device presentation to R.G., Salena, or Michael at the asserted times, nor do they prove that any parent (rather than the child) performed the clicks. Without user-level logs (device ID/IP), build/version IDs, and native artifacts, these images have little probative value and cannot carry Roblox's formation burden.

**D. <u>Remedy: sustain evidentiary objections; disregard defective exhibits</u>**

The Court should sustain Plaintiffs' evidentiary objections to the Jit and White submissions and give the proffered screenshots/exports no weight on formation or scope. At minimum, if the Court is inclined to consider any of these materials, it should require Roblox to: (i) produce native files with metadata and administrator/custodian certifications (FRE 902(11)/(13)/(14)); (ii) provide user-level server logs tying any acceptance to a named Plaintiff, device, IP, timestamp, and build/version; and (iii) make a qualified custodian/engineer available for examination. Absent that foundation, the motion fails for want of admissible, plaintiff-specific proof.

## VI. Partial-Grant/Stay & Alternative Relief (Combined)

### A. No global stay on a partial grant.

If the Court compels any claim, FAA § 3 requires a stay of only those compelled claims upon request—not a case-wide pause. Smith v. Spizzirri, 144 S. Ct. 1173, 1178–80 (2024). Non-arbitrable claims—especially the minors' class claims—may continue. Britton v. Co-op Banking Grp., 916 F.2d 1405, 1412 (9th Cir. 1990); Moses H. Cone, 460 U.S. 1, 20 (1983).

### B. No discretionary stay under Landis.

Even if the Court considers a discretionary stay, Landis factors cut against it: (i) prejudice to minors from delay; (ii) limited overlap with any arbitrable parent claims; and (iii) phased discovery can avoid duplication (minor-only merits first; defer any overlapping parent-specific issues).

### C. Interlocutory appeal narrow stay only.

A stay under Coinbase v. Bielski, 599 U.S. 736 (2023), arises only if Roblox appeals a denial of arbitration—and then it should be cabined to the appealed claims/issues, not a global freeze.

### D. Targeted alternative relief.

If the Court does not deny outright on this record, it should:

- Order limited formation discovery: user-level server logs, device/IP

telemetry, build/version metadata, and TOU version-control; produce native UI files with metadata/hashes and a qualified custodian/engineer.

- Set a prompt FAA § 4 evidentiary hearing (jury on request) on the "making" of any arbitration agreement.
- If any provision is problematic, deny enforcement rather than blue-pencil an adhesive, child-context clause that is procedurally and substantively defective.

**CONCLUSION**

Roblox has not carried its threshold burden. It offers no admissible, user-specific evidence that any Plaintiff—including a minor—received conspicuous notice and agreed to arbitrate. Its clause is, in any event, procedurally and substantively unconscionable, and the claims—rooted in pre-login, pre-assent interceptions and tracking—do not fall within any purported scope. The Court should deny the motion.

If the Court is not prepared to deny outright, it should (i) require targeted formation discovery (user-level logs; device/IP; build/version; TOU version-control; native UI files with metadata) and (ii) set a prompt FAA §4 evidentiary hearing. If any claim were compelled, the stay should be limited to those claims only; the minors' class claims should proceed in court with no discretionary stay.

Dated: COUNTERPOINT LEGAL

[signature]
Robert B. Salgado, Esq.
Attorney for Plaintiffs

**L.R. 11-6 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certify that Plaintiffs' Opposition to Defendant's Ex Parte Application to Continue Hearing on Motion to Dismiss contains 1,142 words, which complies with the word limits of L.R. 11-6.1 and Section G.4 of the Court's Standing Order For Newly Assigned Civil Cases.

Dated: October 25, 2025

COUNTERPOINT LEGAL



Robert B. Salgado, Esq.
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

Garcia, *et al.* v. Roblox Corporation
Case No. 2:25-cv-03476

I hereby certify a copy of the foregoing was served electronically via the Court's electronic filing system this 22nd day of October, 2025 to the attorneys of record herein.

Elaine F. Harwell (Bar No. 242551)
E-mail:elaine.harwell@procopio.com
Sean M. Sullivan (Bar No. 254372)
E-mail:sean.sullivan@procopio.com
Benjamin White (Bar No. 339169)
E-mail:benjamin.white@procopio.com
Procopio, Cory, Hargreaves & Savitch LLP
525 B Street, Suite 2200 San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

*ATTORNEYS FOR DEFENDANT:*
ROBLOX CORPORATION

Executed on this 22nd day of October, 2025, at San Diego, California.

/s/ Robert Salgado

Robert B. Salgado, Attorney for Plaintiffs