Elaine F. Harwell (Bar No. 242551)
E-mail: elaine.harwell@procopio.com
Sean M. Sullivan (Bar No. 254372)
E-mail: sean.sullivan@procopio.com
Benjamin White (Bar No. 339169)
E-mail: benjamin.white@procopio.com
PROCOPIO, CORY, HARGREAVES &
 SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Defendant Roblox Corporation

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GARCIA, SALENA GARCIA, AND R.G., a minor by and through her guardians Michael Garcia and Salena Garcia, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROBLOX CORPORATION,<br><br>Defendant. | Case No. 2:25-cv-03476<br><br>**REPLY IN SUPPORT OF DEFENDANT ROBLOX CORPORATION'S MOTION TO COMPEL ARBITRATION**<br><br>Date:   November 14, 2025<br>Time:   1:30 p.m.<br>Dept:   9B<br>Judge:  Judge Wesley L. Hsu |

Defendant Roblox Corporation ("Roblox") submits this reply in further support of its motion to compel arbitration ("Motion" or "Mot.") and in response to Plaintiffs Michael Garcia, Salena Garcia, and R.G.'s ("Plaintiffs") opposition (Dkt. No. 37) ("Opposition" or "Opp.").

## I. INTRODUCTION

Plaintiffs' Opposition—filed late and over the Court's page and word limits[1]—fails to rebut the record showing assent to the Terms of Use ("TOU") and its arbitration provision. Plaintiffs admit to account creation, gift card redemption, and Robux purchases. Roblox business records tie those actions to acceptance flows that require assent and displayed conspicuous notice of the terms, including the requirement to arbitrate any disputes. Historical screenshots corroborate the exact interfaces in effect when Plaintiffs clicked. The arbitration clause is enforceable, covers these disputes, and binds R.G. as a third-party beneficiary and via equitable estoppel. *McGill* presents no obstacle. The Motion should be granted and Plaintiffs compelled to arbitration, with a stay as to those claims.

## II. ARGUMENT AND AUTHORITIES

### A. Plaintiffs Accepted the TOU.

Plaintiffs' own discovery responses admit account creations, Robux purchases, and gift card redemption. *See* Mot., § II.A. (citing Plaintiffs' discovery admissions); Opp. at 3-4 (admitting to account creation). Roblox's system records show those actions occurred under Plaintiffs' usernames on specific dates and through interfaces that required TOU assent. *See* Declaration of Ronita Jit ("Jit Decl."), ¶¶ 8-13. Plaintiffs' *ipse dixit* that they somehow bypassed the mandatory TOU acceptance is unsupported. *Id.* The record shows who accepted, when, and how. *See*, e.g., Jit Decl., ¶ 8 ("The user entered a birthday, username, and password, and selected 'Sign Up.'").

---

[1] The Opposition was filed after the deadline in L.R. 7-9 and exceeds both the page and word count requirements for an opposition brief (L.R. 11-6.1; Standing Order § G.4.) The Court may disregard the non-compliant brief and grant the Motion on that basis. At a minimum, the violations warrant striking the excess portions (approximately 5 pages of the Opposition) and limiting consideration accordingly.

Roblox offers far more than "generic UI screenshots, welcome messages, and account-info pages" to prove acceptance, as Plaintiffs would have the Court believe. Opp. at 5. Plaintiffs discuss these exhibits in a vacuum, arguing they do not "show[] who clicked what, when, on which device, or what build/version was rendered to these Plaintiffs at the asserted times." Opp. at 5. But Roblox has already established with other evidence, including Plaintiffs' own admissions, *who* accepted the TOU, *when* they accepted, and *how* they accepted. *See* Mot., § II.A. Far from being "generic," these exhibits show the exact screens and flows in effect on the date and time Plaintiffs accepted the TOU. *See* Jit Decl., ¶¶ 8-13, Exs. 1-4. Plaintiffs present no evidence to suggest the interface appeared differently.

Plaintiffs' authentication challenge to Ms. Jit's declaration fails. FRE 901 requires only evidence "sufficient to support a finding" the exhibits are what Roblox claims. Business records are admissible through "a custodian or another qualified witness" who can explain how the records are created and kept. FRE 803(6). *See also United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir. 1985). "While a 'qualified' witness or person under Rules 803(6) and 902(11) need not be an expert, there needs to be enough information presented to demonstrate that the person is sufficiently knowledgeable about the subject of the testimony." *In re Vee Vinhnee*, 336 B.R. 437, 448 (B.A.P. 9th Cir. 2005). The witness need not have the official title of "custodian" to satisfy this rule.

