UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:25-cv-03476-WLH-AJR | Date | February 11, 2026 |
|---|---|---|---|
| Title | *Michael Garcia et al v. Roblox Corporation* | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge |
|---|---|
| Lesbith Castillo | None |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** **(IN CHAMBERS) ORDER RE DEFENDANT'S MOTION TO COMPEL ARBITRATION [33]**

The Court is in receipt of Defendant Roblox Corporation's Motion to Compel Arbitration (the "Motion"). (Mot., Dkt. No. 33). The Court heard oral argument from the parties on November 14, 2025. For the reasons explained herein, the Court **GRANTS** Defendant's Motion and **STAYS** the action pending the arbitration proceedings. Defendant's Motion to Dismiss (Dkt. No. 17) is **DENIED** as moot.

**I.    BACKGROUND**

Plaintiffs brought this class action against Defendant Roblox Corporation ("Roblox") on behalf of a nationwide class of Roblox users, alleging violations of the Electronic Communications Privacy Act ("ECPA"), the Stored Communications Act ("SCA"), and the Children's Online Privacy Protection Act ("COPPA"). (Compl., Dkt No. 1 ¶ 1). Plaintiffs Michael Garcia and Selena Garcia (the "Parent Plaintiffs") are parents of Plaintiff and 12-year-old child, R.G. (*Id.* ¶ 4). The Parent Plaintiffs allege that Roblox "secretly record[ed] R.G.'s online interactions and device details" without their knowledge. (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

A.    **The Arbitration Agreements**

Roblox filed the instant Motion, arguing that Plaintiffs agreed to Roblox's Terms of Use ("TOU") which included binding arbitration agreements (the "Agreements") that subject their claims to individual arbitration. (Mot. at 1). Roblox alleges that Plaintiffs agreed to the arbitration clause "more than a dozen times" from 2023 to 2025. (*Id.*). Plaintiffs filed an untimely Opposition to the Motion that also exceeded the Court's word count limits on October 25, 2025. (*See* Opp'n, Dkt. No. 37). On November 6, 2025, Plaintiffs filed a Notice of Errata addressing these issues. (*See* Notice, Dkt. No. 40).[1]

The relevant portions of the 2023 and 2025 versions of the Agreements, included in the Roblox's TOU are reproduced below:

> **2023 TOU:** "USER AGREES THAT USER IS GIVING UP THE RIGHT TO FILE A LAWSUIT IN COURT BEFORE A JUDGE OR JURY, INCLUDING IN A CLASS ACTION, FOR DISPUTES THAT ARE SUBJECT TO ARBITRATION." (Declaration of Ronita Jit in Support of Motion ("Jit Decl."), Ex. 5 § 16.1).

> **2025 TOU:** "YOU ACKNOWLEDGE AND AGREE THAT YOU ARE GIVING UP THE RIGHT TO FILE A LAWSUIT IN COURT BEFORE A JUDGE OR JURY, INCLUDING IN A CLASS ACTION, FOR ANY DISPUTES SUBJECT TO THE ARBITRATION PROVISION BELOW." (*Id.*, Ex. 6 § 11).

The 2023 and 2025 Agreements also included the following clauses about enforceability, scope, and interpretation of the Agreements:

> 2023: Enforceability. All issues in the Dispute are for the arbitrator to decide, except that only a court may decide issues relating to the scope, interpretation, and

---

[1] Although Local Rule 7-12 gives the Court authority to "decline to consider any memorandum or other document not filed within the deadline set by order or local rule," the Court instead considers the corrected Opposition only as necessary to render its decision.

enforceability of these Arbitration Terms, or whether a Dispute can be arbitrated. (*Id.*, Ex. 5 § 16.4.9).

2025: The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to the extent permitted by law to resolve all Disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of the Roblox Terms, including, but not limited to, any claim that all or any part of the Roblox Terms is void or voidable; however, in the event of a Dispute about which particular version of the Roblox Terms you agreed to, a court will decide that specific question prior to the commencement of the arbitration. This Arbitration Agreement is intended to be broadly interpreted and will survive termination of the Roblox Terms. (*Id.*, Ex. 6 § 11.b.vii).