Ms. Jit attests to her role, her familiarity with Roblox's account and sign-in systems, her personal review of records maintained in the ordinary course, and the method for locating Plaintiffs' account and acceptance data created at or near the events. Jit Decl. ¶¶ 1, 6. Ms. Jit's testimony satisfies Rule 803(6). *See*, e.g., *United States v. Miller*, 771 F.2d at 1237 (qualified witness need not be the formal "custodian"). Plaintiffs thus fail to rebut Roblox's admissible evidence proving Plaintiffs' TOU acceptance and offer no evidence to the contrary.

B.   **Notice Was Clear and Conspicuous.**

Plaintiffs attack Roblox's evidence as "generic screenshots" and only "exemplars," (Opp. at 18, 5) instead of addressing the sufficiency of the notice itself. The screenshots Roblox provided show the historical sign-up and account creation, Robux purchase, gift card redemption, and purchase flows in effect on the dates of acceptance. These flows have uncluttered page layouts, conspicuous hyperlinks, clear notice advising that clicking "Sign Up/Continue/Buy" constitutes assent, placement of the notice and link adjacent to the action button, and a continuing relationship context. Jit Decl., Exs. 1-4; Mot., §§ II.A.2., IV.C.1.

Courts routinely accept such historical screenshots, coupled with testimony that the page was in effect at the time. For example, in *Oberstein v. Live Nation Ent., Inc.*, this Court and the Ninth Circuit accepted a screenshot from the Ticketmaster website, along with testimony that the page was in effect at the time of the plaintiffs' acceptance, as conclusive evidence of clear and conspicuous notice. No. CV 20-3888-GW-GJSX, 2021 WL 4772885, at *2 (C.D. Cal. Sept. 20, 2021) (Wu, J.), *aff'd*, 60 F.4th 505 (9th Cir. 2023). Similarly, in *Keebaugh v. Warner Bros. Entertainment, Inc.*, the Ninth Circuit held that screenshots showing "historical" versions of the sign-in screen layouts were sufficient evidence. 100 F.4th 1005, 1009 (9th Cir. 2024).

Plaintiffs' reliance on *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) is misplaced. *Nguyen* involved a browsewrap agreement, i.e., one that does not require clicking "yes" or "I agree," not "sign-in wrap" assent adjacent to conspicuous notice. *Nguyen* did not discuss the weight of "exemplars," let alone historical screenshot evidence. *Id.* It merely held that Barnes & Noble's browsewrap format did not sufficiently place the user on notice. *Id.* at 1177.

C.   **Plaintiffs' Claims Fall Within the Arbitration Clause.**

The Arbitration Agreements cover "any dispute arising under or relating to the Roblox Terms or the Services ('Dispute') . . ." Jit Decl., Ex. 5 § 16.1. Roblox

"Services" broadly include the "Platform" and "various other features and services, like websites, applications, and forums, in order to allow Users to play, create and connect." *Id.*, Intro. Plaintiffs concede this language is "expansive." Opp. at 27. California courts enforce similarly broad clauses across tort, statutory, and contract claims where the allegations "touch matters" covered by the agreement. *See Ramos v. Super. Ct.*, 28 Cal. App. 5th 1042, 1052 (2018).

Plaintiffs' "temporal limits" argument misreads *Granite Rock Co. v. Teamsters*, 561 U.S. 287 (2010). Opp. at 27. *Granite Rock* construed a narrower "arising under" clause and did not announce a categorical bar on disputes involving pre-execution conduct where the parties agreed to a broader "arising out of or relating to" formulation. *Id.* at 307.[2] *See generally*, *id.* Roblox's alleged conduct that "allegedly occurred before any user-specific agreement" still falls within the scope because it arose under and related to Plaintiffs' use of the platform. Courts compel arbitration under broadly worded provisions even where challenged conduct preceded the latest version of terms, so long as the dispute relates to the parties' relationship and services. *See Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018), *aff'd*, 816 F. App'x 68 (9th Cir. 2020) (enforcing an agreement governing "all disputes and claims between Google and Customer . . . that arise out of or relate in any way to the Programs or these Terms" with regard to pre-enactment conduct).

Plaintiffs also mischaracterize *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013). It is inapposite. There, the court recognized the dispute between customers and the manufacturer fell outside of the scope of an arbitration agreement between the customers and the *dealership*. Plaintiffs' claims fall well within the scope

---

[2] Plaintiffs also misquote *Granite Rock*. Their quote states: "courts should order arbitration only where the court is satisfied that the formation of the parties' arbitration agreement…is not in issue." Opp. at 26. The actual quote states: "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock*, 561 U.S. at 299.

of the Arbitration Agreements.