Rather than submitting to arbitration, Plaintiffs filed the instant action on February 12, 2025. (*See* Compl.).

### B. **Plaintiffs' Interaction with Roblox's TOU and Arbitration Agreements**

Plaintiffs began use of the Roblox mobile application in May 2023, eventually creating three separate accounts (the "Accounts"). (Jit Decl. ¶¶ 6-10). Mr. Garcia alleges he "directly interacted with the Roblox platform in California" by "downloading the Roblox app and supervising R.G.'s use of Roblox." (Compl. ¶ 10). Ms. Garcia was "also directly [involved] with Roblox's platform in California, including visiting the Roblox website and assisting R.G. with setting up an account." (*Id.* ¶ 11). The Parent Plaintiffs also "spent money on Roblox (purchasing 'Robux' currency) during the class period." (*Id.* ¶ 34). When creating the account for Plaintiff R.G. on May 22, 2023, Plaintiffs proceeded through a "Sign Up" page where they were prompted to enter their birthday, username, and password. (*Id.* ¶ 8). Immediately below the "Sign Up" button was the following text: "By clicking Sign Up, you are agreeing to the Terms of Use including the arbitration clause." (*Id.*).

A reproduction of this sign-up page is included below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

 

On March 21, 2025, Mr. Garcia created a second account. (*Id.* ¶ 9). Ten days later, Ms. Garcia created a third Roblox account using their mobile application. (*Id.* ¶ 10). The sign-up flow associated with their account creation was similar to that in May 2023, as shown below:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

 

Plaintiffs also purchased Roblox gift cards to redeem on their accounts. On May 22, 2023, a Roblox gift card, purchased at 7-Eleven, was redeemed to Plaintiff R.G.'s account. (*Id.* ¶ 11). The back of the gift card included "Terms and Conditions" in large, black text, with the following statement below it: "To redeem this card and use Roblox credits, you must . . . accept the Roblox Terms of Use." (*Id.*). When the gift card was redeemed on Plaintiff R.G.'s Roblox account, the redemption screen included the following text: "By redeeming your code, you represent that you, and your parent or legal guardian if you are under age 18, agree to our Terms of Use including the arbitration clause . . . ." (*Id.*). The user proceeded to redeem the gift card.

On June 19, 2023, eighty (80) Robux, Roblox's virtual in-game currency, were purchased on R.G.'s account for $0.99. (*Id.* ¶ 12). Since R.G.'s account was designated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

as an account being used by minor less than thirteen years of age, the purchase triggered a "Warning" pop-up stating, "This purchase involves the exchange of real money. I agree that I am at least 18 years of age, and am the parent or legal guardian of the account owner. I authorize this purchase and agree to the Terms of Use." (*Id.*). The user agreed.

Plaintiff R.G. last used her Roblox account on September 8, 2025. (*Id.* ¶ 15).

## II.  DISCUSSION

### A.  Legal Standard

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (cleaned up). As with any contract, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147–48 (2024) (quoting 9 U.S.C. § 2). When evaluating a motion to compel arbitration, a district court must therefore determine what the parties have consented to arbitrate, *id.* at 148, and order parties to proceed to arbitration on any issues which they have validly agreed to arbitrate. 9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985).

The FAA allows "parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions . . . ." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). Any such agreement "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). When an arbitration agreement contains a provision delegating to the arbitrator the power to resolve arbitrability question, the Court's inquiry is therefore limited to asking whether the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

parties validly consented to the delegation provision. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.").

"A delegation clause is enforceable when it [1] manifests a clear and unmistakable agreement to arbitrate arbitrability, and [2] is not invalid as a matter of contract law." *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *1 (N.D. Cal. Oct. 11, 2017) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) ("[T]he question of arbitrability is left to the court unless the parties clearly and unmistakably provide otherwise.").