### D. The Agreements are Enforceable As To R.G.

#### 1. R.G. is bound as a third-party beneficiary.

A minor's power to disaffirm "does not apply to contracts between adults" and does not control "a parent's power to bind his child to arbitration by entering into a contract of which the child is a third party beneficiary." *Doyle v. Giuliucci*, 62 Cal. 2d 606, 609 (1965). Plaintiffs do not dispute the applicability of *Doyle* and related case law to R.G. Instead, Plaintiffs only argue "Roblox has not proved a parent's assent that could support third-party-beneficiary enforcement against the child." Opp. at 20. But the record shows R.G.'s parents created accounts, helped R.G. create her account, purchased Robux, and redeemed a gift card—conduct that required accepting the TOU for R.G.'s benefit. *See* Mot., § II.A; Jit Decl. ¶¶ 8–13. That is a classic scenario for third-party-beneficiary enforcement.

#### 2. R.G. is bound through equitable estoppel.

Equitable estoppel applies (i) where a non-signatory relying on the contract to assert claims, **or** (ii) a pre-existing relationship with the signatory makes it equitable to compel arbitration. *See JSM Tuscany, LLC v. Superior Ct*. 193 Cal. App. 4th 1222, 1236 (2011). Both rules apply here.

R.G. has reaped the benefits of the TOU, which enabled her to "use[] the Roblox platform regularly" with her parents' supervision via accounts and permissions enabled by TOU acceptance. She cannot claim the benefits of that relationship while disavowing its dispute-resolution term. Compl., ¶ 12. R.G. closely resembles the plaintiff in *Hofer v. Emley*, who was required to arbitrate his *non-contract* claims because he was the passenger in the rental car, although not a signatory to the rental agreement. No. 19-CV-02205-JSC, 2019 WL 4575389 at *6.

R.G.'s claims rely on the TOU. *See*, e.g., Compl., ¶ 27d. ("While Roblox claims in its terms that it does not 'sell' personal data, the reality is that sharing for analytics

or advertising can be a sale under various laws."); *id.*, ¶ 30 (Roblox's privacy policy "fails to reveal the invasive specifics like fingerprinting or third-party sharing for advertising."); *id.*, ¶ 58 ("Roblox's Terms of Use and Privacy Policy did not explicitly disclose that the contents of interactions would be shared in real time with others, and certainly did not obtain users' affirmative agreement to such."). Because R.G. alleges Roblox did not live up to the promises in the TOU and invokes the TOU to support her claims, the principle of equitable estoppel requires enforcing her obligation in the TOU to arbitrate her claims.

R.G. also stands in a pre-existing parent-child relationship with signatories Mr. and Ms. Garcia. In the recent case of *Yeh v. Tesla*, a one-year-old plaintiff was required to arbitrate his claims because he had a pre-existing parent-child relationship, intertwined claims based on the same facts, and was an intended beneficiary of his parents' car purchase. No. 23-CV-01704-JCS, 2023 WL 6795414 at *7-8 (N.D. Cal. Oct. 12, 2023). Plaintiffs, in their Opposition, do not dispute R.G.'s continuing relationship with her parents, their intertwined claims, or R.G.'s benefit. To the extent R.G. is a non-signatory to the TOU, the doctrine of equitable estoppel requires arbitration of her claims.

### E. The Arbitration Agreements Are Not Unconscionable.

Plaintiffs argue the TOU are "a classic adhesion contract offered on a take-it-or-leave-it basis." Opp. at 20. A contract of adhesion is not *per se* unconscionable. *See Bixler v. Next Fin. Grp., Inc.*, 858 F. Supp. 2d 1136, 1145 (D. Mont. 2012) (stating "[b]ecause it is both a state and federal policy to favor arbitration, however, it cannot be said that an arbitration clause in an adhesion contract is per se unconscionable."). Adhesion alone is insufficient; California requires procedural and substantive unconscionability, assessed on a sliding scale. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114–21 (2000). Plaintiffs show neither.

/ / /

### 1. There is No Procedural Unconscionability.

The presentation of the TOU and Arbitration Agreements satisfied the criteria provided in *Berman* and *Oberstein*: clear, adjacent notice that clicking constitutes assent, a conspicuous hyperlink, and an uncluttered interface. *See supra* § II.C; *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856–58 (9th Cir. 2022); *Oberstein*, 60 F.4th at 515–19.

A contract of adhesion is defined as "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000). That is not the case here. The Arbitration Agreements contain a provision enabling Plaintiffs to opt out of the agreement. *See, e.g.*, Jit Decl., Ex. 5 § 16.4.14; *see also Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (declining to find procedural unconscionability where arbitration provision "allows students to reject arbitration within sixty days of signing the Note"). Plaintiffs were given the opportunity to change their contractual obligations but chose not to. *See* Mot., § II.C.