**B.   Analysis**

The instant Motion requires the Court to make three key determinations: (1) whether Plaintiffs assented to the arbitration clause, and are therefore bound by its terms, (2) whether the delegation provisions included in the clause are valid, and therefore defer questions of arbitrability to the arbitrator, and (3) whether such provisions are indeed enforceable and not unconscionable. The Court addresses each in turn.[2]

---

[2] Plaintiffs lodge an evidentiary objection to the Declaration of Ronita Jit in Support of Defendant's Motion, arguing that Ms. Jit, a paralegal for Defendant, "is not a records custodian" and her "business-records showing is conclusory and exhibit-agnostic." (Opp'n, Dkt. No. 40-3 at 23). Ms. Jit attests that her declaration is "based on [her] personal knowledge and [her] review of records maintained in the ordinary course of Roblox's business." (Jit Decl. ¶ 1). The Court overrules this objection, since Rule 803(6) allows testimony from a "qualified witness," which has been "broadly interpreted to require only that the witness understand the record-keeping system." *Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 998 (N.D. Cal. 2015) (quoting *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990); *see also United States v. Basey*, 613 F.2d 198, 201 n.1 (9th Cir. 1979) ("It is unimportant under Fed. R. Evid. 803(6) that the custodian did not herself record the information or know who recorded the information."). The Court accordingly deems the business records attached to Ms. Jit's declaration as properly authenticated.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*1.     Assent*

As an initial matter, the parties dispute whether Plaintiffs assented to the Agreement. Plaintiffs cite a lack of assent to its terms. (Opp'n, Dkt. No. 40-3 at 14-15). Defendant argues that Plaintiffs manifested acceptance at three different points in time: (1) upon creation of their account, (2) upon redemption of a Roblox gift card on the Roblox platform, (3) and upon purchase of "Robux" for Plaintiff R.G.'s account. (Mot. at 10-14).³

The Court first evaluates Plaintiffs' assent to the arbitration clause via their sign-up and subsequent logins on the Roblox platform. The relevant agreement on these sign-up/login pages is a hybrid "clickwrap" and "browsewrap" agreement. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 513 (9th Cir. 2023) (explaining the difference in enforceability between "clickwrap" and "browsewrap" agreements). Such an agreement is known as a sign-in wrap agreement, "where users are required to advance through a sign-in screen which states ["By clicking Sign Up" (or in some cases "By clicking Continue") 'I agree to the Terms of [Use including the arbitration clause.]'" *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024). Here, Defendant's sign-up and login pages as they appeared in May 2023 and March 2025 (the months of Plaintiffs' account creation) contained large buttons labeled "Sign Up" or "Continue," which a user must click to create an account. (Jit Decl. ¶¶ 8-10, Exs. 1-2). Directly underneath the

---

³ Plaintiffs attempt to muddy the waters of the Parent Plaintiffs' assent to the arbitration agreements by arguing that Roblox's record "never ties a purported 'click' to a named person" (*see* Opp'n at 14) is wholly unpersuasive. Plaintiffs allege in their own complaint that they created accounts and were involved in the creation of their child's account and produced the relevant usernames of these accounts in discovery to Defendants. (*See* Compl. ¶¶ 10, 11, 34; *see also* Declaration of Benjamin White in Support of Motion (White Decl.") ¶¶ 2, 12-15; Ex. 4, Rog. No. 1, RFA No. 1; Ex. 5, Rog. No. 1, RFA No. 2; Ex. 6, Rog. No. 1, RFA No. 2, RFP No. 13, Ex. 7). Asserting the contrary is intellectually dishonest and would call into question Plaintiffs' standing to sue at all.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

button, and not buried at the bottom of the page or in some other impermissibly inconspicuous place, is a disclosure in smaller white font that states: "By clicking Sign Up [or Continue in March 2025], you are agreeing to the Terms of Use including the arbitration clause . . . ." (*Id.*). Directly below that are hyperlinked words "Terms" and "Privacy," directing the user to the relevant terms of use and privacy policy. (*Id.*).