Plaintiffs argue the Arbitration Agreements are unconscionable because their "presentation" lacked "reasonably conspicuous notice," rehashing their meritless argument regarding assent. Opp. at 20. As thoroughly demonstrated in the Motion (and this Reply), each Arbitration Agreement is explicitly referenced on the account creation screen and the TOU are conspicuously hyperlinked below the account creation button. *See* Mot., § 2.A. The TOU note in capitalized letters, that by creating a Roblox account, User is agreeing to arbitrate any dispute with Roblox: "USER AGREES THAT USER IS GIVING UP THE RIGHT TO FILE A LAWSUIT IN COURT BEFORE A JUDGE OR JURY, INCLUDING IN A CLASS ACTION, FOR DISPUTES THAT ARE SUBJECT TO ARBITRATION." Jit Decl., Ex. 5 § 16.1. This construction goes above and beyond the conspicuous notice requirements

recognized in the Ninth Circuit.

### 2. There is No Substantive Unconscionability.

Plaintiffs identify no one-sided fee, venue, secrecy, or carve-out that renders the clause "overly harsh." Plaintiffs misleadingly cite *Sanchez v. Valencia Holding Co., LLC* to argue that "[i]n a case about children's data, pushing gateway issues behind an arbitral paywall (or opaque administrator rules) is 'overly harsh' and 'unreasonably one-sided.'" Opp. at 26. *Sanchez* had nothing to do with "children's data" or an "arbitral paywall." *See generally*, 61 Cal. 4th 899 (2015). Nor did the court hold the agreement was "unreasonably one sided." Rather, the court simply acknowledged that "Valencia challenges the Court of Appeal's holding that this provision was unreasonably one-sided and unenforceable." *Id.* at 915. The court ultimately concluded the agreement was not "unreasonably one-sided," despite imposing appellate arbitration filing fees on the appealing party and exempting the issue of repossession from arbitration. *Id.* at 921.

Plaintiffs do not dispute that the TOU contain several consumer-friendly provisions for opting out, filing in small claims court, choosing a convenient forum, and paying the consumer's filing fees. *See* Mot., §§ II.C-D. Even if the TOU lacked these provisions, an "arbitration provision does not gain unconscionability by lacking consumer-friendly provisions . . ." *Hodsdon v. DirecTV, LLC*, No. C 12-02827 JSW, 2012 WL 5464615, at *7 (N.D. Cal. Nov. 8, 2012). Plaintiffs fail to identify any unconscionability that would render the TOU unenforceable.

Nor does *McGill v. Citibank, N.A.* render the Arbitration Agreements unenforceable, as Plaintiffs argue, because the provision does not waive public-injunctive relief. Opp. at 22. Plaintiffs identify no provision requiring Plaintiffs to waive any right to seek public injunctive relief through the arbitration proceedings, because there are none. To the contrary, the 2025 TOU ***explicitly authorize*** the arbitrator to "award public injunctive relief if authorized by law and warranted by the

individual claim(s)." Jit Decl., Ex. 6 § 11.b.iii. Moreover, Plaintiffs misrepresent *McGill*, which "does not prohibit the arbitration of any type of claim or relief—it provides only that the ability to seek public injunctive relief may not be waived outright." *Dornaus v. Best Buy Co., Inc.*, No. 18-CV-04085-PJH) 2019 WL 632957, at *5 (N.D. Cal., Feb. 14, 2019). As *McGill* noted, a litigant, proceeding individually, may properly seek public injunctive relief. *McGill,* 2 Cal. 5th at 959 (stating "[w]e conclude that these provisions do not preclude a private individual who . . . has standing to file a private action—from requesting public injunctive relief in connection with that action."). Furthermore, *McGill* held that a request for public injunctive relief does not constitute the pursuit of representative claims or relief on behalf of others under Business and Professions Code sections 17203 or 17535. *McGill,* 2 Cal. 5th at 960. *McGill* therefore does not support Plaintiffs' arguments.

## III. CONCLUSION

For these reasons, and those in the Motion, Roblox requests the court (1) grant the Motion, (2) order Plaintiffs to submit their claims to binding individual arbitration, and (3) stay this action in its entirety.

DATED: October 31, 2025

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: */s/ Elaine F. Harwell*
Elaine F. Harwell
Sean M. Sullivan
Benjamin White
Attorneys for Defendant ROBLOX CORPORATION

# L.R. 11-6 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Roblox, certifies that the Reply in Support of Motion to Compel Arbitration (Dkt. No. 38) contains 2822 words, which complies with the word limits of L.R. 11-6.1 and Section G.4 of the Court's Standing Order For Newly Assigned Civil Cases.

DATED: October 31, 2025              PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By:  */s/ Elaine F. Harwell*
     Elaine F. Harwell
     Sean M. Sullivan
     Benjamin White
     Attorneys for Defendant
     ROBLOX CORPORATION