Under California law, a sign-in wrap agreement may be an enforceable contract based on inquiry notice if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Keebaugh*, 100 F.4th at 1005. A court must also evaluate "the full context of the transaction" to determine "whether a given textual notice is sufficient to put an internet consumer on inquiry notice of contractual terms" and whether the transaction "contemplates entering into a continuing, forward-looking relationship." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 471, 477 (2021).

The Court finds the Ninth Circuit's opinion in *Keebaugh* controlling on the issue of assent. The facts of that case are quite similar to those here. In *Keebaugh*, users of a mobile gaming application disputed whether Warner Bros. provided "reasonably conspicuous notice of its Terms of Service" as part of its sign-in screen layout. *Keebaugh*, 100 F. 4th at 1012. That layout included a "Play" button with a disclosure immediately below that read "By tapping 'Play' I accept the Terms of Use and acknowledge the Privacy Policy." *Id.* at 1011. Below that statement were hyperlinks to the relevant privacy policy and terms of service. (*Id.*). Reversing the district court's denial of Warner Bros.' motion to compel arbitration, the Circuit—relying on California courts' decisions in *Sellers* and *Blizzard*—held that (1) the sign-in screen layout provided reasonably conspicuous notice of the terms to which the users would be bound, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

(2) users contemplated a "continuing" relationship with the mobile game. (*Id.* at 1020–21). The panel's "continuing" relationship finding hinged on the users' *download* of the mobile application at issue. More specifically, "[w]hen downloading an app to one's own device, the prudent internet user necessarily anticipates ongoing access to that app at the user's discretion." *Id.* at 1020.

The Court finds the sign-up layout of Roblox's mobile application warrants the same conclusion. *First*, the sign-up page conspicuously states that a user clicking the "Sign Up" or "Continue" buttons would constitute assent to the Terms of Use, *including* the arbitration clause. This is a sufficiently conspicuous method of calling the arbitration clause to the attention of the parties. "The hyperlink to the terms of use and arbitration clause makes its terms easily available . . . [a]nd the 'clear and unequivocal reference to the extrinsic document and the contemporaneous availability of its terms shows that, at the time of contracting, the parties consented to those terms.'" *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 952–53, 292 Cal. Rptr. 3d 47, 66 (2022) (internal citation omitted).

*Second*, Plaintiffs downloaded the Roblox mobile application—a signal of their desire to maintain an ongoing relationship with the platform, much like the users in *Keebaugh*. (*See* Jit Decl. ¶¶ 8-10 (attesting that Plaintiffs' user accounts were created on Roblox's mobile application); *see also* Compl. ¶¶ 10-12). To the extent Plaintiffs dispute that they desired a "continuing, forward-looking relationship" with Roblox, that is contradicted by their subsequent purchase and redemptions of Roblox gift cards and Robux on their accounts. (*Id.* ¶¶ 11-12, Exs. 3-4). Moreover, Plaintiff's Complaint specifically notes that Plaintiff R.G. "has used the Roblox platform regularly since approximately 2021 (from around age 9 or 10)." (Compl. ¶ 12). Plaintiff R.G. even used her Roblox account as recently as September 8, 2025. (Jit Decl. ¶ 15).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

   2.  *Disaffirmance*

  Plaintiffs additionally contend that R.G., a minor, cannot be bound to the agreement as it is "voidable at the minor's option," and is entitled to disaffirmance. (Opp'n at 15). It is correct that California law provides minors with both the capacity to enter contracts *and* the ability to disaffirm those contracts. *See* Cal. Family Code § 6700 ("Except as provided in Section 6701, a minor may make a contract in the same manner as an adult, subject to the power of disaffirmance[.]"). Such power does not require the minor to use specific language to convey their intent to disaffirm. *Celli v. Sports Car Club of Am., Inc.,* 29 Cal.App.3d 511, 517, 105 Cal.Rptr. 904 (1972) (Disaffirmance "may be made by any act or declaration" indicating an intent to disaffirm.). Here, at minimum, R.G. conveyed her intent to disaffirm relevant agreement with the filing of the instant lawsuit on April 18, 2025. Plaintiffs appear to contend the analysis should end there.

  But even if this Court found that R.G. was *no longer* a signatory to the arbitration agreement with her disaffirmance at the time of this lawsuit's filing, equitable considerations weigh in favor of binding R.G. to its terms given her continued use of the platform through at least September 8, 2025. (*See* Jit Decl. ¶ 15). Under California law, "[a] nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory." *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013). California courts have recognized that the parent-child relationship is one of these relationships. *Crowley Mar. Corp. v. Bos. Old Colony Ins. Co.*, 158 Cal. App. 4th 1061, 70 Cal.Rptr.3d 605 (2008). Here, the Parent Plaintiffs explicitly allege in their complaint that they downloaded the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Roblox application and supervised their child R.G.'s use of the platform—clear examples of the Parent Plaintiffs acting for R.G.'s benefit.  (*See* Compl. ¶¶ 10, 11).  Having already found the Parent Plaintiffs to be bound by the agreement, this "preexisting relationship between [R.G.] and [her parents] makes it 'equitable' to impose the duty to arbitrate upon [R.G.] even if [s]he did not sign the [arbitration agreement] [her]self."  *S.G. v. Epic Games, Inc.*, No. 25-CV-02254-RFL, 2025 WL 2447456, at *5 (N.D. Cal. Aug. 26, 2025).

      Moreover, R.G.'s disaffirmance defense falls flat in light of her continued use of the platform through September 8, 2025.  That continued use inevitably required R.G. to click through Roblox's Terms of Use to gain access to the platform to enjoy its benefits.  Disaffirmance "may not be used inequitably to retain the benefits of a contract while reneging on the obligations attached to that benefit."  *I.B. by & through Fife v. Facebook, Inc.*, No. C 12-1894 CW, 2013 WL 6734239, at *3 (N.D. Cal. Dec. 20, 2013) (citation omitted); *see also R.A. v. Epic Games, Inc.*, No. CV 19-1488-GW-EX, 2019 WL 6792801, at *6 (C.D. Cal. July 30, 2019) ("[B]ecause Plaintiff continued to play Fortnite until at least June 18, 2019 – after the filing the Complaint – he continued to enjoy the benefits of the agreement and therefore did not effectively disaffirm.").

      Accordingly, the Court finds that R.G. did not effectively disaffirm the Terms of Use—and its arbitration clause—until at least September 8, 2025.  R.G. retained the right to disaffirm the Terms of Use, but Plaintiffs cannot use such power as both a shield and sword to avoid arbitration.  Holding otherwise would create perverse incentives for individuals to avoid arbitration agreements associated with online platforms "simply by having third parties create accounts and then using them as the Plaintiff did."  *Motise v. Am. Online, Inc.*, 346 F. Supp. 2d 563, 566 (S.D.N.Y. 2004).  Further, this holding is consistent with many other district courts in the Circuit who have found—for equitable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

reasons—a minor child to be bound by an arbitration agreement entered into by their parents—particularly when it pertains to the subject matter of their claims. *See, e.g., Yeh v. Tesla, Inc.*, No. 23-CV-01704-JCS, 2023 WL 6795414, at *7-8 (N.D. Cal. Oct. 12, 2023); *S.G. v. Epic Games, Inc.*, 2025 WL 2447456, at *4.

Because the Court finds Plaintiffs assented to the arbitration clause upon the creation of their respective accounts and continued use of those accounts, it declines to evaluate assent in the context of Plaintiffs' gift card purchase/redemption and Robox purchase.

### 3. Delegation Clause

Having determined that Plaintiffs are bound by the arbitration clause of the TOU (for the Parent Plaintiffs, claims through the present and for Plaintiff R.G., claims at least through September 8, 2025), the Court now turns to determining where the delegation provision of the Agreement delegates arbitrability to the arbitrator. The 2025 TOU included an explicit delegation clause, stating that all "[d]isputes arising out of or relating to the interpretation, applicability, enforceability, or formation of the Roblox Terms . . ." (Jit Decl., Ex. 6 § 11.b.vii). This delegation provision is an "additional, antecedent" agreement to the remaining provisions of the arbitration clause generally. *Rent-A-Center*, 561 U.S. at 72. In other words, it is a separate arbitration agreement to which the FAA applies. *First Options of Chicago*, 514 U.S. at 943. As such, if the Court treats the delegation provision as valid, it must compel arbitration and leave "any challenge to the validity of the agreement as a whole for the arbitrator." *Rent-A-Center*, 561 U.S. at 72. The 2023 TOU, however, did not include an explicit delegation clause, and instead left it to this Court to "decide issues relating to the scope, interpretation, and enforceability of these Arbitration Terms, or whether a Dispute can be arbitrated." (Jit Decl., Ex. 5 § 16.4.9).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Defendant contends the delegation provision in the 2025 Agreement defers all questions of arbitrability to the arbitrator. (Mot. at 20). Plaintiffs disagree, asserting the absence of "clear and unmistakable" evidence of the parties' agreement to delegate gateway issues of arbitrability. (Opp'n at 20).

The Court finds the delegation clause in the 2025 TOU—assented to by Plaintiffs through the creation of their second and third accounts in 2025—clearly and unmistakably delegates threshold questions of arbitrability to the arbitrator, or in other words, whether the agreement covers a particular controversy, for all disputes arising *after* those Terms were first agreed to by Plaintiffs. *See Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 999–1000 (9th Cir. 2023); *see also Lovette v. CCFI Companies LLC*, No. 3:23-CV-03755-JSC, 2023 WL 8813525, at *3 (N.D. Cal. Dec. 20, 2023) (finding the parties had unmistakably agreed to delegate gateway issues to an arbitrator due to clause delegating issues of "validity, scope, and enforceability"). The 2023 TOU, however, did not include an explicit delegation provision, so this Court—not an arbitrator—must determine arbitrability of this action's claims arising out of pre-2025 TOU activity under the 2023 TOU.

The arbitration clause in the 2023 TOU applies to "any dispute arising under or relating to the Roblox Terms or the Services." (Jit Decl., Ex. 5 § 16.1). Roblox "Services" are defined to include the Roblox "Platform" and "various other features and services, like websites, applications, and forums, in order to allow Users to play, create and connect." (*Id.* at 1). Here, any alleged improper data collection, as alleged by Plaintiffs, occurred while Plaintiffs used Roblox's "Services." The arbitration clause by its clear and unambiguous terms therefore requires arbitration of these claims.

Because the Court finds that (1) arbitration is required for Plaintiffs' claims arising out of pre-2025 TOU activity, and (2) disputes arising out of post-2025 TOU activity is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

subject to the delegation provision, the resolution of Plaintiffs' claims is properly left to arbitration.

*4.  Enforceability and Unconscionability*

Plaintiffs argue that the Agreements are invalid on unconscionability grounds. Unconscionability "'is concerned not with a simple old-fashioned bad bargain, but with terms that are unreasonably favorable to the more powerful party." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1013 (9th Cir. 2023) (internal citation omitted). To prove unconscionability, the challenging party must show the provision has elements of *both* procedural and substantive unconscionability. *Id.* This analysis involves a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa." *Id.* (quoting *Armendariz v. Found. Health Psychcare Servs.*, Inc., 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 690 (2000)).

Plaintiffs argue the Agreements are procedurally unconscionable because (1) the "TOU[s] [are] a classic adhesion contract offered on a take-it-or-leave-it basis," (2) the presentation of "legal terms via dense hyperlinks to a child user—without a verifiable parental consent flow—adds substantial oppression and surprise," and (3) the sign-in wrap agreement did not constitute sufficient notice under Ninth Circuit precedent. (Opp'n at 17). Under California law, the procedural unconscionability analysis focuses "oppression or surprise due to unequal bargaining power." *Bielski*, 87 F.4th at 1013 (internal citation omitted).

"Because take-it-or-leave-it adhesion contracts always contain 'some degree of procedural unconscionability,' [Roblox's] delegation provision contains *some* level of procedural unconscionability." *Id.* at 1014 (internal citation omitted) (emphasis added). However, Plaintiffs' arguments relating to information asymmetries facing minor users

are irrelevant to the unconscionability analysis. The Court found Plaintiff R.G., a minor nonsignatory, bound by the Agreements, not because of *her* interaction with the agreement, but because of the special relationship she maintained with her parents (who were users of age). Moreover, the last of Plaintiff's procedural unconscionability arguments fail for reasons previously discussed in the Court's analysis of *Keebaugh*—Plaintiffs received conspicuous notice of the fact that clicking "Sign Up" or "Continue" would bind them to the arbitration clause of the TOU. That does not stink of oppression or surprise.

The Court now turns to substantive unconscionability, which refers "to the fairness of an agreement's actual terms." *Id.* at 1015. "California law seeks to ensure that contracts, particularly contracts of adhesion, do not impose terms that are overly harsh, unduly oppressive, or unfairly one-sided." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1002 (9th Cir. 2021). A plaintiff is "permitted under *Rent-A-Center* to challenge the enforceability of a delegation clause by explaining how 'unrelated' provisions make the delegation unconscionable." *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680–81 (9th Cir. 2024). Here, Plaintiffs challenge the arbitration agreement in general terms, arguing that confidentiality provisions, forum/venue rules, fee/cost mechanisms, carve-outs "reserving courtroom remedies for the drafter," and mass-arbitration "throttles" tilt in favor of a finding of procedural unconscionability. Curiously, Plaintiffs make no citation to specific clauses of the arbitration agreement that are unconscionable. If the terms were truly as unconscionable as Plaintiffs allege, they would surely highlight their unfair, one-sided, and oppressive language. The Court declines to make those arguments for them.

Plaintiffs also claim the agreement's "waiver of public injunctive relief" creates an unconscionability issue under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 964, 393 P.3d 85,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

96 (2017). But as Defendants rightfully point out, the 2025 TOU explicitly authorizes the arbitrator to "award public injunctive relief if authorized by law and warranted by the individual claims." This provision does not constitute a waiver of pursuing public injunctive relief *in any forum*, as was the case in *McGill* and *Rent-A-Center*. *See Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 831 (9th Cir. 2019) (finding a specific provision of the arbitration clause "preclude[d] the arbitrator from awarding public injunctive relief.").

In sum, the Court finds only a low level of procedural unconscionability associated with the TOU's status as an adhesion contract. Plaintiffs make no showing of substantive unconscionability. Accordingly, the Court deems the Agreements, including the 2025 TOU delegation provision, valid and not unconscionable.[4]

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration. The case is stayed pending binding completion of arbitration, and the Court **VACATES** all pending dates. Because this Order obviates the need for adjudication of Defendant's Motion to Dismiss (Dkt. No. 17), the Court **DENIES** the motion as moot. Plaintiffs' *Ex Parte* Applications (Dkt. Nos. 34, 44) related to this Motion are also **DENIED** as moot. The Court further orders the parties to file a joint status report regarding the arbitration six months from the date of this Order and, assuming the stay is to remain in effect, every three months after the first joint status report.

Should Plaintiff R.G. seek to assert claims arising out of her use of the platform after September 8, 2025, she may seek leave to amend.

**IT IS SO ORDERED.**

---

[4] The Court declines to rely on the documents of which Defendants sought judicial notice. (Request for Judicial Notice (the "Request"), Dkt. No. 33-2). As such, the Request is **DENIED** as moot.